David Simantob, Esq., SBN 155790
dsimantob@tresslerllp.com
Linda T. Hoshide, Esq., SBN 190403
lhoshide@tresslerllp.com
Jeanne Kuo Riggins, Esq., SBN 231411
jriggins@tresslerllp.com
TRESSLER LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, CA  90067
Telephone:   (310) 203-4800
Facsimile:    (310) 203-4850

Attorneys for Defendant
HARTFORD CASUALTY INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| VOGUE INTERNATIONAL, LLC d/b/a VOGUE INTERNATIONAL, a Delaware limited liability company,<br><br>                               Plaintiff,<br><br>              vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation,<br><br>                               Defendants. | CASE NO. 2:14-cv-03570-PA-MRW<br>Hon. Percy Anderson<br><br>**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        August 11, 2014<br>Time:        1:30 PM<br>Ctrm:        15<br><br>Complaint filed May 8, 2014<br>First Amended Complaint filed May 29, 2014<br>No Trial Date Set |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 11, 2014 at 1:30 p.m., or as soon thereafter as this matter may be heard in Courtroom 15 of the above-entitled Court, located at 312 N. Spring St., Los Angeles, California 90012, before the Honorable Percy Anderson of the United States District Court for the Central District of California, Western Division, defendant Hartford Casualty Insurance Company ("Hartford") will and hereby does respectfully move the Court for summary judgment or, in the alternative, partial summary judgment, in favor of Hartford and against plaintiff, Vogue International, LLC d/b/a Vogue International ("Vogue"), pursuant to Federal Rule of Civil Procedure 56.

Hartford asks the Court to determine that there is no coverage under the commercial general liability policies and the umbrella policies that Hartford issued to Vogue (the "Policies") with respect to the underlying action entitled *Moroccanoil, Inc. et al. v. Vogue Int'l et al.,* 2:10-cv-10048-DMG-AGR, United States District Court for the Central District of California (the "*Moroccanoil* Action") asserting that Vogue infringed on various of Moroccanoil's trademarks, engaged in unfair competition, among other causes of action.  Because there is no coverage, there was no duty to defend, duty to indemnify, or duty to reimburse Vogue for all reasonable defense expenses and settlement expenses incurred by Vogue in the *Moroccanoil* Action.

Hartford moves the Court for summary judgment in its favor and against plaintiff Vogue on the only cause of action in Vogue's First Amended Complaint, Declaratory Relief on the Duty to Defend.

Hartford's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, is made pursuant to Federal Rule of Civil Procedure 56, on the grounds that there is no genuine issue of material fact as to Vogue's claims against Hartford, so Hartford is entitled to summary judgment, or alternatively partial summary judgment, as a matter of law.

1   This Motion is based on this Notice of Motion and Motion for Summary

2   Judgment, or in the Alternative Partial Summary Judgment, and the

3   Memorandum of Points and Authorities attached hereto, Hartford's Statement of

4   Uncontroverted Facts and Conclusions of Law, Hartford's Request for Judicial

5   Notice, Declarations of Thomas D. Armstrong and Jeanne Kuo Riggins, the

6   documents on file in this action, and such other argument or evidence that may be

7   presented on Reply or at the time of the hearing of this Motion.

8   This motion is made following the conference of counsel pursuant to L.R.

9   7-3, which took place on June 3, 2014, June 4, 2014, and June 23, 2014.  *See*

10  Declaration of Jeanne Kuo Riggins at ¶ 9.

11  Dated:  July 14, 2014                    TRESSLER LLP

12                                      By:  /s/ - David Simantob

13                                           David Simantob
                                             Linda T. Hoshide
14                                           Jeanne Kuo Riggins
                                             Attorneys for Defendant
15                                           HARTFORD CASUALTY INSURANCE
16                                           COMPANY

17

18  LA# 135498 (240-469)

19

20

21

22

23

24

25

26

27

28

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................ 1

II.   STATEMENT OF UNDISPUTED FACTS. ................................... 2

    A.   THE *MOROCCANOIL* ACTION ALLEGES TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION FROM TRADEMARK INFRINGEMENT. ....................................... 2

    B.   TENDER TO HARTFORD OF *MOROCCANOIL* ACTION. ............................. 4

    C.   THE HARTFORD POLICIES............................................. 5

III.  ARGUMENT. ......................................................................... 7

    A.   SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT, IS APPROPRIATE IN THIS CASE. ......................... 7

    B.   CHOICE OF LAW. .......................................................... 7

    C.   STANDARD FOR THE DUTY TO DEFEND. ................................. 8

    D.   THE *MOROCCANOIL* ACTION DOES NOT ALLEGE ANY "PERSONAL AND ADVERTISING INJURY" ............................... 9

    E.   THE CALIFORNIA SUPREME COURT'S DECISION IN *HARTFORD CASUALTY INS. CO. v. SWIFT DISTRIBUTION, INC.* ELIMINATES ANY COVERAGE UNDER THE POLICIES' DISPARAGEMENT OFFENSE. ................................................................... 11

    F.   THE *MOROCCONOIL* ACTION DOES NOT ALLEGE AN "ADVERTISING IDEA" OFFENSE UNDER THE POLICIES. ....................... 16

    G.   THE INTELLECTUAL PROPERTY EXCLUSION IS CLEAR AND UNAMBIGUOUS AND BARS COVERAGE FOR THE *MOROCCANOIL* ACTION. ................................................................... 18

        1.   The *Moroccanoil* Action Arose Out Of Trademark And Trade Dress Infringement And Each Cause Of Action Was Founded On The Same Factual Allegations As Trademark And Trade Dress Infringement........................ 18

i

2.    "Arising Out Of" As Used in the Intellectual Property
Exclusion is Construed Broadly to Bar Coverage. ..................21

H.    AS THERE IS NO DUTY TO DEFEND, HARTFORD HAS NO DUTY TO
INDEMNIFY. ........................................................................................25

IV.    CONCLUSION. ............................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Acceptance Ins. Co. v. Syufy Enters.*,
  69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557 (1999) ---------------------------- 21, 24

*Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*,
  838 F.2d 346 (9th Cir. 1988)----------------------------------------------------- 11

*Aloha Pac., Inc. v. Cal. Ins. Guar. Ass'n.*,
  79 Cal. App. 4th 297, 93 Cal. Rptr. 2d 148 (2000) -------------------- 21, 22, 23, 25

*Am. Guar. & Liab. Ins. Co. v. Lexington Ins. Co.*,
  517 Fed. Appx. 599 (9th Cir. May 6, 2013)------------------------------------- 23

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
  957 F. Supp. 2d 1135 (C.D. Cal. 2013)----------------------------------------- 20

*Blatty v. New York Times Co.*,
  42 Cal.3d 1033, 232 Cal. Rptr. 542 (1986) ----------------------------------- 12, 13

*British Airways Bd. v. Boeing Co.*,
  585 F.2d 946 (9th Cir. 1978) *cert. denied*,
  440 U.S. 981, 440 U.S. 981, 99 S. Ct. 1790, 60 L. Ed. 2d 241 (1979) ------------ 7

*Buss v. Superior Court*,
  16 Cal. 4th 35, 65 Cal. Rptr. 2d 366 (1997)------------------------------------- 9, 25

*Celotex Corp v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)---------------------------- 7

*Century Transit Systems, Inc. v. Am. Empire Surplus*,
  42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567 (1996) ---------------------------- 22, 24

*Certain Underwriters at Lloyd's of London v. Superior Court*,
  24 Cal. 4th 945, 103 Cal. Rptr. 2d 672 (2001)--------------------------------- 25

*Consumer Advocates v. Echostar Satellite Corp.*,
  113 Cal.App.4th 1351, 8 Cal. Rptr. 3d 22 (2003)---------------------------------- 15

iii

*Continental Cas. Co. v. City of Richmond,*
  763 F.2d 1076 (9th Cir. 1985) ------------------------------------------------- 21, 24

*CRS Recovery, Inc. v. Laxton,*
  600 F. 3d 1138 (9th Cir. 2010)------------------------------------------------- 8

*Davis v. Farmers Ins. Group,*
  134 Cal.App.4th 100, 35 Cal. Rptr. 3d 738 (2005) -------------------------------- 24

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.,*
  18 Cal. 4th 857, 77 Cal. Rptr. 2d 107 (1998) ------------------------------------- 17

*Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.,*
  120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359 (2004) ------------------------- 14, 15, 20

*Gen'l Accident Ins. Co. v. W. Am. Ins. Co.,*
  42 Cal. App. 4th 95, 49 Cal. Rptr. 2d 603 (1996)-------------------------------- 9

*GK Skaggs, Inc. v. Hartford Cas. Ins. Co.,*
  2014 U.S. App. LEXIS 11161 (9th Cir. Cal. Jun. 16, 2014)---------------------- 24

*Gray v. Zurich Ins. Co.,*
  65 Cal. 2d 263, 54 Cal. Rptr. 104 (1966)-------------------------------------- 9, 20

*Gunderson v. Fire Ins. Exch.,*
  37 Cal. App. 4th 1106, 44 Cal. Rptr. 2d 272 (1995) ------------------------ 4, 14, 15

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.,*
  59 Cal.4th 277 (2014) -------------------------------------------------- passim

*Homedics, Inc. v. Valley Forge Ins. Co.,*
  315 F.3d 1135 (9th Cir. 2003) ------------------------------------------- 7, 8, 13

*Horphag Research, Ltd. v. Garcia,*
  475 F.3d 1029 (9th Cir. 2007) ------------------------------------------------- 7

*Indus. Indem. Co. v. Apple Computer, Inc.,*
  79 Cal. App. 4th 817, 95 Cal. Rptr. 2d 528 (1999) ------------------------------- 21

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

*Integral Resources, Inc. v. Hartford Fire Ins. Co.*,
 No. 2:14-CV-02308-R (AGRx),
 2014 U.S. Dist. LEXIS 83793 (C.D. Cal. June 13, 2014)------------- 8, 19, 20, 23

*Legarra v. Federated Mut. Ins. Co.*,
 35 Cal. App. 4th 1472, 42 Cal. Rptr. 2d 101(1995)----------------------------- 17

*Marquez Knolls Property Owners Ass'n, Inc. v. Executive Risk Indem., Inc.*,
 153 Cal. App. 4th 228, 62 Cal. Rptr. 3d 510 (2007) ----------------------------- 23

*Maxconn, Inc. v. Truck Ins. Exch.*,
 74 Cal.App.4th 1267, 88 Cal. Rptr. 2d 750 (1999) ----------------------------- 13

*McGhee v. Arabian Am. Oil Co.*,
 871 F.2d 1412 (9th Cir. 1989) --------------------------------------------------- 8

*Medill v. Westport Ins. Corp.*,
 143 Cal. App. 4th 819, 49 Cal. Rptr. 3d 570 (2006) ----------------------------- 23

*Mez Indus. v. Pac. Nat'l Ins. Co.*,
 76 Cal. App. 4th 856, 90 Cal. Rptr. 2d 721 (1999) ----------------------------- 9

*Montrose Chemical Corp. v. Superior Court*,
 6 Cal.4th 287, 24 Cal. Rptr. 2d 467 (1993) ----------------------------------- 9

*Nat'l Union Fire Ins. Co. v. Siliconix Inc.*,
 726 F. Supp. 264 (N.D.Cal. 1989)----------------------------------------------- 20

*Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of America*,
 10 Fed. Appx. 438 (9th Cir. Mar. 22, 2001) -------------------------------21, 23

*Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109,
 90 Cal. Rptr. 2d 647 (1999) ---------------------------------------------------- 21

*Shields v. Singleton*,
 15 Cal. App. 4th 1611, 19 Cal. Rptr. 2d 459 (1993)----------------------------- 8

*Southgate Recreation & Park Dist. v. Cal. Ass'n for Parks & Recreation Ins.*,
 106 Cal. App. 4th 293, 130 Cal. Rptr. 2d 728 (2003) ----------------------------- 22

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT**

*Swain v. Cal. Cas. Ins. Co.*,
   99 Cal. App. 4th 1, 120 Cal. Rptr. 2d 808 (2002)--------------------------------- 20

*Total Call Internat., Inc. v. Peerless Ins. Co.*,
   181 Cal. App. 4th 161, 104 Cal. Rptr. 3d 319 (2010) ------------------------- 12, 13

*Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*,
   130 Cal.App.4th 99, 29 Cal. Rptr. 3d 609 (2005)------------------------------------- 4

*Trenches, Inc. v. Hanover Ins. Co*.,
   2014 U.S. App. LEXIS 9644 (9th Cir. May 23, 2014) ----------------------------- 23

*Upper Deck Co. v. Federal Ins. Co.*,
   358 F.3d 608 (9th Cir. 2004)--------------------------------------------------------------- 4

*Waller v. Truck Ins. Exch.*,
   11 Cal. 4th 1, 44 Cal. Rptr. 2d 370 (1995) -------------------------------------- 8, 9

*Washington Mut. Bank v. Superior Court*,
   24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (2001)------------------------------------- 8

*Zurich Specialties London, Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*,
   425 Fed. Appx. 554 (9th Cir. Mar. 28, 2011)------------------------------------- 23

**R̲U̲L̲E̲S̲**

Fed. R. Civ. Proc. 56(c)------------------------------------------------------------------7

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Hartford Casualty Insurance Company ("Hartford") seeks a ruling that it had no duty to defend or indemnify plaintiff Vogue International, LLC d/b/a Vogue International ("Vogue") in the underlying action entitled *Moroccanoil, Inc. et al. v. Vogue Int'l et al.,* 2:10-cv-10048-DMG-AGR, United States District Court for the Central District of California (the "*Moroccanoil* Action") under commercial general liability policies and umbrella policies that Hartford issued to Vogue (the "Policies").

Vogue argues that the *Moroccanoil* Action is covered under the Policies' enumerated "personal and advertising injury" offenses of "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services," and "[c]opying, in your 'advertisement' or 'on your web site', a person's or organization's 'advertising idea' or style of 'advertisement'." Vogue is simply wrong.

First, the California Supreme Court in *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277 (2014) recently confirmed that intellectual property disputes, such as the *Morocanoil* Action, are not covered under a disparagement offense. Therefore, Vogue's attempt to re-characterize the *Moroccanoil* Action as one for disparagement fails as a matter of law.

Further, as to the offense of "[c]opying, in your 'advertisement' or 'on your web site', a person's or organization's 'advertising idea' or style of 'advertisement'", there are simply no facts alleged in the *Moroccanoil* Action to support an argument that any advertising ideas or style of advertisements were copied in "your" – *i.e.*, Vogue's – advertisements. As such, the *Moroccanoil* Action does not fall within the scope of this offense.

Moreover, the Policies include an intellectual property exclusion which

1

precludes coverage for "personal and advertising injury" "[a]rising out of the violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity."  The factual allegations in the *Moroccanoil* Action relate only to the infringement of Moroccanoil's intellectual property marks.  Even if these allegations fell within the enumerated offenses characterized by Vogue as "disparagement" or copying of another's "advertising idea," which they do not, all of the allegations clearly arise out of alleged intellectual property infringement and, therefore, are precluded from coverage by the Policies' clear and explicit intellectual property exclusion.  Therefore, Hartford had no duty to defend and/or indemnify Vogue in the *Moroccanoil* Action and respectfully requests summary judgment in its favor as a matter of law.

## II.   STATEMENT OF UNDISPUTED FACTS.

### A.   The *Moroccanoil* Action Alleges Trademark Infringement and Unfair Competition from Trademark Infringement.

On December 29, 2010, Plaintiff Moroccanoil, Inc. ("Moroccanoil") filed a complaint against "Vogue International, a fictitiously named company of Christopher Todd International, Inc."[1] for damages and injunctive relief alleging Federal Trademark Infringement, Federal Trademark Infringement and Unfair Competition, Statutory Unfair Competition and Conspiracy to Unfairly Compete, and Common Law Trademark Infringement, Unfair Competition, and Conspiracy to Unfairly Compete.  [Hartford's Statement of Uncontroverted Facts ("SUF") 1, 2.]

On February 7, 2011, Moroccanoil filed a First Amended Complaint alleging the same four causes of action.  [SUF 3.]  On June 2, 2011, Moroccanoil

---

[1]    In future amendments to the *Moroccanoil* complaints, Moroccanoil changed the name of Defendant to "Vogue International, a fictitiously named company of Todd Christopher International, Inc."  [SUF 1, 3, 4, 25.]

2

filed a Second Amended Complaint.  [SUF 4.]   The *Moroccanoil* Second Amended Complaint added three additional causes of action for unfair competition based upon Vogue's alleged use of the term "organix" in its labeling, advertisement, promotion, and sale, and the cancellation of Vogue's trademark registration for deceptive and mis-described use of Vogue's "organix" trademark. [SUF 5, 21-23.]

Subsequently, on November 8, 2012, Moroccanoil filed a Third Amended Complaint, which was never tendered to the Hartford, as discussed below.  [SUF 25-26, 46-51.]   The *Moroccanoil* Third Amended Complaint differs from the Second Amended Complaint in that it adds five Plaintiffs.  [SUF 4, 5, 25, 26.]

The *Moroccanoil* Action alleges that Moroccanoil is the owner of various trademarks and trade dress regarding the terms "Moroccanoil" and "M Moroccanoil Design" with two design styles for the term "M Moroccanoil Design".  [SUF 6, 7, 27, 28.]   Vogue is alleged to have advertised and sold its products using the term "Moroccan Argan Oil" with a trademark of "Moroccan Argan Oil".  [SUF 8-12, 29-33.]   Moroccanoil alleges that the "similarity in product names and labeling, trade dress, and demonstration show that Defendants willfully copied Plaintiff's trademarks and trade dress."  [SUF 11, 32.]

The *Moroccanoil* Action alleges that Vogue's product "has been created and used in such a way to create confusion in the marketplace."  [SUF 15, 36.]

The *Moroccanoil* Action alleges that Vogue infringed upon the Moroccanoil trademarks "for advertising, distribution and sale of" Vogue's products.  [SUF 16, 27.]   Moroccanoil also alleges that Vogue has engaged in false advertising, trade dress infringement, infringement of Moroccanoil's unregistered trademarks and unfair competition.  [SUF 18, 39.]   Moroccanoil further alleges that Vogue's conduct in its unfair business practices, acts of infringement, and misleading advertising practices are in violation of California Business and Professions Code, Section 17200.  [SUF 19, 40.]   Moroccanoil also

alleges that Vogue's conduct is infringing upon Moroccanoil's common law trademark rights. [SUF 20, 41.]

The remaining causes of action relate to Vogue's own trademark "Organix"; Vogue's alleged improper use of "Organix"; the deceptive nature of "Organix"; and the misdescription of "Organix". [SUF 4, 5, 21-23, 25-26, 42-44.]

## B.   Tender to Hartford of *Moroccanoil* Action.

Vogue tendered the defense of the *Moroccanoil* First Amended Complaint and *Moroccanoil* Second Amended Complaint to Hartford on August 19, 2011. [SUF 46.]   Hartford acknowledged receipt of the *Moroccanoil* Action on September 6, 2011.   [SUF 47.]   Hartford denied coverage to Vogue for the *Moroccanoil* Action by letter dated September 8, 2011 based on, among other things, there were no allegations that fell within the enumerated offenses delineated in the definition of "personal and advertising injury" and the Intellectual Property Exclusion. [SUF 48.]

Following the tender of the *Moroccanoil* Second Amended Complaint on August 19, 2011, Vogue did not provide any further information regarding the *Moroccanoil* Action or tender any amended complaints filed in the *Moroccanoil* Action to Hartford, including the *Moroccanoil* Third Amended Complaint.[2] [SUF 49, 51.]   Therefore, hearing nothing further from Vogue, Hartford's file was

---

[2]     Hartford did not have any duty to further investigate whether amended pleadings were filed. *Upper Deck Co. v. Federal Ins. Co.*, 358 F.3d 608, 613 (9th Cir. 2004); *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114, 44 Cal. Rptr. 2d 272 (1995); *Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*, 130 Cal.App.4th 99, 110, 29 Cal. Rptr. 3d 609 (2005).   For purposes of this Motion, it is Hartford's position that there is no duty to defend Vogue for any of the complaints, including the Third Amended Complaint, even if it was tendered. Hartford brings this Motion as to the entirety of the *Moroccanoil* Action despite the fact that the *Moroccanoil* Third Amended Complaint was not tendered to Hartford.

closed on October 17, 2011.  [SUF 49-52.]

### C.   **The Hartford Policies.**

Hartford issued the following commercial general liability policies to "Todd Christopher International DBA Vogue International"[3]: (1) 21 UUN UV6168 (effective 9/11/2003 – 9/11/2004); (2) 21 UUN UV6168 (effective 9/11/2004 – 9/11/2005); (3) 21 UUN UV6168 (effective 9/11/2005 – 9/11/2006); (4) 21 UUN UV6168 (effective 9/11/2006 – 9/11/2007); (5) 21 UUN UV6168 (effective 9/11/2007 – 9/11/2008); and (6) 21 UUN UV6168 (effective 9/11/2008 – 3/1/2009) (the "Hartford Primary Policies").  [SUF 53-58.]  The Hartford Primary Policies provide primary liability insurance coverage to Vogue under a "Commercial General Liability Coverage Form" (Forms HG 00 01 10 01 and HG 00 01 06 05), as amended by the Cyberflex Amendment of Coverage B – Personal and Advertising Injury (Forms HC 00 88 10 01 and HC 00 88 06 05).  [SUF 65-66.][4]

---

[3]   Vogue alleges in the Vogue First Amended Complaint of the instant litigation that it was previously known as "Todd Christopher International, Inc. d/b/a Vogue International, and Todd Christopher International, LLC d/b/a Vogue International".  [SUF 80.]  The Policies were issued to "Todd Christopher International DBA Vogue International".  [SUF 77.]  This name change appears to have taken place after the Policies were no longer in effect.  Vogue and "Todd Christopher International DBA Vogue International" are collectively referred to as "Vogue".  This Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment applies to both Vogue and "Todd Christopher International DBA Vogue International".

[4]   Hartford also issued to Vogue umbrella policy numbers: (1) 21 RHU UV5569 (effective 9/11/2003 – 9/11/2004); (2) 21 RHU UV5569 (effective 9/11/2004 – 9/11/2005); (3) 21 RHU UV5569 (effective 9/11/2005 – 9/11/2006); (4) 21 RHU UV5569 (effective 9/11/2006 – 9/11/2007); (5) 21 RHU UV5569 (effective 9/11/2007 – 9/11/2008); and (6) 21 RHU UV5569 (effective 9/11/2008 – 3/1/2009) (the "Hartford Umbrella Policies").  [SUF 59-64.]  The Hartford Umbrella Policies were issued on form numbers XL 00 03 11 00 and XL 00 03 06 05.  [SUF 72-73.]  The Vogue First Amended Complaint agrees that the Hartford

The Hartford Primary Policies provide general liability coverage to Vogue for suits seeking "damages because of" "bodily injury," "property damage," and enumerated "personal and advertising injury" offenses, including the offenses of "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services," and "[c]opying, in your 'advertisement' or 'on your web site', a person's or organization's 'advertising idea' or style of 'advertisement'." [SUF 67-70.]   The Hartford Primary Policies include the following exclusion, as amended by the Cyberflex Amendment of Coverage B – Personal and Advertising Injury (forms HC 00 88 10 01 and HC 00 88 06 05), which provide that the "insurance does not apply to":

### i.   Infringement Of Intellectual Property Rights

"Personal and Advertising Injury" arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your 'advertisement' or on 'your web site', of

(1)   copyright;

(2)   slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

(3)   title of any literary or artistic work.

[SUF 71.]

---

Umbrella Policies are not the subject of this litigation and, therefore, is not at issue here. [SUF 82.]  However, even if the Hartford Umbrella Policies were at issue, coverage under the Hartford Umbrella Policies would be precluded because the Hartford Umbrella Policies include a "personal and advertising injury" exclusion.  [SUF 74-76.]

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

III.    **ARGUMENT.**

    A.    **Summary Judgment, or Alternatively Partial Summary Judgment, Is Appropriate in this Case.**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). As the moving party, Hartford first demonstrates that there are no genuine issues of material fact.  *Horphag Research, Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  Once Hartford has met its burden, the burden then shifts to Vogue to present specific facts showing that contradiction is possible.  *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978) *cert. denied*, 440 U.S. 981, 440 U.S. 981, 99 S. Ct. 1790, 60 L. Ed. 2d 241 (1979).  Such specific facts may not be based upon mere speculation and conjecture.  Instead, Vogue must submit admissible evidence that creates a genuine dispute as to a material fact.  *Id.*

This action presents no triable issues of material fact.  The Hartford Primary Policies and the Hartford Umbrella Policies (collectively "Policies") provide no coverage for the *Moroccanoil* Action as a matter of law.  Hartford respectfully requests that the Court grant summary judgment, or partial summary judgment, in its favor as the undisputed facts demonstrate that Hartford had no duty to defend or indemnify Vogue under the Policies for the *Morocconoil* Action, as a matter of law.

    B.    **Choice of Law.**

"In a diversity case, a federal district court is to apply the law of the forum state for choice of law purposes."  *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir. 2003).

California courts apply California law unless a party litigant affirmatively

7

attempts to invoke the law of a foreign state.  *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989) ("The burden is on the party seeking to invoke foreign law; California applies its own rule of decision unless a party litigant properly invokes the law of a foreign state."); *CRS Recovery, Inc. v. Laxton*, 600 F. 3d 1138, 1143 (9th Cir. 2010); *Integral Resources, Inc. v. Hartford Fire Ins. Co.*, No. 2:14-CV-02308-R (AGRx), 2014 U.S. Dist. LEXIS 83793 at *11-*12 (C.D. Cal. June 13, 2014) ("California courts apply California law on an issue unless a party litigant affirmatively attempts to invoke the law of a foreign state on that issue."); *Washington Mut. Bank v. Superior Court,* 24 Cal. 4th 906, 919, 103 Cal. Rptr. 2d 320 (2001).

Here, rather than invoking the law of another jurisdiction, Vogue has invoked California law with regard to Hartford's obligations to Vogue under the Policies.  [SUF 81.]  As such, in light of Vogue's invocation of California law in its Complaint and First Amended Complaint, California law should apply.

Moreover, "[w]hen neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law." *Homedics,* 315 F.3d at 1138 (citing *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1621, 19 Cal. Rptr. 2d 459 (1993)).  Accordingly, pursuant to Vogue's invocation of California law and because there is no conflict of law, California law should apply to the determination of whether a duty to defend and/or a duty to indemnify exists for the *Moroccanoil* Action.

### C.   Standard for the Duty to Defend.

As the party seeking coverage, Vogue has the initial burden of showing that the *Moroccanoil* Action falls within the Policies' scope of coverage, which Vogue cannot show, as discussed below. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 16, 44 Cal. Rptr. 2d 370 (1995).

"[T]he determination of whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with

the terms of the policy." *Waller*, 11 Cal. 4th at 19. "[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Id.* An insurer may refuse to defend an insured if undisputed facts conclusively show no potential for coverage. *Id.* at 26-27. This includes claims, such as the one here, that fall outside the scope of the applicable insurance policy. *Buss v. Superior Court*, 16 Cal. 4th 35, 48, 65 Cal. Rptr. 2d 366 (1997); *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276, 54 Cal. Rptr. 104 (1966). California law is clear that "[t]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Gray*, 65 Cal. 2d at 276. Moreover, Hartford can also rely on the Policies' exclusions to disclaim coverage. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal. Rptr. 2d 467 (1993).

Here, Vogue cannot meet its burden to show that the *Moroccanoil* Action falls within the scope of coverage under the Policies. The undisputed facts conclusively show that Hartford had no duty to defend or indemnify Vogue in the *Moroccanoil* Action because Vogue cannot show that the *Moroccanoil* Action sought "damages because of" an enumerated "personal and advertising injury" offense, or that the Intellectual Property Exclusion does not apply to preclude coverage.

### D.   The *Moroccanoil* Action Does Not Allege Any "Personal And Advertising Injury"

The Policies provide coverage for "personal and advertising injury" arising out of an enumerated offense committed during the policy period, subject to other policy provisions. [SUF 67-70] *Mez Indus. v. Pac. Nat'l Ins. Co.*, 76 Cal. App. 4th 856, 90 Cal. Rptr. 2d 721 (1999); *Gen'l Accident Ins. Co. v. W. Am. Ins. Co.*, 42 Cal. App. 4th 95, 103, 49 Cal. Rptr. 2d 603 (1996).

Vogue only seeks coverage under two enumerated offenses under the Policies' "Personal and Advertising Injury" coverage grant. [SUF 82-84.] The

Hartford Primary Policies define "personal and advertising injury" as follows:

  17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. <u>Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;</u>

  e. Oral, written or electronic publication of material that violates a person's right of privacy;

  f. <u>Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";</u>

  g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site"; or

  h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

[SUF 68 (emphasis added).]

  Vogue only seeks coverage under the following two enumerated offenses: "d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" ("Disparagement Offense") and "f. Copying, in your "advertisement"

or on "your web site", a person's or organization's "advertising idea" or style of "advertisement" ("Advertising Idea Offense.")  [SUF 82-84.]  Vogue does not seek coverage under any other enumerated offense and does not seek coverage under the Policies' "bodily injury" or "property damage" coverage provisions. [SUF 82-84.]  As discussed herein, the *Moroccanoil* Action does not allege either the Disparagement Offense or the Advertising Idea Offense.  [SUF 82-84.]  In addition, even if it did, the Intellectual Property Exclusion clearly applies to preclude coverage.  *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.,* 838 F.2d 346, 350-352 (9th Cir. 1988) (holding that where the underlying complaint does not state an offense enumerated within policy's personal injury or advertising injury provisions, no coverage exists).  Therefore, Hartford had no duty to defend Vogue in the *Moroccanoil* Action.

E.   **The California Supreme Court's Decision in *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* Eliminates Any Coverage Under the Policies' Disparagement Offense.**

Vogue asserts that even though there is no direct allegation of "disparagement" in the *Moroccanoil* Action, a "disparagement" claim is impliedly alleged and therefore qualifies under the Disparagement Offense of the Policies.   For example, recognizing there are no direct allegations of "disparagement," Vogue asserts in its First Amended Complaint:  "Morocconoil's allegations imply that its products are inferior to Vogue's . . ."  [Vogue First Amended Complaint at ¶ 29.]

The California Supreme Court recently rejected this identical argument in *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277 (2014). *Swift* is directly on point and is the controlling law supporting Hartford's position that an implied "disparagement" claim does not qualify under the Disparagement Offense in Hartford's Policies.

/ / /

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Under California law,

a claim of disparagement requires that a plaintiff show a false or misleading statement that: (1) <u>specifically refers</u> to the plaintiff's product or business <u>and</u> (2) <u>clearly derogates</u> that product or business. Each requirement must be satisfied by express mention or by clear implication.

*Swift*, 59 Cal.4th at 284 (emphasis added); *see Total Call Internat., Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 170, 104 Cal. Rptr. 3d 319 (2010); *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042, 232 Cal. Rptr. 542 (1986).

In *Swift*, Hartford correctly denied coverage to the insured, Ultimate Support Systems ("Ultimate"), because, among other reasons, the underlying litigation did not directly allege that Ultimate disparaged the plaintiffs' product. The plaintiffs in *Swift* manufactured a convertible transport cart called the Multi-Cart. The plaintiffs alleged that Ultimate "impermissibly manufactured, marketed, and sold the Ulti-Cart, and thereby infringed [plaintiffs'] patents and trademarks and diluted the Multi-Cart trademark." *Swift*, 59 Cal.4th at 285. The plaintiffs also alleged that the false and misleading advertising and use of the mark was likely to cause consumer confusion or mistake or deceive the public "as to the affiliation, connection, or association" of Ultimate and plaintiffs. *Id.*

In reaching its conclusion, the *Swift* Court analyzed the history of a disparagement claim, particularly with regard to the requirement of a specific statement referring to a product that clearly derogates that product by "express mention" or "clear implication." The *Swift* Court held that the "specificity requirements . . . <u>significantly limit</u> the type of statements that may constitute disparagement, especially since advertisements and promotional materials often avoid express mention of competitors." *Swift*, 59 Cal.4th at 294 (emphasis added).

In narrowing the interpretation of disparagement by "clear implication," the

*Swift* Court recognized that disparagement claims are limited to "those who are the direct object of criticism and denying it to those who merely complain of nonspecific statement that they believe cause them some hurt. (*Blatty*, *supra*, 42 Cal.3d. at p. 1044.)" *Swift*, 59 Cal.4th at 294. "Disparagement by 'reasonable implication' (*Blatty*, *supra*, 42 Cal.3d at p. 1046; *Total Call*, *supra*, 181 Cal.App.4th at pp. 170-171) requires more than a statement that may conceivably or plausibly be construed as derogatory to a specific product or business. A 'reasonable implication' . . . means a clear or necessary inference." *Swift*, 59 Cal.4th at 295.

In addition, the *Swift* Court found that "[c]onsumer confusion resulting from the similarity of the Ulti-Cart to the Multi-Cart may support a claim of patent or trademark infringement of unfair competition in certain circumstances, **but it does not by itself support a claim of disparagement**." *Id.* at 296 (emphasis added). In short, "**a party's attempt to copy or infringe on the intellectual property of another's product does not, without more, constitute disparagement**." *Id.* (emphasis added); *Homedics*, 315 F.3d 1135; *Maxconn, Inc. v. Truck Ins. Exch.*, 74 Cal.App.4th 1267, 88 Cal. Rptr. 2d 750 (1999). In citing *Homedics*, 315 F.3d 1135, 1142, the *Swift* Court stated:

> Finding no duty to defend, the court reasoned: "It does not follow that because an entity imitated the design of a product, it is, therefore, disparaging it. In point of fact, it's quite the opposite – as has been oft said: imitation is the highest form of flattery." [Citations omitted.]

*Swift*, 59 Cal.4th at 297-98.

Importantly, "[a] false or misleading statement that causes consumer confusion, but does not expressly assert or clearly imply the inferiority of the underlying plaintiff's product, does not constitute disparagement. Because the alleged likeness of the two products did not derogate the Multi-Cart, we reject Ultimate's theory of disparagement based on consumer confusion over the

product name and design." *Swift*, 59 Cal.4th at 297-98.

Vogue is attempting to make the same implied disparagement argument which was flatly rejected by the California Supreme Court in *Swift*. There are simply no allegations of disparagement in the *Morocconoil* Action. Rather than relying on specific allegations in the *Moroccanoil* Action, which do not exist, Vogue is attempting to argue that the allegations in the *Moroccanoil* Action could be read to "imply" that Vogue disparaged Morocconoil.

For example, Vogue asserts that the *Moroccanoil* Action includes allegations that Vogue copied Moroccanoil's trademarks and trade dress in the same manner as Moroccanoil's packaging, labeling, advertisement, and display of its products amount to disparagement by implication because it creates consumer confusion and creates reputational damage. [SUF 6-18, 27-39.]

Under *Swift* and California law, Vogue's invented allegations of implied disparagement in the *Moroccanoil* Action cannot create coverage under the Policies' Disparagement Offense. Hartford had no duty to defend just because Vogue imagined additional facts – *i.e.*, some negative statement about Moroccanoil, which simply does not exist [Vogue First Amended Complaint at ¶¶ 32-33, 42-43] – in an attempt to create coverage under the Hartford Policies. *Gunderson*, 37 Cal. App. 4th at 1114 (holding that mere speculation about the "ways in which the third party claimant might amend its complaint at some future date" is insufficient to trigger coverage); *Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 34-35, 15 Cal. Rptr. 3d 359 (2004) ("while the universe of facts bearing on whether a claim is potentially covered includes extrinsic facts known to the insurer at the inception of the suit as well as the facts in the complaint, it does not include made up facts, just because those facts might naturally be supposed to exist along with the known facts. An insured is not entitled to a defense just because one can imagine some additional facts which would create the potential for coverage.")

1    Vogue also attempts to argue that the allegations "imply that
2  [Moroccanoil's] products are inferior to Vogue's products because Vogue is
3  publicly representing that: (1) Vogue's products (like Morocconoil's) contain
4  Moroccan Argan Oil; and (2) Vogue's products are organic while Moroccanoil's
5  are not (inferred because Morocconoil only alleges that Vogue's products are
6  organic)." [Vogue First Amended Complaint ¶ 29 (emphasis added).] However,
7  Vogue's imagined facts are not supported by allegations in the *Moroccanoil*
8  Action that Vogue made statements or engaged in conduct that Moroccanoil's
9  products are inferior to Vogue's. [SUF 6-45.] Again, speculating about
10 allegations that could be pled cannot create coverage under the Hartford Policies.
11 *Gunderson*, 37 Cal. App. 4th at 1114; *Friedman*, 120 Cal. App. 4th at 34-35.

12   Even if there were direct allegations in the *Moroccanoil* Action that
13 Moroccanoil's products were inferior, which Hartford strongly disputes, any such
14 allegations still do not qualify as disparagement. *Swift*, 59 Cal.4th at 298-99.
15 The *Swift* Court directly rejected this same argument and found no disparagement
16 where the insured argued

17     that the phrase "patent pending" when combined with words like
18     "innovative," "unique," "superior," and "unparalleled" suggests the
19     superiority of the Ulti-Cart and by implication, the inferiority of the
20     Multi-Cart.

21 *Swift*, 59 Cal.4th at 299. The *Swift* Court held that Swift's use of these phrases in
22 its advertisements does not equate to disparagement. *Swift*, 59 Cal.4th at 298-99.
23 The *Swift* Court found that these phrases appear to be more "akin to 'mere
24 puffing,' which under long-standing law cannot support liability in tort." *Swift*,
25 59 Cal.4th at 299, *citing Consumer Advocates v. Echostar Satellite Corp.*, 113
26 Cal.App.4th 1351, 1361, fn. 3, 8 Cal. Rptr. 3d 22 (2003).

27   The *Swift* Court also recognized that if it were to adopt the insured's theory
28 of implied disparagement, "almost any advertisement extolling the superior

15

quality of a company or its products would be fodder for litigation. . . and would interfere with the 'free flow of commercial information." *Swift*, 59 Cal.4th at 299. Therefore, the California Supreme Court held that "[i]n light of the important purposes of commercial speech, "<u>specificity requirements serve to narrow the range of publications</u> in the marketplace that may rise to the level of a legally actionable injurious falsehood." *Swift*, 59 Cal.4th at 299 (emphasis added).

Here, the *Moroccanoil* Action does not even allege that the Moroccanoil products are being characterized or presented as inferior to Vogue's products, or that Vogue has stated its products are superior to Moroccanoil's. [SUF 6-45.] Pursuant to *Swift*, the absence of any allegations that specifically refer to Moroccanoil's products or specifically derogate Moroccanoil's products, there can be no argument that the Moroccanoil Action falls within the claim of implied disparagement.

Accordingly, as there are no allegations in the *Moroccanoil* Action that Vogue made any false or injurious statement about Moroccanoil or Moroccanoil's products and because the gravamen of the *Moroccanoil* Action is trademark infringement, trade dress infringement, unfair competition and false advertising relating to trademark and trade dress infringement, there is no covered "disparagement" claim falling within any enumerated offense under the Policies. Therefore, Hartford did not have a duty to defend Vogue in the *Moroccanoil* Action.

### F.   The *Morocconoil* Action Does Not Allege An "Advertising Idea" Offense Under The Policies.

Vogue also argues that the *Moroccanoil* Action seeks damages for the "personal and advertising injury" enumerated offense f. of "Copying, in your 'advertisement' or on 'your web site', a person's or organization's 'advertising idea' or style of 'advertisement'" ("Advertising Idea Offense.")   Once again,

1  Vogue is wrong.

2      Simply put, for the *Moroccanoil* Action to fall within the Advertising Idea

3  Offense, the "advertising idea" or style of "advertisement" must be in "your" –

4  *i.e.*, Vogue's – advertisement.  The Policies define "advertisement" as follows:

5      1.    "Advertisement" means the widespread public dissemination of

6            information or images that has the purpose of inducing the sale

7            of goods, products or services through:

8            a.    (1)    Radio;

9                  (2)    Television;

10                 (3)    Billboard;

11                 (4)    Magazine;

12                 (5)    Newspaper; or

13                 (6)    The Internet;

14           b.    Any other publication that is given widespread public

15                 distribution.

16           **However, "advertisement" does not include:**

17           **a.    The design, printed material, information or images**

18                 **contained in, on or upon the packaging or labeling of**

19                 **any goods or products**; or

20           b.    An interactive conversation between or among persons

21                 through a computer network.

22  [SUF 69 (emphasis added).]

23      Pursuant to the definition of "advertisement", the product's packaging or

24  labeling is ***not*** considered an advertisement.  [SUF 69.]  The Policies' clear and

25  explicit definition of "advertisement" controls here.  *Foster-Gardner, Inc. v. Nat'l*

26  *Union Fire Ins. Co.*, 18 Cal. 4th 857, 868, 77 Cal. Rptr. 2d 107 (1998) ("If

27  contractual language is clear and explicit, it governs.");  *Legarra v. Federated*

28  *Mut. Ins. Co.*, 35 Cal. App. 4th 1472, 1479, 42 Cal. Rptr. 2d 101(1995) ("An

insurer may select the risks it will insure and those it will not and a clear exclusion will be respected.")

Here, there are no allegations that an alleged "advertisement" is distinct from the products and labels such that it would fall under the Policies' requirement for "copying, in your advertisement." [SUF 6-45.] Rather, the only allegations of "advertisement" relate to Vogue's products and labeling of its own products [SUF 6-18, 27-39], which the Policies specifically exclude from the definition of "advertisement." [SUF 69.] Accordingly, the *Moroccanoil* Action does not include any allegations that fall within the Advertising Idea Offense.

Therefore, as there are no other claims presented in the *Moroccanoil* Action, there can be no coverage under the Advertising Idea Offense of the Policies.

**G.** **The Intellectual Property Exclusion Is Clear and Unambiguous and Bars Coverage for the *Moroccanoil* Action.**

**1.** **The *Moroccanoil* Action Arose Out Of Trademark And Trade Dress Infringement And Each Cause Of Action Was Founded On The Same Factual Allegations As Trademark And Trade Dress Infringement.**

Even if any of the allegations in the *Moroccanoil* Action could fall within an enumerated "personal or advertising injury" offense under the Policies, which they cannot, the Policies contain an Intellectual Property Exclusion that excludes coverage for "personal and advertising injury" "[a]rising out of the violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." [SUF 71.]

Moroccanoil's entire claim against Vogue is based upon the allegation that Vogue's use of the phrase "Moroccan Argan Oil" on Vogue's products, advertisements, and marketing infringes on the Moroccanoil's marks. [SUF 6-20,

18

27-41.]   Regardless of whether coverage is determined based upon the *Moroccanoil* Second Amended Complaint or the *Moroccanoil* Third Amended Complaint, the gravamen of the allegations in the *Moroccanoil* Action is trademark and trade dress infringement, which is excluded under the Policies. [SUF 6-20, 27-41.]  Indeed, throughout each of the pleadings in the *Moroccanoil* Action, Moroccanoil asserts "Allegations Common To All Causes of Action" and includes an allegation that Vogue "attempt to unfairly capitalize on Morocconoil's Trademarks…."  [SUF 13, 34.]

Additionally, the first and second causes of action in the *Moroccanoil* Action are for trademark infringement.  [SUF 5, 26.]  The factual allegations within the initial causes of action for trademark infringement are incorporated into each of the subsequent causes of action in the *Moroccanoil* Action.  [SUF 24, 45.]  Each cause of action began with a paragraph incorporating "by reference each and every allegation" previously alleged.  [SUF 24, 45.]  Because the gravamen of the *Moroccanoil* Action is a claim for trademark and trade dress infringement, the Intellectual Property Exclusion squarely applies to preclude coverage for the entire *Morocconoil* Action.  *Integral Resources*, 2014 U.S. Dist. LEXIS 83793.  In broadly construing a Telephone Consumer Protection Act ("TCPA") exclusion in *Integral Resources*, the District Court held:

> It is undisputed that the claims in the original Complaint and the FAC all arose out of the same acts--i.e. the unsolicited telephone calls to Pacleb's cellular telephone. . . Indeed, all the factual allegations in the two claims for statutory violations of the TCPA were incorporated into all of the subsequent common law claims for violation of privacy rights and negligence. . . . Each claim, in fact, began with a paragraph incorporating all prior allegations by reference, evidencing that the common law claims factually arose out the violations of the TCPA. . . As such, it is clear that the gravamen of the FAC was the violations of

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

the TCPA and not the last minute addition of the negligence or invasion of privacy labels.

*Integral Resources*, 2014 U.S. Dist. LEXIS 83793, *31-32.   Here, neither speculation of imagined facts by the insured or its counsel nor the technical labels for the causes of action can change the fact that the *Morrocanoil* Action is based upon claims for trademark and trade dress infringement, which is squarely excluded by the Policies' Intellectual Property Exclusion.

Courts are in alignment on this issue.  *See Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135, 1154 (C.D. Cal. 2013), *quoting Swain v. Cal. Cas. Ins. Co.*, 99 Cal. App. 4th 1, 8, 120 Cal. Rptr. 2d 808 (2002) ("[C]overage turns not on the technical cause of action pleaded by the third party but on the facts alleged in the underlying complaint or otherwise known to the insurer."); *Friedman*, 120 Cal.App.4th at 35–36 ("[W]hile the universe of facts bearing on whether a claim is potentially covered includes extrinsic facts known to the insurer at the inception of the suit as well as the facts in the complaint, it does not include made up facts, just because those facts might naturally be supposed to exist along with the known facts.  An insured is not entitled to a defense just because one can imagine some additional facts which would create the potential for coverage. . . .  [] . . . [] . . .  You don't prove an insurer has a duty to defend merely by making a good argument for potential coverage, you show it by demonstrating a potential for coverage under the terms of the actual policy.") (emphasis added); *Nat'l Union Fire Ins. Co. v. Siliconix Inc.*, 726 F. Supp. 264, 272 (N.D.Cal. 1989) (An insured's counsel's "self-serving legal opinion" about potentially covered claims "hardly constitutes a 'fact' known to [the insurer] which, under *Gray*, gives rise to a . . . duty to defend.").  Thus, the gravamen of the *Moroccanoil* Action is trademark and trade dress infringement which is specifically excluded under the Policies.  Accordingly, the Intellectual Property Exclusion applies to preclude coverage in the *Morocconoil* Action.

2. **"Arising Out Of" As Used in the Intellectual Property Exclusion is Construed Broadly to Bar Coverage.**

The Intellectual Property Exclusion excludes coverage for "personal and advertising injury" "[a]rising out of the violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." [SUF 71.] California courts routinely uphold similar intellectual property exclusions. *Indus. Indem. Co. v. Apple Computer, Inc.*, 79 Cal. App. 4th 817, 95 Cal. Rptr. 2d 528 (1999); *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647 (1999); *Aloha Pac., Inc. v. Cal. Ins. Guar. Ass'n.*, 79 Cal. App. 4th 297, 93 Cal. Rptr. 2d 148 (2000) (holding that a trademark exclusion precludes coverage for trade dress cause of action); *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of America*, 10 Fed. Appx. 438 (9th Cir. Mar. 22, 2001) (unpublished) (citing *Aloha* with approval).

California courts have also routinely given a broad interpretation to the terms "arising out of" or "arising from" in policy exclusions. *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 10 Fed. Appx. 438, 439-440 (9th Cir. Mar. 22, 2001) (citing *Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1080 (9th Cir. 1985)) ("California courts interpret the term 'arising out of' broadly in various kinds of insurance provisions," and that "[t]his is true even when the term is used in an exclusionary provision and a broad interpretation results in limiting coverage."); *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557 (1999) ("California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions.")

Additionally, the broad interpretation of "arising out of" broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection. *City of Richmond*, 763 F.2d at 1080; *Southgate Recreation & Park Dist. v. Cal. Ass'n for Parks & Recreation Ins.*, 106 Cal. App. 4th 293, 301,

130 Cal. Rptr. 2d 728 (2003).  The phrase "arising out of" "requires [the court] to examine the conduct underlying the . . . lawsuit, instead of the legal theories attached to the conduct."  *Century Transit Systems, Inc. v. Am. Empire Surplus*, 42 Cal. App. 4th 121, 127 n.4, 49 Cal. Rptr. 2d 567 (1996) (internal quotation marks omitted).

In *Aloha Pacific, Inc. v. California Ins. Guarantee Ass'n,* 79 Cal. App. 4th 297, 93 Cal. Rptr. 2d 148 (2000), the court addressed the phrase "arising out of" in the context of the trademark exclusion.  The court recognized that an exclusion from a suit arising out of trademark infringement

> does not import any particular standard of causation or theory of liability into an insurance policy.  Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.

*Id*. at 318-319.

At issue in *Aloha* was whether the trademark infringement exclusion, which excluded coverage for trademark, service mark or trade name infringement, could be broadly applied to a trade dress infringement claim when trade dress was not specifically identified within the exclusion.  Relying upon the fact that a trade dress infringement claim is a species of a trademark infringement claim, the *Aloha* Court broadly construed and applied the "arising out of" language in the trademark infringement exclusion to preclude coverage for the trade dress infringement claim.  *Id*. at 322.  Specifically, the *Aloha* Court held:

> … In this situation, even if trademark infringement did not take in trade dress infringement, the significant causal connection between the injury and the trademark infringement results in the injury being excluded from coverage by the policy language quoted in the preceding sentence, when read with the insuring agreement.

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

1   Accordingly, we hold that appellants' trade dress claim is not covered
2   by the Canadian policy.
3   *Id*.
4       Thus, where an exclusion contains the broadly interpreted and applied
5   "arising out of" language, the exclusion in the policy may be applied to different
6   causes of action that are not specifically listed within the exclusion. *See also*
7   *Nestle*, 10 Fed. Appx. at 439-440 (The Ninth Circuit applied the breach of
8   contract exclusion to Lanham Act claims because "Nestle's claims all arise out of
9   the factual situation that constituted a breach of contract," which were excluded
10  by the broad application of the "arising out of" language in the breach of contract
11  exclusion.); *Integral Resources*, 2014 U.S. Dist. LEXIS 83793 (The District
12  Court applied a statutory exclusion to common law causes of action.)
13      Indeed, courts construing California law have repeatedly held that the
14  phrase "arising out of" allows for a broad link between the factual situation and
15  the event creating liability, even when used in the context of an exclusion. *Zurich*
16  *Specialties London, Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc*., 425
17  Fed. Appx. 554 (9th Cir. Mar. 28, 2011) (upholding an "arising out of"
18  insolvency or bankruptcy exclusion); *Am. Guar. & Liab. Ins. Co. v. Lexington*
19  *Ins. Co*., 517 Fed. Appx. 599 (9th Cir. May 6, 2013) (upholding an "arising out
20  of" ongoing operations limitation); *Trenches, Inc. v. Hanover Ins. Co*., 2014 U.S.
21  App. LEXIS 9644 (9th Cir. May 23, 2014) ("In California, the phrase 'arising out
22  of' is construed broadly, even if in an exclusion, to mean 'originating from,'
23  'flowing from,' 'incident to,' or 'having a connection with.'"); *Integral*
24  *Resources*, 2014 U.S. Dist. LEXIS 83793 at *11-*12; *Marquez Knolls Property*
25  *Owners Ass'n, Inc. v. Executive Risk Indem., Inc*., 153 Cal. App. 4th 228, 62 Cal.
26  Rptr. 3d 510 (2007) (upholding an "arising out of" the construction of any
27  structure exclusion); *Medill v. Westport Ins. Corp*., 143 Cal. App. 4th 819, 49
28  Cal. Rptr. 3d 570 (2006) (upholding an "arising out of" breach of contract

23

1   exclusion); *Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100, 107, 35 Cal. Rptr.

2   3d 738 (2005) (upholding an "arising out of" known or unknown defects

3   exclusion).

4         In short, "[i]t is settled that this language . . . broadly links a factual

5   situation with the event creating liability, and connotes only a minimal causal

6   connection or incidental relationship." *Syufy*, 69 Cal. App. 4th at 328; *City of*

7   *Richmond,* 763 F.2d at 1080 ("'Arising out of' are words of much broader

8   significance than 'caused by'.   They are ordinarily understood to mean

9   'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or

10  in short, 'incident to, or having connection with'.")

11        The phrase "arising out of" "requires [the court] to examine the conduct

12  underlying the . . . lawsuit, instead of the legal theories attached to the conduct."

13  *Century Transit Sys.*, 42 Cal. App. 4th 121, 127 n.4, 49 Cal. Rptr. 2d 567 (1996)

14  (internal quotation marks omitted); *GK Skaggs, Inc. v. Hartford Cas. Ins. Co.*,

15  2014 U.S. App. LEXIS 11161 (9th Cir. Cal. Jun. 16, 2014) ("'[E]xamin[ing] the

16  conduct underlying [L&N's] lawsuit, instead of the legal theories attached to the

17  conduct,' the injury here arose out of a breach of contract.").

18        Here, Moroccanoil seeks damages "arising out of" trademark infringement

19  and trade dress infringement.  In fact, the entire *Moroccanoil* Action – including

20  the unfair competition claim and the cancellation of Vogue's trademark – is a

21  dispute over the similarity in the names "Moroccan Argan Oil" and

22  "Moroccanoil," and Vogue's alleged appropriation of all the consumer goodwill

23  associated with Moroccanoil's trademark and trade dress.   Indeed, Vogue's

24  complaint against Hartford fails to even address the application of the Intellectual

25  Property Exclusion contained in the Policies.

26        Accordingly, even if the *Moroccanoil* Action included allegations that fall

27  within the Disparagement Offense or the Advertising Idea Offense, which it did

28  not, the Intellectual Property Exclusion would apply to preclude coverage for the

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

*Moroccanoil* Action because the gravamen of Moroccanoil's claims arise out of violation of intellectual property rights.   Moreover, pursuant to *Aloha*, the Intellectual Property Exclusion is broadly applied to the other causes of action alleged, such as unfair competition or false advertising, because those causes of action are premised on an intellectual property right.   Thus, the Intellectual Property Exclusion precludes coverage for the *Moroccanoil* Action.

### H.   As There Is No Duty to Defend, Hartford Has No Duty to Indemnify.

Where there is no duty to defend, there can be no duty to indemnify as a matter of law.  *Buss*, 16 Cal. 4th at 47, fn. 10; *see also Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958, 103 Cal. Rptr. 2d 672 (2001) ("Where there is a duty to defend, there may be a duty to indemnify; but where there is no duty to defend, there cannot be a duty to indemnify.").   Hartford has established that it had no duty to defend Vogue in the *Moroccanoil* Action, because there is no potential for coverage under the Policies.   Since there is no potential for coverage, there is no duty to indemnify Vogue for any defense fees, costs and settlement reached in the *Moroccanoil* Action.

## IV.   CONCLUSION.

For the reasons set forth above, Hartford requests that the Court grant its Motion for Summary Judgment, or in the Alternative Partial Summary Judgment, on each of Vogue's claims against Hartford.

Dated:  July 14, 2014                TRESSLER LLP

By:  /s/ - David Simantob
                          David Simantob
                          Linda T. Hoshide
                          Jeanne Kuo Riggins
                          Attorneys for Defendant
                          HARTFORD CASUALTY INSURANCE
                          COMPANY

**PROOF OF SERVICE**

*Vogue International, LLC d/b/a Vogue Int'l v. Hartford Casualty Ins. Co.*
USDC - Case No. 2:14-cv-03570-PA-MRW
TSMP No.:  240-469

I am over the age of eighteen years and not a party to the within action.  I am employed by TRESSLER LLP, whose business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067.  On July 14, 2014, I served the within document(s) described as:  **DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** to be served on the interested parties in this action:

☒      **BY ELECTRONIC SERVICE** - I served a true and correct copy, with all exhibits, electronically on counsel of record by transmission through CM/ECF.  This service complies with General Order No. 08-02 of the U.S. District Court for the Central District of California.

*Attorneys for Plaintiff*

David A. Gauntlett, Esq.
James A. Lowe, Esq.
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:  (949) 553-1010
Facsimile:   (949) 553-2050
Email:  dag@gauntlettlaw.com; jal@gauntlettlaw.com

☒      (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of July, 2014 at Los Angeles, California.

<u>/s/ Lucille R. Aguiluz</u>
Lucille R. Aguiluz

PROOF OF SERVICE