**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile:  (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com

Attorneys for Plaintiff
VOGUE INTERNATIONAL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| VOGUE INTERNATIONAL, LLC d/b/a VOGUE INTERNATIONAL, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation,<br><br>Defendant. | Case No.: 2:14-cv-03570-PA (MRWx)<br><br>Hon. Percy Anderson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S DUTY TO DEFEND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 11, 2014<br>Time: 1:30 p.m.<br>Courtroom: 15 |

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 56, Plaintiff Vogue International, LLC d/b/a Vogue International ("Vogue") seeks an order herein that Defendant Hartford Casualty Insurance Company ("Hartford") owed a duty to defend Vogue in the *Moroccanoil suit*.[1] This motion seeks an order declaring that Vogue was entitled to a defense from Hartford in the *Moroccanoil suit*, recovery of its reasonable

---

[1] *Moroccanoil, Inc. v. Vogue Int'l*, No. 2:10-cv-10048-DMG-AGR (C.D. Cal.) (Dec. 29, 2010).

1   defense expenses subject to proof (from the date of notice to Hartford), and
2   prejudgment interest from date of each invoice.

3        This motion is made following the conference of counsel pursuant to L.R. 7-3,
4   which took place on June 3, 2014 at which time the parties did not resolve this matter
5   but agreed on a briefing schedule for this matter. This Motion is filed in accordance
6   with the parties' briefing schedule and pursuant to the Order approving that schedule
7   of the court on June 24, 2014. This motion is based on this *Notice of Motion*, the
8   attached *Memorandum of Points and Authorities*, the *Statement of Uncontroverted*
9   *Facts and Conclusions of Law,* the *Declaration of Bill Rohr,* and the *Declaration of*
10  *Kieran Doyle* filed concurrently herewith, all pleadings and paper on file in this
11  action, and upon such matters as may be presented to the Court at the time of hearing.

12

13  Dated:  July 14, 2014                    **GAUNTLETT & ASSOCIATES**

14

15                                           By:  /s/ David A. Gauntlett
16                                               David A. Gauntlett
                                                 James A. Lowe
17                                           Attorneys for Plaintiff
18                                           VOGUE INTERNATIONAL, LLC

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

I.   SUMMARY OF ARGUMENT ................................................................1

4

II.   HARTFORD POLICY ........................................................................2

5

III.   THE RULES OF CONSTRUCTION SUPPORT FINDING A
DEFENSE ..........................................................................................3

6

    A.   The Potential for Coverage Suffices to Establish a Defense ...............3

7

8

    B.   The Duty to Defend Can Arise from Inferences from Facts
Alleged and Those That Evidence a Potential for Amendment..........4

9

    C.   The Articulated Theory for Recovery of Damages Is Not
Germane to Analysis of Potential Coverage ....................................4

10

    D.   Facts, Not Labels, Determine the Potential for Coverage ..................5

11

IV.   IMPLICIT DISPARAGEMENT IS FACTUALLY ALLEGED AND
TRIGGERS POTENTIAL COVERAGE UNDER OFFENSE (d) ...............5

12

    A.   The Elements to Establish Disparagement Are Satisfied Here ...........5

13

14

        1.   A Three Part Test Applies to Establish Potential
Coverage ...................................................................................5

15

        2.   "Injury Arising Out Of" … [Disparagement] Is Alleged..........5

16

        3.   The "Oral, Written or Electronic Publication" Element
Is Met.......................................................................................7

17

18

    B.   Implicit Disparagement .....................................................................8

19

    C.   Implicit Disparagement Has Been Found in Other Analogous
Settings Like the Instant Trademark Cancellation dispute...............11

20

        1.   Publications Question Moroccanoil's Trademark Rights .......11

21

        2.   Misstatements Of "Equivalence" As Well As Superiority......12

22

        3.   Publications That Suggest That Moroccan Oil's Non-
Organic, Higher Priced Products Were Undesirable..............13

23

24

V.   COVERAGE UNDER OFFENSE (f) FOR "COPYING IN YOUR
'ADVERTISEMENT'   A[N]   …   ORGANIZATION'S
'ADVERTISING IDEA' OR 'STYLE OF ADVERTISEMENT'" ............14

25

    A.   There Are Three Elements to Establish Coverage Under
Offense (f)........................................................................................14

26

27

    B.   "Copying . . . of a[n] … Organization" ...........................................15

28

i

**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**Case No. 2:14-cv-03570-PA (MRWx)**

C.   Copying of Moroccanoil's "Moroccan Oil" "Advertising Idea" or "Style of Advertisement" ................................................16

1.   "Moroccan Oil" Is an "Advertising Idea"..............................16

2.   "Copying" Is Alleged ............................................17

D.   In Your "Advertisement" ................................................18

E.   A Recent Decision, Applying California Law, Presumed that a Defense Would Arise For Claims of Trademark Cancellation Under Offense (f) ................................................19

VI.   NO EXCLUSIONS BAR A DEFENSE ................................................20

A.   The "Knowing Violation" and "Knowledge of Falsity" Exclusions ................................................20

1.   Pertinent Policy Language ................................................20

2.   The Asserted Claims Can Establish Liability Without Implicating Either Scienter Based Exclusion for They Cannot Bar a Defense ................................................21

B.   The Intellectual Property Exclusion ................................................21

1.   Pertinent Policy Language ................................................21

2.   Offense (d) ................................................22

3.   Offense (f) ................................................23

C.   Material Published Prior to Policy Period ................................................24

D.   Quality or Performance of Goods ................................................24

VII.   CONCLUSION ................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Align Tech., Inc. v. Fed. Ins. Co.*,
   673 F. Supp. 2d 957 (N.D. Cal. (S.J. Div.) 2009) ...........................................22, 23

*Am. Simmental Ass'n v. Coregis Ins. Co.*,
   282 F.3d 582 (8th Cir. (Neb.) 2002)...................................................................15

*AMCO Ins. Co. v. Inspired Techs., Inc.*,
   648 F.3d 875 (8th Cir. (Minn.) 2011)..................................................................21

*AMCO Ins. Co. v. Lauren-Spencer, Inc.*,
   500 F. Supp. 2d 721 (S.D. Ohio 2007) ...............................................................18

*Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*,
   302 F.3d 1049 (9th Cir. (Cal.) 2002)....................................................................9

*Apt. Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*,
   593 F.3d 1188 (10th Cir. 2010) ..........................................................................16

*Arnette Optic Illusions, Inc. v. ITT Hartford Grp.*,
   43 F. Supp. 2d 1088 (C.D. Cal. 1998) ................................................................24

*Aurafin-OroAmerica, LLC v. Fed. Ins. Co.*,
   188 Fed. Appx 565 (9th Cir. (Cal.) 2006) ..........................................................24

*Bankwest v. Fid. & Deposit Co. of Md.*,
   63 F.3d 974 (10th Cir. (Kan.) 1995).....................................................................8

*Burgett, Inc. v. Am. Zurich Ins. Co.*,
   830 F. Supp. 2d 953 (E.D. Cal. 2011) ................................................................11

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008) .....................................10

*CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*,
   720 F.3d 71 (2d Cir. 2013) ................................................................................21

*Edwards Theatres, Inc. v. United National Ins. Co.*,
   126 Fed. Appx. 831 (9th Cir. (Cal.) 2005).........................................................25

iii

*Emp'rs Ins. of Wausau v. Granite State Ins. Co.*,
  330 F.3d 1214 (9th Cir. (Cal.) 2003) ........................................................ 13

*Gen. Elec. Co. v. Sargent & Lundy*,
  916 F.2d 1119 (6th Cir. (Ky.) 1990) .......................................................... 8

*Hartford Fire Ins. Co. v. Vita Craft Corp.*,
  911 F. Supp. 2d 1164 (D. Kan. 2012) ................................................. 6, 23

*Hester v. Navigators Ins. Co.*,
  917 F. Supp. 2d 290 (S.D.N.Y. 2013) ............................................... 20, 23

*Hudson Ins. Co. v. Colony Ins. Co.*,
  624 F.3d 1264 (9th Cir. (Cal.) 2010) .......................................................... 5

*Hyman v. Nationwide Mut. Fire Ins. Co.*,
  304 F.3d 1179 (11th Cir. (Fla.) 2002) ...................................................... 16

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  600 F.3d 1092 (9th Cir. (Cal.) 2010) ........................................................ 15

*Inc. v. St. Paul Fire & Marine Ins. Co.*,
  590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008) ......................... 10

*Jar Labs. LLC v. Great Am. E&S Ins. Co.*,
  945 F. Supp. 2d 937 (N.D. Ill. 2013) .................................................. 12, 24

*Johnson & Johnson v. Carter-Wallace, Inc.*,
  631 F.2d 186 (2d Cir. (N.Y.) 1980) .......................................................... 21

*McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*,
  989 S.W.2d, 168 (1999) ............................................................................... 8

*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*,
  761 F. Supp. 2d 904 (N.D. Cal. (S.F. Div.) 2011) *aff'd*, 495 Fed. Appx. 830
  (9th Cir. 2012) ........................................................................................... 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Tech., Inc.*,
  233 Fed. Appx. 614 (9th Cir. (Cal.) 2007) .............................................. 22

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Techs., Inc.*,
  466 Fed. Appx. 653 (2012) ....................................................................... 12

iv

*Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*,
   435 F.3d 729 (7th Cir. (Ill.) 2006) ...................................................................... 15

*Novell, Inc. v. Vigilant Ins. Co.*,
   421 Fed. Appx. 872 (10th Cir. (Utah) 2011) ..................................................... 22

*Ohio Cas. Ins. Co. v. Cloud Nine, LLC*,
   464 F. Supp. 2d 1161 (D. Utah 2006) *rev'd sub nom. The Ohio Cas. Ins. Co.*
   *v. Unigard Ins. Co.*, 458 Fed. Appx. 705 (10th Cir. 2012) ............................. 21

*ProLink Holdings Corp. v. Fed. Ins. Co.*,
   688 F.3d 828 (7th Cir. (Ill.) 2012) ..................................................................... 22

*R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*,
   287 F.3d 242 (2d Cir. (Conn.) 2002) .................................................................. 19

*Safety Dynamics, Inc. v. Gen. Star Indem. Co.*,
   475 Fed. Appx. 213 (9th Cir. (Az.) 2012) .......................................................... 25

*Street Surfing, LLC v. Great Am. E&S Ins. Co.*,
   ___ F.3d ___, 2014 U.S. App. LEXIS 10737 (9th Cir. Cal. June 10, 2014) 16, 19, 24

*Union Ins. Co. v. Knife Co.*,
   897 F. Supp. 1213 (W.D. Ark. 1995) ................................................................. 18

*Vector Prods. v. Hartford Fire Ins. Co.*,
   397 F.3d 1316 (11th Cir. (Fla.) 2005) ................................................................ 11

*Western Int'l Syndication Corp. v. Gulf Ins. Co.*,
   222 Fed.Appx. 589 (9th Cir. (Cal.) 2007) .......................................................... 11

*Zenith Elecs. Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999) ............................................................................ 5

STATE CASES

*Acuity v. Bagadia*,
   750 N.W.2d 817 (Wis. 2008) ............................................................................. 17

*Atl. Mut. Ins. Co. v. J. Lamb, Inc.*,
   100 Cal. App. 4th 1017 (2002) ................................................................. 5, 12, 20

*Bear Wolf, Inc. v. Hartford Ins. Co. of Southeast,*
   819 So. 2d 818 (2002) ................................................................. 19

*Belmonte v. Emp'rs Ins. Co.,*
   83 Cal. App. 4th 430 (2000) ........................................................ 4

*Brown v. Kelly Broad. Co.,*
   48 Cal. 3d 711 (1989) .................................................................. 7

*Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.,*
   762 N.W.2d 572 (Minn. 2009) ................................................... 17

*Gray v. Zurich Ins. Co.,*
   65 Cal. 2d 263 (1966) .................................................................. 4

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.,*
   ___ Cal. 4th ___, 2014 Cal. LEXIS 3765 (2014) .....................8, 9, 11, 14

*Horace Mann Ins. Co. v. Barbara B.,*
   4 Cal.4th 1076 (1993) .................................................................. 4

*Kazi v. State Farm Fire & Cas. Co.,*
   24 Cal. 4th 871 (2001) ................................................................ 16

*Montrose Chem. Corp. of Cal. v. Super. Ct.,*
   6 Cal. 4th 287 (1993) ...........................................................3, 4, 18

*Safeco Ins. Co. of Am. v. Robert S.,*
   26 Cal. 4th 758 (2001) ................................................................ 15

*Sawyer v. W. Bend Mut. Ins. Co.,*
   821 N.W.2d 250 (Wis. Ct. App. 2012) ....................................... 21

*Scottsdale Ins. Co. v. MV Transp.,*
   36 Cal. 4th 643 (2005) ..............................................................4, 9

*Super Duper, Inc. v. Pa. Nat'l Mut. Cas. Ins. Co.,*
   683 S.E.2d 792 (S.C. 2009) ....................................................... 17

*TRB Invs., Inc. v. Fireman's Fund Ins. Co.,*
   40 Cal. 4th 19 (2006) ................................................................. 17

**DOCKETED CASES**

*Arquilla v. International Ins. Co.*,
No. C-86-5980 MHP, 1988 U.S. Dist. LEXIS 17576 (N.D. Cal. July 15, 1988) ................................................................................................ 7

*Blackstone Int'l Ltd. v. Maryland Cas. Co.*,
No. 2302 Sept.Term 2012, 2014 Md. App. LEXIS 17 (Md. Ct. Spec. App. Feb. 28, 2014) ........................................................................................ 17

*Cincinnati Ins. Co. v. Crown Labs. Inc.*,
No. 2:08-CV-240, 2012 WL 1565359 (E.D. Tenn. Apr. 30, 2012) ................ 12

*Hewlett Packard Co. v. ACE Prop. & Cas. Co.*,
No. C-99-20207 JW, 2003 U.S. Dist. LEXIS 3586 (N.D. Cal. (San Jose Div.) March 4, 2003) ................................................................................ 18

*Indian Harbor Ins. Co. v. Hartford Cas. Ins. Co.*,
No. B192829, 2007 Cal. App. Unpub. LEXIS 10709 (Cal. App. 2d Dist. Oct. 11, 2007). ........................................................................................ 24

*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*,
No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005) ............... 7

*Miranda v. Cal. Capital Ins. Co.*,
No. A126778, 2011 WL 1168064 (Cal. Ct. App. March 29, 2011) .......... 8, 13

*Nelson v. West Am. Ins. Co.*,
No. B143838, 2004 Cal. App. Unpub. LEXIS 5606 (Cal. Ct. App. June 14, 2004) ...................................................................................................... 7

*Ohio Cas. Ins. Co. v. Albers Med., Inc.*,
No. 03-1037-CV-W-ODS, 2005 WL 2319820 (W.D. Mo. Sept. 22, 2005) .......... 17

*Tria Beauty, Inc. v. National Fire Ins. Co. of Hartford*,
No. C12-05465 WHA, 2013 U.S. Dist. LEXIS 71499 (N.D. Cal. May 20, 2013) .................................................................................................... 25

**FEDERAL RULES AND STATUTES**

15 U.S.C. § 1052(d) .......................................................................... 21, 23

Copyright Act, 17 U.S.C. § 106(5) ....................................................................... 19

**OTHER AUTHORITIES**

4 J. Thomas *McCarthy, McCarthy on Trademarks and Unfair Competition* §
    27:10 .............................................................................................................. 5

David A. Gauntlett, INSURANCE COVERAGE OF INTELLECTUAL PROPERTY ASSETS
    §17.01 Wolters Kluwer (2nd ed. 2013, 2014 Supplement). ................................ 18

Lisa Nahajec, *'Whoever thought tuna had drama?' A Critical Stylistic Analysis
    of Negation in Advertising Texts*, *in* CADAAD 2010 BOOK OF ABSTRACTS 70
    (Anna Ewa Wieczorek, 2010) ........................................................................... 17

RANDOM HOUSE UNABRIDGED DICTIONARY 1343 (2d ed. 1993) ............................... 16

RESTATEMENT (SECOND) OF TORTS § 630 (1977) ..................................................... 8

# I.    SUMMARY OF ARGUMENT

The claims in the underlying *Moroccanoil suit* included Unfair Competition under the Lanham Act §1125(a) Statutory Unfair Competition under BPC §17500 and Common Law Unfair Competition. The facts underlying these claims for relief assert liability, as well as Cancellation of Trademark No. 3,820,162 issued to Vogue, that "arises out of" *two* "offenses", (d) and (f), in Hartford's policy (the "Policy") implicating "personal and advertising injury" coverage.

**First**, offense (d) covers "written … publication of material that … disparages a[n] organization's … goods, products or services." **[Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 6]** This offense was triggered by Vogue's alleged promotional activities: (1) *questioning in the marketplace* Moroccanoil's right to solely control use of the term "Moroccan Oil," and (2) *implying* that Moroccanoil's products, which did not purport to be "organic" (as did Vogue's), were too aggressively priced. **[SUF ¶ 10 (Moroccanoil's Third Amended Complaint ("MTAC") ¶¶15-20, 22, 23, 25, 26)]** These publications led the public to presume, according to Moroccanoil, that its right to use the trademark "Moroccan Oil" was not valid or enforceable, and that Moroccanoil was a price gouger. **[SUF ¶ 10 (MTAC ¶20, 22)]**

**Second**, offense (f) covers "copying, in your 'advertisement' or on 'your web site', a[n] … organization's 'advertising idea' or style of 'advertisement'." **[SUF ¶ 7]** This offense was triggered by Moroccanoil's claim for trademark cancellation, premised on its express allegation that Vogue copied the "Moroccan Oil" trademark in a manner that "harmed its business, goodwill, and property."

Moreover, the duty to defend is not barred by any intent-based or intellectual property exclusion, since the claims supporting liability under offense (d) can be established without proof that Vogue acted with an intent to harm Moroccan Oil. Offenses (d) and (f) also fall outside the scope of Hartford's "intellectual property exclusion" as both offenses pertain to claims addressing unfair competition, not

intellectual property. **[SUF ¶ 6, 7]**

## II.   HARTFORD POLICY

Hartford issued to Vogue a succession of primary commercial general liability policies starting on September 11, 2003 and renewed annually until cancelled on March 1, 2009. **[SUF ¶ 4]** The same policy forms were used from September 11, 2005 through March 1, 2009 **[SUF ¶ 4]** and provide as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.   Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . . .

**SECTION IV - DEFINITIONS**

**1.** "**Advertisement**" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:. . . .

b. Any other publication that is given widespread public distribution. . . . .

**2.** "Advertising idea" means any idea for an "advertisement." . . . .

**17.** "Personal and advertising injury" means injury ... arising out of one or more of the following offenses: . . . .

d. Oral, written or electronic publication of material that ... disparages a[n] ... organization's goods, products or services. . . .

f. Copying in your "advertisement," a[n] ... organization's "advertising idea" or style of "advertisement"; ... **[SUF ¶ 6]**

**CYBERFLEX AMENDMENT OF COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

This endorsement broadens coverage under **HG 00 01** for your web site or internet related activities.

**A.**      **Section V - Definitions** is changed as follows:

**1. Definition Of Advertisement - Internet**

The following is added to Paragraph **a.** of the definition of "advertisement": "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

**a. (6)** The Internet;

**2. Definition of Personal And Advertising Injury**

**a. Your Web Site**

Paragraphs **f.** and **g.** of the definition of "personal and advertising injury" are replaced by the following:. . . .

**f.**      Copying, in your "advertisement" or on "your web site", a[n] ... organization's "advertising idea" or style of "advertisement";. . . .

**3. Definition of "Your Web Site"**

The following definition is added:

"Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, that is accessible over an internet. . . .**[SUF ¶ 7]**

**III.   THE RULES OF CONSTRUCTION SUPPORT FINDING A DEFENSE**

**A.      The Potential for Coverage Suffices to Establish a Defense**

"[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy."[2] Thus, the duty to defend extends to all suits in which it is merely *possible*

---

[2]*Montrose Chem. Corp. of Cal. v. Super. Ct.*, 6 Cal. 4th 287, 299 (1993).

that the insured will be found liable for covered damages.

## B. The Duty to Defend Can Arise from Inferences from Facts Alleged and Those That Evidence a Potential for Amendment

Only a "bare possibility of coverage" is required to trigger the duty to defend.[3] "[T]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage."[4]

If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, *suggest a claim potentially covered by the policy*, the insurer's duty to defend arises and is not extinguished until the insurer *negates all facts suggesting potential coverage*."[5]

[A court must look] not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy.[6]

Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.[7]

[T]he insured must prove the existence of a *potential for coverage,* while the insurer must establish the *absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.[8]

## C. The Articulated Theory for Recovery of Damages Is Not Germane to Analysis of Potential Coverage

Offense-based coverage "is not determined by the nature of the damages sought

---

[3]*Belmonte v. Emp'rs Ins. Co.*, 83 Cal. App. 4th 430, 433 (2000).

[4]*Montrose*, 6 Cal. 4th at 300 (emphasis *Montrose*'s) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 n.15 (1966)).

[5]*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005).

[6]*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1084 (1993).

[7]*Montrose*, 6 Cal. 4th at 299-300.

[8]*Id*. at 300.

in the action against the insured, but by *the nature of the claims* made against the insured in that action. . . . '[C]overage … is triggered by the *offense*, not the injury or damage which a plaintiff suffers.' "[9] According to the Ninth Circuit, "The technical label on a cause of action does not dictate the duty to defend whether the claimed cause of action was omitted out of negligence or "for strategic adversarial reasons."[10]

### D.    Facts, Not Labels, Determine the Potential for Coverage

It does not matter that the plaintiff labeled causes of action as "trademark infringement" or "unfair competition" rather than "disparagement."[11] Tortious interference counts are generally based on independent tortious conduct like disparagement[12] and "[have] been held to include 'statements about a competitor's goods … that are untrue *or misleading* and are made to influence potential purchasers not to buy.'"[13] That is exactly what is alleged in the *Moroccanoil suit*.

## IV.   IMPLICIT DISPARAGEMENT IS FACTUALLY ALLEGED AND TRIGGERS POTENTIAL COVERAGE UNDER OFFENSE (d)

### A.    The Elements to Establish Disparagement Are Satisfied Here

#### 1.    A Three Part Test Applies to Establish Potential Coverage

Under the Policy, "personal and advertising injury" for offense (d) requires three elements: (1) "injury arising out of" (2) "publication of material" (3) "that disparages a[n] … organization's goods, products or services." **[SUF ¶ 6]**

#### 2.    "Injury Arising Out Of" … [Disparagement] Is Alleged

---

[9] *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032 (2002) (italics in original).

[10] *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. (Cal.) 2010).

[11] *J. Lamb*, 100 Cal. App. 4th at 1034 ("The scope of the duty [to defend] does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." (citation omitted) (emphasis in original)).

[12] *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347-48 (Fed. Cir. 1999) (The Lanham Act under §43(a) "provides the basis for what are generally known as 'false advertising,' 'trade libel,' and 'product disparagement' claims. 4 J. Thomas *McCarthy, McCarthy on Trademarks and Unfair Competition* § 27:10, at 27-19 to 27-20 (4th ed. 1998)").

[13] *J. Lamb, Inc.*, 100 Cal. App. 4th at 1035.

Counts IV and V for Unfair Competition are premised in part on fact allegations that support the reasonable inference that Vogue's products are preferable to Moroccanoil's hair care products because Vogue publicly represents to prospective hair product consumers that: (1) Vogue's products (like Moroccanoil's) contain Moroccan Argan Oil; (2) Vogue's products are organic, while Moroccanoil's are not (inferred because Moroccanoil does not allege that it advertises its products as such); (3) Vogue's products are backed by Moroccan Oil's warranties and liability insurance when they are not; and (4) Vogue's products are both lower priced organic Moroccan Oils leading them to infer that Moroccan Oil product are over-priced.[14] **[SUF ¶ 10]**

Explaining the anticipated consequences of Vogue's actions, the Moroccanoil complaint states:

23. The Accused Product is not covered by Moroccanoil's warranty, customer service or its product liability coverage. **[SUF ¶10 (MTAC ¶23)]**

56. As a direct and proximate result of Defendants' unlawful acts, **Moroccanoil has suffered** and will continue to suffer **injury to its business, goodwill and property**. **[SUF ¶10 (MTAC ¶56)]**

57. As a proximate result of Defendants' wrongful conduct, Defendants have been unjustly enriched while **Moroccanoil has suffered damages** . . . . (emphasis added). **[SUF ¶10 (MTAC ¶57)]**

64. Prospective purchasers are likely to believe that the deceptive use of the mark ORGANIX actually describes Vogue's Products as being organic in nature. This belief is reinforced by Vogue's use of the term organic on its products. In fact, Vogue's products are not

---

[14] *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1179 (D. Kan. 2012) ("**[I]n its response to a motion for summary judgment**, TSI alleged that '[i]n a series of email messages . . . Imura wrote . . . "Don't trust CookTek!!!! They are fraud." ' " (emphasis added)).

organic and prospective purchasers are deceived. **[SUF ¶10 (MTAC ¶64)]**

The depositions, exhibits and discovery documents in the underlying action reveal price comparisons made by a Vogue sales representative to retailers **[SUF ¶ 11]** and consumer emails stating an interest in an alternative to Moroccan Oil that is not only less expensive, but organic as well. **[SUF ¶ 12]** These are facts that Hartford might have known had it properly defended or investigated the facts.[15] Moreover, even facts brought to Hartford's notice by this motion for partial summary judgment establish the possibility of coverage and raise the duty to defend.

These inferences are sufficient to establish potential coverage for implicit disparagement under California law because the alleged misleading publication derogates Moroccanoil's business causing consumers to question the value of Moroccanoil's considerably higher priced products, which also contain Moroccan Argan Oil but do not purport to be organic. **[SUF ¶ 10 (MTAC ¶ 17, 18, 22)]**

### 3. The "Oral, Written or Electronic Publication" Element Is Met

The publication element is met as Vogue advertised its products in a manner that readily met any definition of "publication" or construction of that term that an insurer might offer,[16] especially since a publication can injure another's reputation so

---

[15]*Nelson v. West Am. Ins. Co.*, No. B143838, 2004 Cal. App. Unpub. LEXIS 5606, at *15 (Cal. Ct. App. June 14, 2004) ("In an assessment of whether an insurer properly declined to offer a defense, the insurer is 'charged with notice of all those facts which [it] might have ascertained had [it] diligently pursued the requisite inquiry.' ").

*Arquilla v. International Ins. Co.*, No. C-86-5980 MHP, 1988 U.S. Dist. LEXIS 17576, at *25 (N.D. Cal. July 15, 1988) ("**The evidence will not be limited to what was actually known by [the insurer]**, because such an evidentiary limitation would undermine the insurer's obligation to investigate all claims." (emphasis added; footnote omitted)).

[16]*Cf., LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005) ("'publication' does not require that the information-at-issue be widely disseminated."); *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 723 n.6 (1989) ("It is not necessary that the defamatory matter be communicated to a large or even a substantial group of persons. It is enough that it is communicated to a single individual other than the one defamed.") (quoting RESTATEMENT (SECOND) OF TORTS § 577 cmt. b (1977)).

long as it is disseminated to more than one person,[17] as a number of courts have concluded.[18] The *Moroccanoil suit* alleges that:

> 15.   Moroccanoil recently discovered that Defendants are **advertising** and selling in the **United States professional hair care and beauty care products sold in salons using the term "Moroccan Argan Oil" in their name and description**, without authorization from Moroccanoil. Defendants' products ... are referred to herein as the "Accused Products". (emphasis added) **[SUF ¶10 (MTAC ¶15)]**

## B.   Implicit Disparagement

The *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, ___ Cal. 4th ___, 2014 Cal. LEXIS 3765, at *1 (2014) court declared that:

> Disparagement involves two distinct but related specificity requirements. A false or misleading statement (1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business. Each requirement must be satisfied by express mention **or by clear implication**.
>
> **[T]he related requirements of derogation and specific reference may be satisfied by implication** where the suit alleges that the insured's false or misleading statement necessarily refers to and derogates a competitor's product.[19]
>
> A publication that claims a superior feature of a business or product as distinct from all competitors, such as a claim to be the "only" producer of

---

[17]*See, Miranda v. Cal. Capital Ins. Co.*, 2011 WL 1168064, at *2 (Cal.Ct.App. Mar. 29, 2011) (misrepresentation to one person); *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d, 168, 169 (1999) (complaint orally and in writing to superior and one other person); *Bankwest v. Fid. & Deposit Co. of Md.*, 63 F.3d 974, 976 (10th Cir. 1995) (statements about bank customer to two other banks).

[18]Like defamation, disparagement can be committed by publications to one other person. *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1124 n.1 (6th Cir. (Ky.) 1990) (citing RESTATEMENT (SECOND) OF TORTS § 630 (1977)).

[19]*Swift*, 2014 Cal. LEXIS 3765, at *27-28 (emphasis added).

a certain kind of software or the "only" owner of a trademark, may be found to clearly or necessarily disparage another party even without express mention.[20]

"[D]isparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general."[21] Disparagement can be found by inference,[22] so long as it is reasonably derived from the facts pled.[23]

Moroccanoil's Third Amended Complaint alleges:

16.     The Accused Products use the **confusingly similar term "Moroccan Argan Oil" prominently** on the front, sides and back of the box the product comes in, and on the front label and on the back label of the product itself, it again states **prominently in bold script "Moroccan Argan Oil"** (the "Infringing Mark"). The Accused Products seek to capitalize on the success of Moroccanoil Oil Treatment, including by being included in the results of Internet searches for "Moroccanoil" or "Moroccan Oil". **[SUF ¶10 (MTAC ¶16)]**

17.     The Accused Products also **prominently use the trademark "Organix"** on the front, sides and back of the box the product comes in, and on the front label and on the back label of the product itself. In addition, **the Accused Products described themselves as "organic" and use the word and identifier "organic" on the back label of both the box and product itself.** … **[SUF ¶10 (MTAC ¶17)]**

---

[20] *Id*. at *28.

[21] *Id*. at *17.

[22] *Id*. at *19 (Cal. June 12, 2014) citing *Scottsdale*, 36 Cal. 4th at 654 ("Under the facts, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.").

[23] *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1058 (9th Cir. (Cal.) 2002) (Defense obligation can be established not only by pleaded fact allegations, but also by "obvious inference[s]" which emanate from those allegations; those inferences need not be in evidence).

19.     Defendants describe on the boxes and labels of the Accused Products that the products contain "Moroccan Argan Oil." According to the Defendants' advertising, and the **product packaging the Accused Products are intended for sale through retailers, including professional salons. [SUF ¶10 (MTAC ¶19)]**

20.     … retailers often **place the Accused Products in close proximity to Moroccanoil Products**. … Defendants and/or retailers have displayed advertising comparing the Accused Products and Moroccanoil Products and **suggesting that the Accused Products are an alternative to Moroccanoil Products**. . . . **[SUF ¶10 (MTAC ¶20)]**

26.     . . . [T]he Accused products do not contain at least 70% organic content. **[SUF ¶ 10 (MTAC ¶¶ 26)]**

Vogue's "Moroccan Argan Oil" advertisements allegedly harmed claimant because the products were offered in close proximity at retailers, yet they were distinguishable because, unlike them, Vogue's product was "organic" so that customers identified Vogue's product as the sole source of "organic" "Moroccan Oil" which consumers did not realize was not backed by "Moroccan Oil's warranty, customer service or its product liability coverage." **[SUF ¶10 (MTAC ¶20, 23, 64)]** Moroccanoil suffered by comparison as only Vogue offered an organic Moroccanoil product yet had to face Vogue in store shelves. **[SUF ¶10 (MTAC ¶33, 55, 56)]** These fact allegations fall expressly within the scope of coverage for "disparagement" recognized by *Swift*, rendering it competitively advantaged, as was *E.piphany*,[24] which claimed to be the only source of "all Java" and "fully J2EE software solutions." So here, Vogue allegedly claims to be the only source of organic Moroccan Argan Oil in the competitive market where it is juxtaposed on store shelves in a similarly colored

---

[24]*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1253 (N.D. Cal. (San Jose Div.) 2008) ("Plaintiff falsely stated that it was the 'only' producer of 'all Java' and 'fully J2EE' software solutions, which was an 'important differentiator' between competing products[.]").

blue bottle with Moroccanoil's product. **[SUF ¶10 (MTAC ¶20)]**

So understood, Moroccanoil's allegations are indistinguishable from those in *Burgett*,[25] approved by *Swift*, where it claimed to be the sole owner of its right to describe its piano products as SOHMER®. This was held to be implicit disparagement by "implying to the market place that Burgett had the superior right to use the SOHMER trademark" and thus, by implication represented "that [underlying plaintiff] did not have the rights to the SOHMER trademark" on its piano.[26]

### C.   Implicit Disparagement Has Been Found in Other Analogous Settings Like the Instant Trademark Cancellation dispute

#### 1.   Publications Question Moroccanoil's Trademark Rights

A number of federal (as well as precedential rulings from state appellate courts cited with approval by *Swift*) have concluded that "of and concerning" may evidence implicit disparagement was met without any express reference to a competition:

(1) "The statements … that the Apollo Show would no longer be in existence, or that its production would be substantially limited … [are] reasonably understood to cast doubt upon the existence or extent of [the Apollo's] property in ... intangible things[.]"[27]

(2) "The underlying complaint also alleges specific examples of comparisons which suggest that Vector's product is superior to the 'leading brand.'"[28]

(3) "Continental alleged that Lamb had falsely stated to Continental's

---

[25]*Burgett, Inc. v. Am. Zurich Ins. Co.*, 830 F. Supp. 2d 953, 963-64 (E.D. Cal. 2011) ("*Burgett* represented to Samick that it was the *only* holder of the SOHMER trademark. . . . Persis alleges that Plaintiff made false representations that harmed Persis "by implying to the marketplace that Burgett had the superior right to use the SOHMER trademark," and thus, by implication, represented that Persis did not have the rights to the SOHMER trademark. . . . [A] potential finding of disparagement by implication is bolstered by the fact that Persis alleges that it was the *only* owner of the SOHMER trademark.").

[26]*Id.*

[27]*Western Int'l Syndication Corp. v. Gulf Ins. Co.*, 222 Fed.Appx. 589, 592 (9th Cir. (Cal.) 2007) (**no explicit false statement that claimant Apollo lacked broadcast rights to the Apollo Show**).

[28]*Vector Prods. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1318 (11th Cir. (Fla.) 2005) (**no explicit false statements that the leading brand was inferior to the insured**).

1    customers that Continental's products were burdened with a prior legal right and their

2    purchase of such products would subject them to litigation."[29]

3              **2.    Misstatements Of "Equivalence" As Well As Superiority**

4         The Ninth Circuit, applying California law, has concluded that misstatements of

5    "equivalence," just like "superiority," support finding a defense,[30] as did two recent

6    cases, applying Tennessee[31] and Illinois law.[32]

7         Implicit disparagement is evidenced by claims of injury where Vogue uses

8    advertising **[SUF ¶ 10 (MTAC ¶¶ 15, 16)]** purportedly to deceptively sell a similar

9    product **[SUF ¶ 10 (MTAC ¶ 18, 22)]** while claiming, at minimum, if not superior,

10   equivalent performance, **[SUF ¶ 10 (MTAC ¶ 20)]** without calling attention to the

11   absence of Moroccan Oil's warranty and product liability coverage in promoting its

12   products in proximity to those of Moroccan Oil. **[SUF ¶ 10 (MTAC ¶¶ 20, 23, 25)]**

13

14

15   [29]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1034–35 (**no explicit statement to claimant customers that claimant was the source of products that were infringing patent owner Lamb's rights**).

16

17   [30]*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Techs., Inc.*, 466 Fed. Appx. 653, 655 (2012) ("Here, the complaint in the underlying action alleges that Seagate falsely claims that its technology is equivalent to Convolve Inc.'s technology. Because the duty to defend is broad and the complaint creates a bare potential of coverage for disparagement, the district court did not err in concluding that the underlying complaint potentially created liability for disparagement thereby giving National and AISLIC a duty to defend Seagate.") (**no explicit false statements that Convolve's technology was no better than Seagate's**).

18

19

20

21   [31]*Cincinnati Ins. Co. v. Crown Labs. Inc.*, No. 2:08-CV-240, 2012 WL 1565359, at *1 (E.D. Tenn. Apr. 30, 2012) (affirming the reasoning in its March 30, 2010 Order regarding an advertisement **"that Lavoclen is a 'fully substitutable generic equivalent to BREVOXYL'."** They were "statement[s] … 'understood to cast doubt upon' [the quality of another's products]." (emphasis added)) (no explicit false statement that Lavoclen offes medicinal benefits as BREVOXYL.).

22

23

24   [32]*Jar Labs. LLC v. Great Am. E&S Ins. Co.*, 945 F. Supp. 2d 937, 941-944 (N.D. Ill. 2013) ("[The] marketing strategy for LidoPatch [was allegedly] based on misleading . . . consumers into believing that **LidoPatch is merely an OTC version of Lidoderm® and that the products are otherwise identical in all material respects."**[32] Potential coverage arose where "a statement equating a competitor's product with an allegedly inferior one is logically indistinguishable from, and no less disparaging than, a statement describing one's own product as 'superior' to the competitors'." (emphasis added)) (**no explicit false statement that LidoPatch offers the same medicinal benefits as LidoPatch).**

25

26

27

28

### 3.   Publications That Suggest That Moroccan Oil's Non-Organic, Higher Priced Products Were Undesirable

In *Michael Taylor*,[33] referenced in *Swift* without adverse comment, implicit disparagement arose where the claimant advertised that its products were those of claimant instead of "cheap synthetic knock-offs" actually displayed for sale in its showroom. So here, Moroccanoil alleges a bait and switch occurred when consumers were offered a less expensive organic Moroccan Argan Oil, which was not what it purported to be. **[SUF ¶10 (MTAC ¶64)]**

In *Miranda*,[34] (which this court may consider for its persuasive value)[35] the underlying plaintiff (Christie) alleged that the insured, Miranda, misrepresented to a purchaser that certain cows were "Christie's cows" [high milk-producing cows], when in fact Miranda actually sold low-producing cows which were not from Christie's herd. The court conceded "[a]lthough the statement (these are Christie's cows) did not, standing alone, disparage the quality of the cows" the "Christie complaint alleges that the statement (these are Christie's cows) was *understood to cast doubt upon the quality of Christie's cows*, and the insured intended the statement to cast doubt."[36] In holding these allegations sufficient to trigger potential coverage for product disparagement, notwithstanding that Christie's cows were not expressly denigrated, the court stated "[i]t will be recalled that a duty to defend arises '[i]f any facts stated or fairly *inferable* in the complaint … *suggest* a claim *potentially* covered by the policy.'"[37]

The implication in *Miranda* was not the identity of the disparaged competitor

---

[33]*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 906 (N.D. Cal. (S.F. Div.) 2011) *aff'd*, 495 Fed. Appx. 830 (9th Cir. 2012).

[34]*Swift* had no occasion to address this unpublished decision. *Miranda v. Cal. Capital Ins. Co.*, No. A126778, 2011 WL 1168064, at *4 (Cal. Ct. App. Mar. 29, 2011).

[35]*Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. (Cal.) 2003) ("Granite correctly notes that we may consider unpublished state decisions, even though such opinions have no precedential value.").

[36]*Miranda*, 2011 WL 1168064, at *5.

[37]*Id.* (emphasis *Miranda*'s) (quoting *Scottsdale*, 36 Cal. 4th at 655).

(Christie), but the *implied* poor quality of the disparaged competitor's products. Because the quality of the cows wrongfully sold as from "Christie's herd" were lower yielding than those in Christie's herd, the product quality disparagement was implied, never express, yet sufficient to trigger a defense. So understood, the allegations assert a "misleading publication that derogates another's property or business and results in special damages.[38]

This case presents more compelling evidence of implicit disparagement than *Miranda* as store placements and advertisements allegedly rely upon Moroccanoil's strong marketplace goodwill and reputation to gain traction with consumers. **[SUF ¶ 10 (MTAC ¶ 22)]** This conduct allegedly injured Moroccanoil by impacting its "business, goodwill and property." **[SUF ¶ 10 (MTAC ¶ 33, 56)]** When Vogue posed as a legitimate seller of Moroccanoil, even though it was neither affiliated with, associated with, or otherwise sponsored by Moroccanoil, it allegedly injured Moroccan Oil as customers were steered instead toward Vogue's product **[SUF ¶ 10 (MTAC ¶¶ 15, 16, 19, 20)]** whose price point and allegedly organic ingredients were more attractive than Moroccanoil's. Thus, the facts there are more analogous to those in *E.piphany*, and *Burgett*, than *Michael* Taylor and *Miranda*.

In *Swift*, by contrast, Utili-Cart's use of "the words 'innovative', 'unique', 'superior', and 'unparalleled' appear on pages providing general descriptions of the company, and they are most reasonably understood as generic assertions of the company's excellence,"[39] not specific characteristics that distinguished its product from that of its competitor Multi-Cart.

## V.   COVERAGE UNDER OFFENSE (f) FOR "COPYING IN YOUR 'ADVERTISEMENT' A[N] ... ORGANIZATION'S 'ADVERTISING IDEA' OR 'STYLE OF ADVERTISEMENT'"

### A.   There Are Three Elements to Establish Coverage Under Offense (f)

Offense (f) includes: (1) copying an "advertising idea" or "style of advertising"

---

[38] *Swift*, 2014 Cal. LEXIS 3765, at *19.

[39] *Id*. at *37.

14

(2) of "a[n] ... organization" (3) in your "advertisement." **[SUF ¶ 7]**

**B.    "Copying . . . of a[n] ... Organization"**

There is no question Moroccanoil believed that its advertising idea, "Moroccan Oil," was misappropriated by Vogue, hence its trademark cancellation cause of action. **[SUF ¶ 10 (MTAC ¶ 66)]** Hartford's policy does not even require that the copied "advertising idea" be that of the underlying plaintiff—all the policy requires is that it be "a[n] ... organization's" without specifying that the advertising idea belong to anyone in particular. **[SUF ¶ 7]** Any more narrow construction of the phrase "copying ... a[n] organization's 'advertising idea'," i.e., requiring it to be owned by the party suing the insured, is not required by the policy language.[40]

The "copying of an organization" is satisfied whenever an advertising idea is copied and was not originated by the insured—even if it is not the claimant. Otherwise, the policy language would be "copying [the claimant's] 'advertising idea'" as opposed to "a[n] ... organization's 'advertising idea'." The Ninth Circuit held it could not "discern any contextual, public policy, or logical significance to who owns the legal rights to the advertising idea in question" under the ISO CGL offense of "misappropriation of an advertising idea."[41] Several federal Courts of Appeal have found that analogous policies do not require that the "advertising idea" originate with the underlying claimant.[42]

As long as there is a possibility (given the underlying complaint's allegations) that the "advertising idea" or "style of advertisement" was that of "an organization",

---

[40]*Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) ("[W]e cannot read into the policy what Safeco has omitted.").

[41]*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1101 (9th Cir. (Cal.) 2010).

[42]*Am. Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582, 588 (8th Cir. (Neb.) 2002) (challenged "full-blood" cattle designation was not claimant's);

*Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 734 (7th Cir. (Ill.) 2006) ("Indian-made" advertising idea did not belong to claimant).

the potential for coverage exists.[43] The "connection" or "association" definitions apply in the context of originating and promoting an "advertising idea" as unique to one's marketing persona—the "Moroccan Oil" phrase in the same stylized mode. Thus "of a[n] ... organization" can mean "connected to or associated with a[n] ... organization other than the insured" with no limiting definitional requirements that the idea be "connected" or "associated with" a claimant. This construction for "of a[n] ... organization" is reasonable. If any reasonable construction of policy language supports coverage, it must be applied even if another reasonable construction is possible.[44]

### C. Copying of Moroccanoil's "Moroccan Oil" "Advertising Idea" or "Style of Advertisement"

#### 1. "Moroccan Oil" Is an "Advertising Idea"

The policy's recursive definition of "advertising idea" as "any idea for an 'advertisement'" suggests that it is an idea with "the purpose of inducing the sale of goods, products or services." **[SUF ¶ 7]** This comports with the Eleventh Circuit's off-cited definition: "advertising idea ... can be any idea or concept related to promotion of a product to the public,"[45] which is fully consistent with a recent published Ninth Circuit recent ruling[46] concluding that the terms "Street Surfing" and "Street Surfer" were both "advertising ideas."[47]

---

[43] RANDOM HOUSE UNABRIDGED DICTIONARY 1343 (2d ed. 1993) ("Of' is defined as "**7.** used to indicate possession, connection or association.").

[44] *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 879 (2001) ("Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations. Ambiguous terms are those capable of two or more reasonable constructions.").

[45] *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. (Fla.) 2002).

[46] *Apt. Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1196 (10th Cir. 2010) ("[T]he actual practices of the Colorado Supreme Court in duty-to-defend cases provide further support for the application of an exception in this case.").

[47] *Street Surfing, LLC v. Great Am. E&S Ins. Co.*, ___ F.3d ___, 2014 U.S. App. LEXIS 10737, at *16-17 (9th Cir. Cal. June 10, 2014) (emphasis added) ("Here, the Noll action is potentially covered because it alleged that StreetSurfing's advertisements using its "Street Surfing" logo and brand name were wrongful uses of

That construction of "advertising idea" is also consistent with the definition of advertising adopted by a trio of state supreme courts.[48] An "advertising idea" need not be limited to positive product statements, but can include anything related to their promotion that renders them desirable,[49] especially as coverage terms must be interpreted broadly.[50]

Under the analogous "use of another's advertising idea in your 'advertisement'" offense (f), *Albers Medical* found a duty to defend when a drug maker sold a generic product falsely suggesting it was the trademarked product Lipitor.[51] *Blackstone* found a duty to defend when a light manufacturer used "ideas," such as a descriptive brand name and slogan, on the packaging in which products were shipped and displayed.[52] Here, "Moroccan Oil" is the same phrase used by both parties in a capitalized sans-serif font, and it is used by both to promote their respective products. **[SUF ¶ 10 (MTAC ¶¶ 15, 16)]** Moroccanoil sought to end Vogue's use.

### 2.   "Copying" Is Alleged

"Copying" is precisely what Moroccanoil has alleged occurred when its purported senior use of "Moroccan Oil" was taken by Vogue, who used it and then

---

'Streetsurfer' — Noll's advertising idea.").

[48] *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 579 (Minn. 2009); *Acuity v. Bagadia*, 750 N.W.2d 817, 827 (Wis. 2008); *Super Duper, Inc. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 683 S.E.2d 792, 798 (S.C. 2009).

[49] "One of the fundamental features of negation in natural language is the way in which it triggers or projects an opposite, positive counterpart which is being defeated." Lisa Nahajec, *'Whoever thought tuna had drama?' A Critical Stylistic Analysis of Negation in Advertising Texts, in* CADAAD 2010 BOOK OF ABSTRACTS 70 (Anna Ewa Wieczorek, 2010) (http://cadaad.net/files/downloads/cadaad_book_of_abstracts.pdf.)

[50] *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006) ("[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] … exclusionary clauses are interpreted narrowly against the insurer." (quotations omitted)).

[51] *Ohio Cas. Ins. Co. v. Albers Med., Inc.*, No. 03-1037-CV-W-ODS, 2005 WL 2319820, at *4 (W.D. Mo. Sept. 22, 2005).

[52] *Blackstone Int'l Ltd. v. Maryland Cas. Co.*, No. 2302 Sept.Term 2012, 2014 Md. App. LEXIS 17 at *13-14 (Md. Ct. Spec. App. Feb. 28, 2014).

sought to trademark it. Courts from other jurisdictions are in accord.[53] The Moroccanoil suit alleged that Vogue used the term "Moroccan Argan Oil" in salons to promote sales. **[SUF ¶ 10 (MTAC ¶ 15)]** This conduct amounted to the alleged "copying a[n] ... organization's advertising" under Hartford's policy. **[SUF ¶ 7]** Moroccan Oil alleged it was damaged by Vogue's copying of that "advertising idea." **[SUF ¶ 10 (MTAC ¶ 33, 56, 57)]** Indeed, Moroccanoil asserted that it would be harmed by another company's use of "Moroccan Oil" to promote itself, thereby detracting from Moroccanoil's use of the idea to singularly identify "Moroccan Oil" with Moroccanoil. **[SUF ¶ 10 (MTAC ¶ 22, 23, 25, 33)]**

### D.    In Your "Advertisement"

The "in your" advertisement element replaced the predecessor policy's "in the course of" causation element in the 1998 ISO CGL policy form. It required "**advertising injury**" be **caused by an offense** "committed in the course of advertising [the insured's] goods, products or services."[54] This element is readily met where the offense occurred in the advertising of the insured's products.[55]

Here, coverage exists when "advertising injury" is caused by the copying of an organization's "advertising idea" in your "advertisement." Importantly, the injury need not be *caused* by advertising but, rather, *caused* by the offense of "copying." "[T]he third party plaintiff cannot be the arbiter of coverage."[56]

"Advertisement" means "the widespread public dissemination of information or

---

[53]*Union Ins. Co. v. Knife Co.*, 897 F. Supp. 1213, 1216 (W.D. Ark. 1995) (misuse might constitute misappropriation); *AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F. Supp. 2d 721, 730 (S.D. Ohio 2007) (same); *Allou Health & Beauty Care, Inc. v. Aetna Cas. & Sur. Co.*, 269 A.D.2d 478, 480 (N.Y. App. Div. 2000) (same).

[54]David A. Gauntlett, INSURANCE COVERAGE OF INTELLECTUAL PROPERTY ASSETS §17.01, p. 17-4, Wolters Kluwer (2nd ed. 2013, 2014 Supplement) [New Definition of Advertisement].

[55]*Hewlett Packard Co. v. ACE Prop. & Cas. Co.*, No. C-99-20207 JW, 2003 U.S. Dist. LEXIS 3586, at *16 (N.D. Cal. (San Jose Div.) March 4, 2003) ("[T]he inclusion of a package insert in HP's product packaging constituted 'advertising activities' as that term has been construed by California Courts.").

[56]*Montrose*, 6 Cal. 4th at 296.

images that has the purpose of inducing the sale of goods, products or services through ... magazine ... The Internet ... [or] any other publication that is given widespread distribution." **[SUF ¶ 7]** This is met by allegations that "Defendants are advertising and selling in the United States professional hair care and beauty care products using the term 'Moroccan Argan Oil' in their name and description." **[SUF ¶ 10 (MTAC ¶ 15)]** While Moroccanoil accuses Vogue of copying the advertising idea in both its advertising and its packaging, the complaint clearly identifies advertising and packaging as distinct (and both implicated): "According to the Defendants' advertising**, and** the product packaging the Accused Products are intended for sale ...". (emphasis added) **[SUF ¶ 10 (MTAC ¶ 19)]**

Addressing the "infringement of copyright" offense with the same "in your 'advertisement'" nexus, *Bear Wolf* found the latter element satisfied. It observed that "displaying a copyrighted work at a trade show which is restricted to members of a trade association and qualified buyers would constitute a display of 'copyrighted work publically' under the federal Copyright Act, 17 U.S.C. § 106(5)."[57]

The *Street Surfing* court also concluded that "affixing the Street Surfing logo to the Wave [Street Surfing's skateboard product] was an advertisement using Street Surfing's brand name and logo." The "in your 'advertisement'" element was met where the logo was "'broadcast or published' . . . through displays of the Wave in retail stores."[58] Under this authority, there can be no question that Vogue's conduct suffices.

**E.   A Recent Decision, Applying California Law, Presumed that a Defense Would Arise For Claims of Trademark Cancellation Under Offense (f)**

Counts VI and VII for trademark cancellation do not allege that Vogue

---

[57] *Bear Wolf, Inc. v. Hartford Ins. Co. of Southeast,* 819 So. 2d 818, 820 (2002); *see also R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.,* 287 F.3d 242, 248 (2d Cir. (Conn.) 2002) ("Bigelow's ads displayed the allegedly infringing trade dress. If, as Celestial alleged, Bigelow's copied trade dress created consumer confusion, the ads could be found to have contributed to such confusion.").

[58] *Street Surfing,* 2014 U.S. App. LEXIS 10737, at *20.

infringed on Moroccanoil's trademark rights. Instead, those Counts seek cancellation of Vogue's trademark because of its alleged deceptiveness—not because it infringes Moroccanoil's trademarks. **[SUF ¶ 10 (MTAC ¶¶ 62, 63, 64, 66)]**

Analyzing a similar dispute regarding trademark rights, the court in *Hester* concluded that a defense arose for "use of another's advertising idea in your 'advertisement,'" an analogous offense under California law.[59] That court clarified that fees expended to prosecute a trademark infringement action were fees "conducted against liability" and were defensive of the trademark cancellation claims.[60]

## VI.   NO EXCLUSIONS BAR A DEFENSE

### A.   The "Knowing Violation" and "Knowledge of Falsity" Exclusions

#### 1.   Pertinent Policy Language

Two exclusions bar coverage for "Knowing Violation of Rights of Another": " 'Personal and advertising injury' arising out of an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury' . . . ." and "Material Published with Knowledge of Falsity": " 'Personal and advertising injury' arising out oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity." **[SUF ¶ 6]** Neither exclusion allows Hartford to meet its burden "of proving, through conclusive evidence, that the exclusion applies in all possible worlds,"[61] for the asserted false advertising/unfair competition claims. Summarizing their inapplicability, the Second Circuit stated:

> Despite the boilerplate allegation of willful misconduct, Five Four's
> Lanham Act section 43(a) claim did not require it to prove that CGS

---

[59] *Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290 (S.D.N.Y. 2013) (Although the case principally focused on whether the initial cease and desist letter precipitated the insured's right to recover the costs of pursuit of a trademark infringement action against the complainant prior to the suit for trademark cancellation (concluding it did not), that issue is not pertinent here.).

[60] *Id.* at 299.

[61] *J. Lamb*, 100 Cal. App. 4th at 1039.

intended to infringe on its trademark, as such a claim does "not require proof of intent to deceive." . . . Our inquiry ends there: as at least one of the claims in the Underlying Action did not require intent, Charter was required to defend the entire action.[62]

### 2. The Asserted Claims Can Establish Liability Without Implicating Either Scienter Based Exclusion for They Cannot Bar a Defense

In the *Moroccanoil Action*, Vogue faced liability for conduct whether or not it happened to rise to the level of scienter that would trigger the exclusions.[63] In *Cloud Nine*, the court addressed both the "knowing falsity" and "knowledge of falsity" exclusions, finding that false advertising claims under a state statutory scheme—the "Utah Deceptive Practices Act"—did not bar defense.[64]

The Eighth Circuit similarly concluded that "[t]he district court thus focused on some of the conduct alleged to prove the claim rather than the global claim itself. … As several of our sister circuits have recognized, '[i]t is well-settled that no proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising.'"[65] A recent Wisconsin appellate court decision is in accord.[66] So here, no proof of intent or willfulness is required to establish Vogue's liability, therefore the exclusions are inapplicable.

### B. The Intellectual Property Exclusion

#### 1. Pertinent Policy Language

---

[62] *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82, 83 (2d Cir. 2013) (footnote omitted).

[63] 15 U.S.C. § 1052(d); *see also Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir. (N.Y.) 1980) (intent is not a requirement of Lanham Act trademark infringement).

[64] *Ohio Cas. Ins. Co. v. Cloud Nine, LLC*, 464 F. Supp. 2d 1161, 1168–69 (D. Utah 2006) *rev'd sub nom. The Ohio Cas. Ins. Co. v. Unigard Ins. Co.*, 458 Fed. Appx. 705 (10th Cir. 2012) ("[T]he causes of action asserted against the Cloud Nine Defendants do not necessarily require that, in order to find liability, the defendant have knowledge of falsity or knowledge that its [injury] would cause advertising injury.").

[65] *AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875, 882 (8th Cir. (Minn.) 2011).

[66] *Sawyer v. W. Bend Mut. Ins. Co.*, 821 N.W.2d 250, 259 (Wis. Ct. App. 2012).

The exception to Hartford's "Cyberflex" endorsement, form HC 00 88 06 05, the exclusion for "Infringement of Intellectual Property Rights" reads:

> However, this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of
>
> **(1)**   copyright;
>
> **(2)**   slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or
>
> **(3)**   title of any literary or artistic work. **[SUF ¶ 7]**

As the pertinent coverage implicated here is for offenses (d) (disparagement) and (f) (copying an advertising idea), the exclusion does not apply because it stems from unfair competition, as well as trademark cancellation claims, not from the trademark infringement claims.

### 2.   Offense (d)

In an analogous case, the Ninth Circuit concluded that fact allegations of "disparagement" nested within a "slander of title" count triggered a defense.[67] Later decisions from other federal courts of appeal agree.[68] Similarly here, the trademark cancellation claim is not related to or arising out of any underlying trademark infringement claims. In an analogous case, Judge Whyte concluded that claims for defamation fell outside the scope of the insurer's Intellectual Property exclusion.[69]

---

[67] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Tech., Inc.*, 233 Fed. Appx. 614, 616 (9th Cir. (Cal.) 2007) ("[M]isappropriation claims are not necessary for Convolve to maintain trade libel claims against Seagate. A trade libel claim by **Convolve against Seagate could proceed and succeed even if, as Seagate maintains, it never misappropriated Convolve's technology.**" (emphasis added)).

[68] *ProLink Holdings Corp. v. Fed. Ins. Co.*, 688 F.3d 828, 832 (7th Cir. (Ill.) 2012) ("[T]he injuries GPS complains of are slander of title and encumbrance of GPS's title to the '518 patent. **Thus … every allegation in the GPS complaint speaks to disparagement of property**" (emphasis added);

*Novell, Inc. v. Vigilant Ins. Co.*, 421 Fed. Appx. 872, 875 (10th Cir. (Utah) 2011) ("**Specifically, 'slander of title and the related tort of disparagement of property are based on an intentional interference with economic relations.** … Slander of title actions are based only on palpable economic injury[.]'" (emphasis added).

[69] *Align Tech., Inc. v. Fed. Ins. Co.*, 673 F. Supp. 2d 957, 972 (N.D. Cal. (S.J. Div.) 2009) ("The Cross-Complaint alleged that, in addition to accusing it of violating

Akin to *Seagate*, a trademark infringement claim is not necessary to maintain a claim for trademark cancellation.[70] The same is true of another decision addressing distinct claims for disparagement,[71] as is a case rejecting its application by Hartford.[72] The intellectual property exclusion is inapplicable.

### 3.  Offense (f)

A trademark cancellation action is not a claim for trademark infringement. Rather, it is an assertion that there was no correct issuance by the PTO of the trademark rights to the party who procured them. That kind of dispute is not analogous to an infringement claim, where a party claiming trademark or patent rights asserts their violation by another. No case has suggested the application of this exclusion to a cancellation claim. Indeed, Southern District of New York courts, applying California law, agreed with the litigants that trademark cancellation claims potentially fell within the analogous Offense (f) "use of another's advertising idea in your 'advertisement.'"[73] In an analogous circumstance, the Ninth Circuit found that patent misuse did not fall within the intellectual property exclusion for much the same

---

intellectual property laws, Align was liable for defamation because [among other acts it] accused OrthoClear of recruiting its entire sales force and unlawfully soliciting its employees. **On their face, such alleged statements bear no relation to the assertion of intellectual property rights. Nor did OrthoClear allege that these were part of any intellectual property dispute.**" (emphasis added)).

[70] 15 U.S.C. § 1052(d).

[71] *Align Tech*, 673 F. Supp. 2d at 972 (citing *Kla-Tencor Corp. v. Travelers Indem. Co. of Ill.*, 2003 WL 21655097, at *6 (declining to infer, by virtue of the plaintiff's ongoing patent litigation, that the plaintiff could only have made statements in defense of its patent rights).).

[72] *Vita Craft Corp.*, 911 F. Supp. 2d at 1180 ("Vita Craft responds that the underlying complaint alleged that Vita Craft spread false rumors about a TSI licensee, and that **these allegations are not tied to intellectual property rights**. The Court agrees. The underlying complaint alleged that Vita Craft had **disparaged** TSI licensee CookTek. Hartford has not met its burden to demonstrate that the intellectual property exclusion barred coverage or a duty to defend." (bold emphasis added)).****

[73] *Hester*, 917 F. Supp. 2d at 293–94 ("[O]n April 2, 2012, Neverson answered Hester's first amended complaint, and counterclaimed for cancellation of the registration for Hester's 'YUUUP!' trademark … On April 3, Hester's lawyers wrote Navigators, 'request[ing] a defense of [the] counterclaim.' … On May 2, Navigators's lawyers responded by agreeing to provide such a defense.").

1   reason.[74]

2   ## C.   Material Published Prior to Policy Period

3        The exclusion for " 'personal and advertising injury' arising out of oral, written

4   or electronic publication of material whose first publication took place before the

5   beginning of the policy period"[75] **[SUF ¶6]** is no bar to coverage for claims which

6   allegedly first arose within Hartford's policy period,[76] as "the possibility exist[s] that

7   the complained of activity . . . occurred after the inception of the policy."[77] Therefore

8   Vogue's alleged wrongful conduct potentially occurred during the Policy period and

9   the Policy's "first publication exclusion" does not apply. "[Defendant's] claims allege

10  injuries flowing directly from plaintiff's advertisements, not from consumers'

11  discovery that the advertisements were false."[78]

12  ## D.   Quality or Performance of Goods

13       The "failure to conform to statements" exclusion eliminates coverage for "

14  ────────────────

15  [74]*Aurafin-OroAmerica, LLC v. Fed. Ins. Co.*, 188 Fed. Appx 565, 567 (9th Cir. (Cal.)
    2006) (citing *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635 (2003)) ("Because
16  patent misuse is not a true intellectual property claim, it does not fall within the
    policy's intellectual property exclusion. ... [E]xclusions to insurance policies must be
17  'conspicuous, plain, and clear.' . . . **The intellectual property exclusion at issue in
    this case did not meet the *MacKinnon* standard because it is unclear what the
18  exclusion meant when it excluded statements made in 'defense' of intellectual
    property rights**.' " (emphasis added)).

19  [75]*JAR Laboratories*, 945 F. Supp. at 947 (N.D. Ill. 2013).**\*\*\***

20  [76]*Street Surfing*, 2014 U.S. App. LEXIS 10737, at *18 ("We agree with Street Surfing
    that the Noll complaint itself does not establish that Street Surfing used Noll's
21  advertising idea in advertisements that were published before August 2005. **The
    complaint alleged that the challenged conduct occurred "since at least on or
22  about January of 2005[.]**" (emphasis added)).

23  [77]*Arnette Optic Illusions, Inc. v. ITT Hartford Grp.*, 43 F. Supp. 2d 1088, 1091, 1098
    (C.D. Cal. 1998) (The counterclaim alleged that the wrongful conduct began "no
24  earlier than *1991*" and the insurance policy ran from April 1992 to April 1996. Based
    on the allegations, the court thus concluded that, as here, "[t]he *possibility* existed that
    the complained of activity . . . occurred after the inception of the policy.");

25  *See, Indian Harbor Ins. Co. v. Hartford Cas. Ins. Co.*, No. B192829, 2007 Cal. App.
26  Unpub. LEXIS 10709, at *18-19 (Cal. App. 2d Dist. Oct. 11, 2007) ("[T]he
    allegations [of the underlying complaint] are not limited in time . . . and potentially
27  cover Skechers's advertising activities during the time covered by the Hartford
    policy[.]").

28  [78]*Jar Labs.*, 945 F. Supp. 2d at 947.

'personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement' or on 'your website.'" **[SUF ¶6]** This exclusion can have no application to coverage claims based on disparagement or copying of another's advertising idea as no promise of "quality" or "performance" is at issue for such claims.[79] Nor was there any such limitation in the policy.

## VII.   CONCLUSION

The Court should grant Vogue's Motion for Partial Summary Judgment, finding that it is entitled to a defense and order payment of all reasonable attorneys fees incurred post-tender with prejudgment interest at the legal rate of 10% percent per annum from the date of invoice. Settlement expenses should be resolved by a bench trial on cross motions with supporting declarations on a date convenient to the court's calendar.

Dated:  July 14, 2014

**GAUNTLETT & ASSOCIATES**

By: /s/ David A. Gauntlet
David A. Gauntlett
James A. Lowe
Attorneys for Plaintiff
VOGUE INTERNATIONAL, LLC

---

[79] *Safety Dynamics, Inc. v. Gen. Star Indem. Co.*, 475 Fed. Appx. 213, 214 (9th Cir. (Az.) 2012) ("ShotSpotter's injury claimed in the underlying action does not *arise out of* the failure of Safety Dynamics's product to conform to its advertisements. Rather, it is a competitive injury. This exception 'is directed to the failure of goods, not the failure of advertising.' 4 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 30.08[2][a] (2009).");

*Edwards Theatres, Inc. v. National Fire Ins. Co.*, 126 Fed. Appx. 831, 833 (9th Cir. (Cal.) 2005) ("IMAX had a potential cause of action simply by establishing that Edwards exploited its identity and goodwill in its advertisements; the quality of goods that Edwards was selling was irrelevant to that claim.").

*Tria Beauty, Inc. v. National Fire Ins. Co. of Hartford*, No. C12-05465 WHA, 2013 U.S. Dist. LEXIS 71499, at *20-21 (N.D. Cal. May 20, 2013) ("*Infor Global* then ruled that in the implied disparagement context, the harm suffered by the third party competitor does not arise out of the failure of the insured's products to conform with their advertised quality. Rather, **the harm arises out of 'negative comparisons Plaintiff made about competitors vis-à-vis Plaintiff's products**. . . .' " (emphasis added)).