1
2
3
4
5
6
7

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone:  (949) 553-1010
Facsimile:   (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com

Attorneys for Plaintiff
VOGUE INTERNATIONAL, LLC

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**WESTERN DIVISION**

11

12
13
14
15
16
17
18
19
20

VOGUE INTERNATIONAL, LLC d/b/a
VOGUE INTERNATIONAL, a
Delaware limited liability company,

          Plaintiff,

   vs.

HARTFORD CASUALTY
INSURANCE COMPANY,
an Indiana corporation,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  2:14-cv-03570-PA (MRWx)

Hon. Percy Anderson

**PLAINTIFF'S OPPOSITION
TO DEFENDANT HARTFORD
CASUALTY INSURANCE
COMPANY'S MOTION FOR
SUMMARY JUDGMENT**

Date: August 11, 2014
Time: 1:30 p.m.
Courtroom: 15

21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.  PRELIMINARY ISSUES ....................................................................1

    A.  All Underlying Allegations Were Known And Available to Hartford. ...............................................................................1

    B.  Vogue Seeks Coverage Under All Applicable Offenses......................1

    C.  Hartford Misstates The Standard Determining Its Duty to Defend And Improperly Shifts the Burden of Proof .....................1

II.  IMPLICIT DISPARAGMENT UNDER OFFENSE (d) IS FACTUALLY IMPLICATED BY THE ALLEGATIONS AGAINST VOGUE (THE *MOROCCANOIL ACTION*) ............................................2

    A.  Hartford Relies On *Swift* To Eliminate Any Potential For Coverage Without Reference To Any Inferences From Fact Allegations Which This Court Must Consider ..............................2

    B.  Vogue's Claims That Its Products Were Organic Were Also Alleged To Be Separately Actionable Conduct By Moroccanoil ........5

III.  "INFRINGEMENT OF ... SLOGAN ... IN YOUR 'ADVERTISEMENT'" WAS POTENTIALLY ALLEGED UNDER OFFENSE (g) ...................................................................................7

    A.  The Hartford Policy Covers Infringement Of A Slogan In Vogue's Advertising ..............................................................7

    B.  The *Moroccanoil Suit* Alleges "Infringement ... Of Slogan ... In [Vogue's] 'Advertisement'" ..........................................7

        1.  "Infringement" ..................................................................7

        2.  "Slogan" ...........................................................................10

        3.  "In [Vogue's] Advertisement" ........................................11

IV.  "COPYING IN [VOGUE'S] 'ADVERTISEMENT' [MOROCCANOIL'S] 'ADVERTISING IDEA' OR 'STYLE OF ADVERTISEMENT'" WAS ALLEGED UNDER OFFENSE (f)..............12

    A.  Offense (f) Contains Four Elements ....................................12

    B.  The Four Elements Of Offense (f) Are Met ...........................12

        1.  "Person's Or Organization's" .......................................12

        2.  "Copying" Is Alleged .....................................................14

        3.  "Moroccan Argan Oil", "Organic" And "Organix" Are "Advertising Ideas" ......................................................15

4.    In Your "Advertisement" ........................................................ 16

V.    NO INTELLECTUAL PROPERTY EXCLUSION CAN BAR A
       DEFENSE ......................................................................................... 18

       A.    The Intellectual Property Exclusion Does Not Apply to Slogan
             Infringement. .......................................................................... 18

       B.    Hartford's Intellectual Property Exclusion Cannot Bar
             Distinct Fact Allegations Based On Unfair Competition and
             False Advertising Falling Outside The Scope Of Its IP
             Exclusion ................................................................................. 18

       C.    Hartford's Expansive Reading Of The "Arising Out Of"
             Phrase As Used In Its Intellectual Property Exclusion Is
             Contrary To Developing California Law ................................. 20

             1.    Hartford's "Arising Out Of" Exclusionary Coverage
                   Cases Are Readily Distinguishable When Interpreted
                   Narrowly Against It ........................................................ 20

             2.    Even Under The Broader "But For" Construction Of
                   "Arising Out Of" The "Intellectual Property" Exclusion
                   Is Inapplicable ............................................................... 23

VI.    THE COURT MAY GRANT SUMMARY JUDGMENT IN FAVOR
       OF A DUTY TO DEFEND *SUA SPONTE* .......................................... 24

VII.   CONCLUSION .................................................................................. 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*,
676 F. Supp. 2d 738 (S.D. Ind. 2009)...............................................24

*Align Tech., Inc. v. Fed. Ins. Co.*,
673 F. Supp. 2d 957 (N.D. Cal. (S.J. Div.) 2009) ..............................24

*Am. Guar. & Liab. Ins. Co. v. Lexington Ins. Co.*,
517 Fed. Appx. 599 (9th Cir. May 6, 2013) ......................................23

*Am. Simmental Ass'n v. Coregis Ins. Co.*,
282 F.3d 582 (8th Cir. (Neb.) 2002)..........................................10, 13

*AMCO Ins. Co. v. Lauren-Spencer, Inc.*,
500 F. Supp. 2d 721 (S.D. Ohio 2007) ..............................................15

*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*,
302 F.3d 1049 (9th Cir. (Cal.) 2002) ..............................................2, 3

*Burgett, Inc. v. Am. Zurich Ins. Co.*,
830 F. Supp. 2d 953 (E.D. Cal. 2011) ................................................3

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .....................25

*Century 21, Inc. v. Diamond State Ins. Co.*,
442 F.3d 79 (2d Cir. (N.Y.) 2006)....................................................17

*Charter Oak Fire Ins. Co. v. Hedeen & Cos.*,
280 F.3d 730 (7th Cir. (Wis.) 2002) ..................................................8

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*,
329 F.3d 546 (6th Cir. (Mich.) 2003) ...............................................11

*Cont'l Cas. Co. v. City of Richmond*,
763 F.2d 1076 (9th Cir. (Cal.) 1985)................................................22

*DISH Network Corp. v. Arch Specialty Ins. Co.*,
659 F.3d 1010 (10th Cir. (Colo.) 2011).............................................20

*Duncan v. Stuetzle*,
76 F.3d 1480 (9th Cir. 1996) ............................................................18

*HS Services, Inc. v. Nationwide Mut. Ins. Co.*,
109 F.3d 642 (9th Cir. (Cal.) 1997)..................................................24

*Hudson Ins. Co. v. Colony Ins. Co.,*
  624 F.3d 1264 (9th Cir. 2010) ....................................................................9, 10

*Hyman v. Nationwide Mut. Fire Ins. Co.,*
  304 F.3d 1179 (11th Cir. (Fla.) 2002) ..............................................................15

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
  600 F.3d 1092 (9th Cir. (Cal.) 2010)...........................................................10, 13

*Inc. v. St. Paul Fire & Marine Ins. Co.,*
  590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008) ....................................6

*Interstate Bakeries Corp. v. OneBeacon Ins. Co.,*
  686 F.3d 539 (8th Cir. 2012) ..............................................................................8

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. (Cal.) 2008) ................................................................19

*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.,*
  761 F. Supp. 2d 904 (N.D. Cal. (S.F. Div.) 2011) *aff'd,* 495 Fed. Appx. 830
  (9th Cir. 2012)..............................................................................................4, 19

*Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.,*
  435 F.3d 729 (7th Cir. (Ill.) 2006)...............................................................10, 13

*Nestle USA Inc. v. Travelers Cas. & Sur. Co. of Am.,*
  10 F. App'x 438 (9th Cir. 2001).......................................................................22

*Pension Trust Fund v. Federal Ins. Co.,*
  307 F.3d 944 (9th Cir. (Cal.) 2002) ..................................................................20

*Street Surfing, LLC v. Great Am. E&S Ins. Co.,*
  752 F.3d 853, 2014 U.S. App. LEXIS 10737 (9th Cir. (Cal.) 2014) ............8, 10

*Union Ins. Co. v. Knife Co.,*
  897 F. Supp. 1213 (W.D. Ark. 1995) ................................................................15

*Western Int'l Syndication Corp. v. Gulf Ins. Co.,*
  222 Fed.Appx. 589 (9th Cir. (Cal.) 2007) ..........................................................4

*Zurich Specialties London, Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter,
  Inc.,*
  425 Fed. Appx. 554 (9th Cir. Mar. 28, 2011)....................................................23

**STATE CASES**

*A.B.S. Clothing Collection, Inc. v. Home Ins. Co.,*
  34 Cal. App. 4th 1470 (1995) ............................................................................13

*Acceptance Ins. Co. v. Syufy Enters.*,
   69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557 (1999) ............................................22

*Acuity v. Bagadia*,
   750 N.W.2d 817 (Wis. 2008) ..........................................................................15

*Aloha Pacific, Inc. v. California Ins. Guarantee Ass'n*,
   79 Cal. App. 4th 297 (2000) ...........................................................................21

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
   100 Cal. App. 4th 1017 (2002) ...................................................................4, 24

*Belmonte v. Emp'rs Ins. Co.*,
   83 Cal. App. 4th 430 (2000) .............................................................................1

*Buss v. Superior Court*,
   16 Cal. 4th 35 (1997) ......................................................................................20

*Cytanovich Reading Center v. Reading Game*,
   162 Cal. App. 3d 107 (1984) ...........................................................................19

*Davis v. Farmers Ins. Group*,
   134 Cal.App.4th 100, 35 Cal. Rptr. 3d 738 (2005) ........................................23

*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*,
   92 Cal. App. 4th 205 (2001) ...........................................................................12

*Frontier Oil Corp. v. RLI Ins. Co.*,
   153 Cal. App. 4th 1436 (2007) .........................................................................2

*Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*,
   762 N.W.2d 572 (Minn. 2009) ........................................................................15

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*,
   59 Cal. 4th 277 (2014) ..........................................................................2, 3, 5, 6

*Horace Mann Ins. Co. v. Barbara B.*,
   4 Cal. 4th 1076, 17 Cal. Rptr. 2d 210, 846 P.2d 792 (1993)............................20

*Industrial Indem. Co. v. Apple Computer, Inc.*,
   79 Cal. App. 4th 817 (1999) ...........................................................................21

*MacKinnon v. Truck Ins. Exch.*,
   31 Cal. 4th 635 (2003) ..............................................................................14, 21

*Marquez Knolls Property Owners Ass'n, Inc. v. Executive Risk Indem., Inc.*,
   153 Cal. App. 4th 228, 62 Cal. Rptr. 3d 510 (2007) ......................................23

*Medill v. Westport Ins. Corp.*,
    143 Cal. App. 4th 819, 49 Cal. Rptr. 3d 570 (2006) ...........................................23

*Meza v. Southern California Physicians Ins. Exchange*,
    62 Cal. App. 4th 709 (1998) ...................................................................13

*Mirpad, LLC v. California Insurance Guarantee Ass'n*,
    132 Cal. App. 4th 1058 (2005) ................................................................18

*Montrose Chem. Corp. v. Superior Court*,
    6 Cal. 4th 287 (1993) ...............................................................................1

*Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*,
    102 A.D.3d 756 (N.Y. A.D. 2013) ..........................................................21

*North Counties Eng'g, v. State Farm Gen. Ins.*,
    224 Cal. App. 4th 902 (March 13, 2014)...................................................24

*Palmer v. Truck Ins. Exch.*,
    21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647 (1999) .........................................22

*Rosen v. State Farm Gen. Ins. Co.*,
    30 Cal. 4th 1070, 135 Cal. Rptr. 2d 361, 70 P.3d 351 (2003)...................21

*Safeco Ins. Co. of Am. v. Robert S.*,
    26 Cal. 4th 758 (2001) ...............................................................13, 20, 24

*Scottsdale Ins. Co. v. MV Transportation*,
    36 Cal. 4th 643 (2005) ...............................................................................2

*Southgate Recreation & Park Dist. v. Cal. Assn. for Park & Recreation Ins.*,
    106 Cal. App. 4th 293 (2003) ..................................................................21

*State Farm Mut. Auto. Ins. Co. v. Partridge*,
    10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P.2d 123 (1973)...........................22

*Super Duper, Inc. v. Pa. Nat'l Mut. Cas. Ins. Co.*,
    683 S.E.2d 792 (S.C. 2009) .....................................................................15

*TRB Invs., Inc. v. Fireman's Fund Ins. Co.*,
    40 Cal. 4th 19 (2006) ...............................................................................15

**DOCKETED CASES**

*Bridge Metal Indus., LLC v. Travelers Indem. Co.*,
    2014 U.S. App. LEXIS 4463 (2d Cir. N.Y. Mar. 11, 2014) ......................24

*Career Sys. Dev. Corp. v. Am. Home Assur. Co.*,
  No. C 10-2679 BZ, 2011 U.S. Dist. LEXIS 103999 (N.D. Cal. Sept. 14,
  2011) ...................................................................................................................22

*GK Skaggs, Inc. v. Hartford Cas. Ins. Co.*,
  No. 12-56501, 2014 U.S. App. LEXIS 11161 (9th Cir. Cal. June 16, 2014).....21

*Integral Res. Inc. v. Hartford Fire Ins. Co.*,
  No. 2:14-CV-02308-R (AGRx), 2014 U.S. Dist. LEXIS 83793 (C.D. Cal.
  June 13, 2014)......................................................................................................22

*Ohio Cas. Ins. Co. v. Albers Med., Inc.*,
  No. 03-1037-CV-W-ODS, 2005 WL 2319820 (W.D. Mo. Sept. 22, 2005) ......16

*Tower Ins. Co. of New York v. Capurro Enterprises Inc.*,
  No. C 11-03806 SI, 2012 U.S. Dist. LEXIS 46443 (N.D. Cal. Apr. 2, 2012) ...22

*Trenches, Inc. v. Hanover Ins. Co.*,
  No. 12-56642, 2014 U.S. App. LEXIS 9644 (9th Cir. May 23, 2014) .............23

*Ultra Coachbuilders, Inc. v. General Sec. Ins. Co.*,
  No. 02 CV 675(LLS), 2002 WL 31528474 (S.D.N.Y. July 15, 2002) .............11

**FEDERAL RULES AND STATUTES**

7 U.S.C. § 6501, et seq. ...........................................................................................6

**STATE RULES AND STATUTES**

CAL. HEALTH & SAFETY CODE § 110830(a) ..........................................................16

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 56................................................................................................25

Lisa Nahajec, *'Whoever thought tuna had drama?' A Critical Stylistic Analysis
  of Negation in Advertising Texts*, *in* CADAAD 2010 Book of Abstracts 70
  (Anna Ewa Wieczorek, ed., 2010).....................................................................15

RANDOM HOUSE UNABRIDGED DICTIONARY 1 ......................................................13

RANDOM HOUSE UNABRIDGED DICTIONARY 76-77 (2d ed. 1993) ..........................17

RANDOM HOUSE UNABRIDGED DICTIONARY 1509 ................................................13

# I.   PRELIMINARY ISSUES

## A.   All Underlying Allegations Were Known And Available to Hartford.

Hartford Casualty Insurance Company's ("Hartford") alleged lack of notice of the Third Amended Complaint **[Dkt. 18:12-13]** is disingenuous because it only added five additional plaintiffs who are all foreign companies related to Moroccanoil and did not alter the factual allegations or claims present in the Second Amended Complaint whatsoever. **[Statement of Genuine Disputes ("SGD") ¶51].**

## B.   Vogue Seeks Coverage Under All Applicable Offenses

Hartford argues that "Vogue _only_ seeks coverage under two enumerated offenses [(d) and (f)] under the Policies' 'Personal and Advertising Injury' coverage grant." **[Dkt. 18:18]** This is inaccurate. Vogue specifically outlined, in its First Amended Complaint against Hartford, the reasons a duty to defend arose under those two enumerated offenses, but Vogue did not limit possible coverage solely to those two offenses. **[SGD ¶84].** Offense (g) for "infringement of … slogan in [Vogue's] advertisement" was within the scope of the coverage sought by the First Amended Complaint. **[SGD ¶84].**

## C.   Hartford Misstates The Standard Determining Its Duty to Defend And Improperly Shifts the Burden of Proof

Hartford inaccurately claims that its duty to defend arises only if the underlying complaint alleges facts that fall within the Policies' scope of coverage and that it is Vogue's burden to prove. **[Doc. 18:17-18]** But this is wrong.

Only a "bare possibility of coverage" is required to trigger the duty to defend.[1] "[T]he insurer need not defend [only] if the third party complaint _can by no conceivable theory raise a single issue which could bring it within the policy coverage._"[2] Potential coverage exists where fact allegations or extrinsic evidence

---

[1] _Belmonte v. Emp'rs Ins. Co._, 83 Cal. App. 4th 430, 433 (2000).

[2] _Montrose Chem. Corp. v. Superior Court_, 6 Cal. 4th 287, 300 (1993) (emphasis added) (quoting, _Gray v. Zurich Ins. Co._, 65 Cal. 2d 263, 276 n.15 (1966)).

potentially encompass a covered offense[3] even if "the claims against the insured are 'groundless, false, or fraudulent'"[4] and can be met by inferences which emanate from those allegations; which need not be in evidence.[5]

## II. IMPLICIT DISPARAGMENT UNDER OFFENSE (d) IS FACTUALLY IMPLICATED BY THE ALLEGATIONS AGAINST VOGUE (THE *MOROCCANOIL ACTION*)

### A. Hartford Relies On *Swift* To Eliminate Any Potential For Coverage Without Reference To Any Inferences From Fact Allegations Which This Court Must Consider

Typical of Hartford's misstatements is its contention that *Swift*,[6] supports Hartford's position that an implied "disparagement" claim does not qualify under the "disparagement" offense in Hartford's policy. **[Dkt. 18:20]** This misstatement betrays Hartford's conflation of the arguments it addressed to the California Supreme Court (which were rejected, in part) and that court's actual opinion. *Swift* clarifies that "disparagement" can be satisfied by "express mention **or by clear implication.**" **[Dkt. 18:21, citing *Swift* at 284 (emphasis added)]** Hartford ignores the later portion of *Swift*, which reaffirmed *Scottsdale*.[7]

Hartford, instead, simply relies on readily distinguishable "speculation" cases. They do not help Hartford explain around the Swift ruling that "disparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general,"[8] viewed in light of reasonable

---

[3]*Scottsdale Ins. Co. v. MV Transportation,* 36 Cal. 4th 643, 654-655 (2005) (italics added). "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, *suggest a claim potentially covered by the policy*, the insurer's duty to defend arises and is not extinguished until the insurer *negates all facts suggesting potential coverage*."

[4]*Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1465-66 (2007).

[5]*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1059 (9th Cir. (Cal.) 2002).

[6]*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 284 (2014).

[7]*Id.* at 287, quoting *Scottsdale*, 36 Cal. 4th at 654. (A duty to defend arises "where under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability").

[8]*Swift*, 59 Cal. 4th at 287.

inferences.[9] Here, Vogue's alleged use of the terms "Morrocan Argan Oil," "organix," and "organic" in its advertisements raises a clear implication of the inferiority of Moroccanoil's products which are more expensive and do not purport to be organic.

Nor can Hartford contest that a "publication" is met by allegations of "advertising," "marketing" and "promotion" of "Moroccan Argan Oil," [10] as well as the distinct allegations that the product was improperly advertised as "organic" creating a distinct basis for liability for unfair competition through the confusingly similar use of the monikers "Moroccan Argan Oil" and "organic." **[SUF ¶10 (MTAC ¶25, 55)]**

This case is, therefore, conceptually indistinguishable from *Burgett, Inc. v. Am. Zurich Ins. Co.*, 830 F. Supp. 2d 953, 963-64 (E.D. Cal. 2011) cited with approval by *Swift*, 59 Cal. 4th at 294. There, Persis, the claimant, asserted that it was the sole owner of the trademark right to describe its piano products as SOHMER®. By contrast, "*Burgett* represented to Samick [another competitor of Persis] that it was the *only* holder of the SOHMER trademark. . . . Persis alleges that Plaintiff made false representations that harmed Persis 'by implying to the marketplace that Burgett had the superior right to use the SOHMER trademark,' and thus, by implication, represented that Persis did not have the rights to the SOHMER trademark. . . . [A] potential finding of disparagement by implication is bolstered by the fact that Persis alleges that it was the *only* owner of the SOHMER trademark."

Moroccanoil's alleged trademark rights to describe its argan oil as the only source for Moroccan Argan Oil is in controversy.[11] Vogue's products were posed as

---

[9] *Anthem Elecs.,* 302 F.3d at 1058 (Defense obligation can be established not only by pleaded fact allegations, but also by "obvious inference[s]" which emanate from those allegations; those inferences need not be in evidence).

[10] **[Vogue's Statement of Undisputed Facts and Contentions of Law, Dkt. 23-9 ("SUF") ¶10 (MTAC ¶15, 19, 22, 25, 55)].**

[11] "Defendants are marketing the Accused Products in an intentional attempt to unfairly capitalize on Moroccanoil's Trademarks, and the goodwill and reputation of its Products." **[SUF ¶10 (MTAC ¶22)]**

3

effective alternatives, sourcing argan oil from Morocco and describing it as Moroccan Argan Oil as well. This is indistinguishable from the assertions of enforceability of the SOHMER® trademark in *Burgett*. By definition, a party claiming trademark rights claims exclusivity as that is an inescapable vestige of those rights and includes the right to exclude others from their use. Where the defendant asserts that it is equally empowered to offer the same product as opposed to making no affirmative representations about that fact—that *Swift's* "of and concerning" elements are readily met because of the alleged misperception that either there is some affiliation, sponsorship or relationship between Vogue and Moroccanoil that permits Vogue to advertise its products as Moroccan Argan Oil. **[SUF ¶10 (MTAC ¶22)]**

This approach is consistent with other cases applying California law that found implicit disparagement arose without any express reference to a competitor:

(1) "The statements … that the Apollo Show would no longer be in existence, or that its production would be substantially limited … [are] reasonably understood to cast doubt upon the existence or extent of [the Apollo's] property in ... intangible things[.]"[12]

(2) "Continental alleged that Lamb had falsely stated to Continental's customers that Continental's products were burdened with a prior legal right and their purchase of such products would subject them to litigation."[13]

(3) Steering customers towards cheap synthetic knock-offs as part of an alleged "bait-and-switch" campaign to sell its own products rather than those of the claimant depicted on Michael Taylor's website.[14]

---

[12]*Western Int'l Syndication Corp. v. Gulf Ins. Co.*, 222 Fed.Appx. 589, 592 (9th Cir. (Cal.) 2007) (**No explicit false statement that claimant Apollo lacked broadcast rights to the Apollo Show**).

[13]*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034-35 (2002). (**No explicit statement to claimant customers that claimant was the source of products that were infringing patent owner Lamb's rights**).

[14]*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 906 (N.D. Cal. (S.F. Div.) 2011) *aff'd*, 495 Fed. Appx. 830 (9th Cir. 2012) (**No explicit statement to customers that the synthetic wicker furniture was not the**

### B.   Vogue's Claims That Its Products Were Organic Were Also Alleged To Be Separately Actionable Conduct By Moroccanoil

Moroccanoil alleged a "bait-and-switch" occurred when consumers were offered a less expensive organic Moroccan Argan Oil, which was not what it purported to be. **[SUF ¶10 (MTAC ¶64)]** When Vogue posed as a legitimate seller of organic products, even though it was not, according to claimant, legally entitled to so promote its products, it allegedly injured Moroccanoil as customers that prefer its products were steered instead towards Vogue's products. **[SUF ¶10 (MTAC ¶15, 16, 19, 20, 22]** These would include not only Moroccan Argan Oil but all products that were mislabeled as organic, as these claims do not depend on the use of that moniker, but rather the misstatement that Vogue has organic products.

Critically, *Swift* distinguished *Michael Taylor* stating "the facts in this case do not include the kind of bait-and-switch tactics alleged in *Michael Taylor*. There is neither any specific allegation in the *Dahl* action nor any fact reasonably known to Hartford that clearly implies the inferiority of the Ulti-Cart to the Multi-Cart."[15]

By stark contrast, the Moroccan Argan Oil products promoted by Vogue are alleged to be organic when they are not. Further, this conduct purportedly created a competitive advantage in favor of Vogue, leading consumers to prefer its lower priced, as well as superior product, i.e., organic vs. non-organic, when in fact that designation was false according to Moroccanoil. The complaint alleges:

> 64. Prospective purchasers are likely to believe that the deceptive use of the mark ORGANIX actually describes Vogue's Products as being organic in nature. This belief is reinforced by Vogue's use of the term organic on its products. In fact, Vogue's products are not organic and prospective purchasers are deceived." **[SUF ¶10 (MTAC ¶64)]**

The depositions, exhibits and discovery documents in the underlying action

---

**claimant's, but its product**).

[15] *Swift*, 59 Cal. 4th at 297.

reveal price comparisons made by a Vogue sales representative to retailers **[SUF ¶11]** and consumer emails stating an interest in an alternative to Moroccanoil that is not only less expensive, but organic as well. **[SUF ¶12]** These are facts that Hartford might have known had it properly defended or investigated the facts. Moreover, even facts brought to Hartford's notice by this motion for partial summary judgment establish the possibility of coverage and raise the duty to defend.

The alleged misleading publications clearly imply the inferiority of Moroccanoil's business causing consumers to question the value of Moroccanoil's considerably higher priced products, which also contain Moroccan Argan Oil but do not purport to be organic. **[SUF ¶10 (MTAC ¶17, 18, 20, 22)]**

Ultimately, this case is much closer to *E.piphany*,[16] than it is to *Swift* in that the ORGANIX designations, regulated by COPA and requiring 70% of the product to be organic, is an "important differentiator" between competing products.[17] In contrast to the mere puffery at issue in *Swift*, here there are real and tangible marketplace impacts to a product that claims organic properties that allegedly do not exist. That is not mere "puffery" and is illegal under State law.[18]

The same is true of Moroccanoil's warranty and product liability insurance which, Moroccanoil urged, Vogue's misrepresentations of its status as a Moroccan Argan Oil purveyor led consumers to expect. **[SUF ¶10 (MTAC ¶22, 23)]** Thus, consumers would purchase Vogue products depending on the superior and extensive legal rights they expected from Moroccanoil products rather than those from Vogue—a smaller competitor with less evident resources. It's the difference between buying a product trademarked from Proctor & Gamble, and from its competitor "You Gambled."

---

[16] *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008).

[17] *See Swift*, 59 Cal. 4th at 294, citing *E.piphany*, 590 F. Supp. 2d at 1253.

[18] California Organic Products Act ("COPA") and 7 U.S.C. § 6501, et seq. (the "National Organic Program") **[SUF ¶10 (MTAC) ¶26]**

This is also why the distinct declaratory relief claims for cancellation of two distinct trademark registrations by Vogue emphasized that Moroccanoil viewed Vogue's misrepresentations as causing an injury in addition to direct confusion.[19] This case does not, therefore, fall within the concern voiced by *Swift* that there is merely an advertisement extolling the superior quality or company or its product.

Here, there is direct interaction between the combating views of the parties as to their intellectual property rights like the controversies at issue in *E.piphany* and *Burgett*, as well as *Michael Taylor* and *J. Lamb*. Vogue's representations are allegedly injurious to Moroccanoil and damages purportedly flow from them.

### III.   "INFRINGEMENT OF … SLOGAN … IN YOUR 'ADVERTISEMENT'" WAS POTENTIALLY ALLEGED UNDER OFFENSE (g)

#### A.   The Hartford Policy Covers Infringement Of A Slogan In Vogue's Advertising

The Hartford Policy includes coverage under "Personal and Advertising Injury" offense (g) for "Infringement … of slogan … in your 'advertisement'" **[SUF ¶5]** This offense has three elements: (1) Infringement (2) of slogan; (3) in your 'advertisement'.

The Policy contains an exclusion providing that it does not apply to "'Personal and advertising injury' arising out of the infringement of intellectual property rights. **[SUF ¶7]** However, "this exclusion does not apply to infringement, in your 'advertisement,' or on 'your website', of … slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity." **[SUF ¶7]**

#### B.   The *Moroccanoil Suit* Alleges "Infringement … Of Slogan … In [Vogue's] 'Advertisement'"

##### 1.   "Infringement"

"Personal and Advertising Injury" offense (g) requires allegations of *infringement* of a slogan. Courts have interpreted the term "infringement" when

---

[19] Sixth Claim for Relief **[SUF ¶10 (MTAC ¶64-65)]**; Seventh Claim for Relief **[SUF ¶10 (MTAC ¶69-70)]**

analyzing similar policy language to mean "using someone else's words."[20]

The Court in *Street Surfing*[21] ultimately held that although the phrase "Streetsurfer" was a slogan, there was no alleged infringement of the slogan because the insured was unable to identify any "use" of the slogan that would have been readily ascertainable by the insurer at the time the claim was filed, and specifically, nothing in the complaint or in the extrinsic evidence suggested that the underlying plaintiff ever used "Streetsurfer" as a slogan.

In so ruling, *Street Surfing* relied on *Interstate Bakeries,* an Eighth Circuit case whose analysis is inconsistent with California law when properly scrutinized but, in any event, is readily distinguishable here.[22] The *Interstate Bakeries* court conceded that "Flowers uses the phrase 'Nature's own' to market its product which is a slogan as defined in the dictionary."[23] However, it refused to find potential coverage because the underlying complaint did not make a specific allegation of use of the slogan by the claimant and the insurer was not aware of any use by the claimant. *Id.* This holding was inconsistent with the potentiality standard required by Missouri law (as well as California law), as the dissent sagely observed. *Id.* at 547-548.

The facts here differ from *Street Surfing* and *Interstate Bakeries* because the use of the slogans "organic" **and** "Moroccan Argan Oil" is readily inferable from the allegations of the complaint. Moroccanoil alleged that its "Moroccanoil Products contain argan oil" **[SUF ¶10 (MTAC ¶7)]**, and that it "was the first entrant into the market … using argan oil." **[SUF ¶10 (MTAC ¶13)]** It further alleged that Vogue used the "Moroccan Argan Oil" idea in its advertising without authorization from

---

[20] *Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 736 (7th Cir. (Wis.) 2002) ("[I]n the phrase 'infringement of copyright, title or slogan,' we held that '[r]eading these words together implies that "infringement" means using someone else's words.' ").

[21] *Street Surfing, LLC v. Great Am. E&S Ins. Co.*, 752 F.3d 853, 2014 U.S. App. LEXIS 10737, at *10-12 (9th Cir. (Cal.) 2014).

[22] *Id.,* citing *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 546 (8th Cir. 2012)

[23] *Interstate Bakeries*, 686 F.3d at 546.

Moroccanoil **[SUF ¶10 (MTAC ¶15)],** and that by using the confusingly similar term "Moroccan Argan Oil", Vogue sought to "capitalize on the success of Moroccanoil Oil Treatment, including by being included in the results of Internet searches for 'Moroccanoil' or 'Moroccan Oil.'" **[SUF ¶10 (MTAC ¶16)]**

A reasonable inference from those allegations is that Moroccanoil had the sole right to use the slogan "Moroccan Argan Oil" and actually used that slogan in its own advertising and promotion of its products. Otherwise, there would be no need for Vogue to seek "authorization from Moroccanoil" to use that slogan. The need for authorization implies that Moroccanoil alleged a protectable ownership interest in the slogan. It is a reasonable inference that Moroccanoil has used the slogan "Moroccan Argan Oil" to describe its own products.

Meanwhile, the slogan "organic" is a legally regulated term used by numerous companies to describe their products. **[SUF ¶10 (MTAC ¶26)]**

The present case is more akin to *Hudson*.[24] There, the Ninth Circuit concluded a duty to defend resulted from allegations that the insured sold a "Steel Curtain Limited Edition Steelers Jersey", which "reads 'Steel Curtain' across the back and bears the numbers of four Pittsburgh Steelers players." *Id* at 1268. The Court cited no language from the underlying complaint asserting that the phrase 'Steel Curtain' was a slogan used by the NFL and noted that the NFL made no direct allegations of slogan infringement.

Nonetheless, *Hudson* stated that "a **fair reading** of the [NFL complaint] reveals that 'Steel Curtain' is used to promote fan loyalty to the Steelers (an NFL Member Club) in general, and a subset of Steeler players in particular," and that "this potentially stated a claim for slogan infringement because a 'slogan' is a 'brief attention-getting phrase used in advertising or promotion.'" *Id* at 1268 (emphasis added).

---

[24] *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268 (9th Cir. 2010).

The NFL's complaint did not allege a claim for slogan infringement (indeed, none could be asserted because it is not a recognized cause of action). Absent fact descriptions in the complaint of the phrase 'Steel Curtain' as a slogan, the Court *inferred* that the NFL used that phrase and held that a potential claim for slogan infringement was stated thereby triggering the duty to defend.[25] That is precisely the situation here where Moroccanoil's complaint does not directly allege a slogan infringement claim or the use of the phrase by Moroccanoil, but it is readily inferable from its allegations.

Moreover, the policy language does not require that the slogan be the underlying Plaintiff's slogan.[26] It merely requires "infringement of slogan." Who's slogan is not specified. It is reasonable to infer from Moroccanoil's allegations that the slogans "Moroccan Argan Oil" and "organic" were previously in use by someone and that Vogue's infringement of the **slogans** was harmful to Moroccanoil.

### 2.    "Slogan"

Courts have defined a "slogan" as " 'a brief attention-getting *phrase* used in advertising or promotion' or '[a] *phrase* used repeatedly, as in promotion,' "[27]

*Hudson* held that "Steel Curtain" is a slogan even though the underlying complaint did not label it a slogan because it is an " 'attention-getting' phrase that is meant to promote" the Pittsburgh Steelers.[28]

---

[25] *Hudson*, 624 F.3d at 1269 ("The technical label on a cause of action does not dictate the duty to defend whether the claimed cause of action was omitted out of negligence or "for strategic adversarial reasons." *CNA*, 222 Cal. Rptr. at 282. It only matters whether the facts alleged or otherwise known by the insurer suggest potential liability or whether they do not. *See id*.").

[26] *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1101 (9th Cir. (Cal.) 2010). (No significance to who owns the legal rights to the advertising idea in question)

*Am. Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582, 588 (8th Cir. (Neb.) 2002) (challenged "full-blood" cattle designation was not claimant's)

*Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 734 (7th Cir. (Ill.) 2006) ("Indian-made" advertising idea did not belong to claimant).

[27] *Street Surfing*, 752 F.3d 853, 2014 U.S. App. LEXIS 10737, at *11.

[28] *Hudson*, 624 F.3d at 1268.

Here, Moroccanoil's advertising idea of "Moroccan Argan Oil" is also a phrase that is a **slogan** because it was used in advertising to promote Morocannoil's and Vogue's products and proclaim their desirable qualities. The phrase "organic" is a slogan for the same reasons.

A phrase need only attract the attention of (and thus constitute a slogan to) a specialized target audience, *not* necessarily an unfamiliar layperson. For instance, to a layperson, the acronyms VQM and QVM have no meaning, but to buyers of stretch limousines, they have meaning in connoting a seal of approval, and they are potential slogans.[29]

Like "Steel Curtain" in *Hudson*, and "QVM" in *Ultra Coachbuilders*, the phrases "Moroccan Argan Oil" and "organic" have meaning to the target audience – beauty conscious individuals who want a high-quality and exclusive beauty products used by top hair stylists and salons. **[SUF ¶10 (MTAC ¶13, 64)]** They appreciate the implications of the phrase suggesting that they are getting a high-quality and exclusive product for their hair. "Moroccan Argan Oil" and "organic" connote association with an exotic and healthy image to the target audience of this product just like "Wearable Light" in *Zen Design* that is marketable to the consumers of high-quality hair products.[30]

### 3.    "In [Vogue's] Advertisement"

"Advertisement" is defined in the policy as "the widespread public dissemination of information or images that has the purpose of inducting the sale of goods, products or services through … magazine … The Internet … [or] any other publication that is given widespread distribution." **[SUF ¶7]** The "in your advertisement" policy language is satisfied since Moroccanoil alleges "advertising,"

---

[29] *Ultra Coachbuilders, Inc. v. General Sec. Ins. Co.*, No. 02 CV 675(LLS), 2002 WL 31528474, at *2-3 (S.D.N.Y. July 15, 2002) (applying California law, holding that "QVM," an automobile safety certification and product feature, is a slogan.).

[30] *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 556 (6th Cir. (Mich.) 2003) (holding that a product feature, "Wearable Light," is a slogan).

"marketing" and "promotion" of the slogans "Moroccan Argan Oil" and "organic" by Vogue. **[SUF ¶10 (MTAC ¶15, 19, 20, 22, 25, 55)]**

Moroccanoil also alleges that the slogan was "confusingly similar" **[SUF ¶10 (MTAC ¶16)]** and that Vogue "marketed" the Accused Products in an "attempt to confuse and deceive" consumers. **[SUF ¶10 (MTAC ¶22)]** Causing customer confusion requires advertising of some kind. [31]

Moreover, Hartford admits in its motion that "Vogue is alleged to have advertised and sold its products using the term 'Moroccan Argan Oil'" and that "the *Moroccanoil* Action alleges that Vogue infringed upon the Moroccanoil trademarks 'for advertising, distribution, and sale.'" **[Dkt. 18:12]**

Thus, all elements of offense (g) are met by the underlying allegations.

## IV.   "COPYING IN [VOGUE'S] 'ADVERTISEMENT' [MOROCCANOIL'S] 'ADVERTISING IDEA' OR 'STYLE OF ADVERTISEMENT'" WAS ALLEGED UNDER OFFENSE (F)

### A.   Offense (f) Contains Four Elements

Offense (f) calls for "(1) copying (2) in your 'advertisement'… (3) a person's or organization's (4) 'advertising idea' or 'style of advertising.'" **[SUF ¶7]** This definition was met by Moroccanoil's allegations that Vogue copied the terms "Moroccan Argan Oil," "Organix" and "organic" in its advertisements. Hartford's only argument in opposition is that copying was on packaging and labels which are not included in the definition of advertising. However, there are numerous allegations of additional advertising.

### B.   The Four Elements Of Offense (f) Are Met

#### 1.   "Person's Or Organization's"

The Policy does not require that the copied advertising idea be the claimant's—

---

[31]*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal. App. 4th 205, 217-18 (2001) ("To cause customer confusion, appellants would have had to call attention to the appearance of their own handles, and an obvious method for doing so was to depict the handles in their catalog. The catalog, therefore, potentially establishes . . . 'passing off,' 'palming off,' and 'offering to sell' the infringing handle connote advertising the disputed handles.").

all the Policy requires is that it be "a person's or organization's" without specifying that the advertising idea belong to anyone in particular. **[SUF ¶7]** Any more narrow construction of the phrase "copying … a person's or organization's 'advertising idea'," i.e., requiring it to be owned by the party suing the insured, is not required by the policy language.

The "copying … a person's or organization's" phrase is satisfied whenever an advertising idea is copied and was not originated by the insured—even if it is not that of the claimant, so long "injury … arising out of" that offense exists as is alleged to be true here. Otherwise, the policy language would be "copying [the claimant's] 'advertising idea'" as opposed to "a person's or organization's 'advertising idea'."[32]

Thus, the Ninth Circuit held it could not "discern any contextual, public policy, or logical significance to who owns the legal rights to the advertising idea in question" under the ISO CGL offense of "misappropriation of an advertising idea."[33] Several federal Courts of Appeal have found that analogous policies do not require that the "advertising idea" originate with the underlying claimant.[34]

As long as there is a possibility (given the underlying complaint's allegations) that the "advertising idea" or "style of advertisement" was that of "a person or organization," the potential for coverage exists. "A" is defined a "one"[35] and "Person's or organization's" are both in the possessive case.[36]

---

[32] *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) ("[W]e cannot read into the policy what Safeco has omitted.").

[33] *Hyundai Motor Am.*, 600 F.3d at 1101.

[34] *Am. Simmental,* 282 F.3d at 588 (challenged "full-blood" cattle designation was not claimant's);

*Native Am. Arts*, 435 F.3d at 734 ("Indian-made" advertising idea did not belong to claimant).

[35] RANDOM HOUSE UNABRIDGED DICTIONARY 1 (2d ed. 1993) ("A" is defined as "**6.** one (used before a noun expressing quantity)" see *Meza v. Southern California Physicians Ins. Exchange*, 62 Cal. App. 4th 709, 712, (1998) ("We may consult the dictionary to determine the ordinary understanding of a term used in an insurance policy."). *See also A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 34 Cal. App. 4th 1470, 1480, (1995) (same).

[36] RANDOM HOUSE UNABRIDGED DICTIONARY 1509 (2d ed. 1993) ("Possessive" is

Thus, "a person's or organization's" can mean "possession, ownership, or origin associated with a single person or organization other than the insured" with no limiting definitional requirements that the idea be possessed, owned or originated by the claimant. This construction for "a person's or organization's" is reasonable, and that is all that is required.[37]

The term "Moroccan Argan Oil" is a copy of Moroccanoil's Moroccan argan oil idea. Moroccanoil claims ownership and control of that advertising idea and alleges Vogue used it without authorization. **[SUF ¶10 (MTAC ¶7, 13, 15, 16)]**

The term "organic" was not owned and did not originate with Vogue while "Organix" is merely an alternative spelling of "organics" which originated outside of Vogue. Therefore, the "copying ... a person's or organization's" element is met by the allegations of "Defendants' **use of the terms "organic" and "organix**" in connection with the labeling, advertisement, promotion and sale..." **[SUF ¶10 (MTAC ¶55)], and that** "prospective purchasers are likely to believe that the deceptive **use of the mark ORGANIX** actually describes Vogue's Products as being organic in nature. This belief is reinforced by Vogue's **use of the term organic** on its products. In fact, Vogue's Products are not organic and prospective purchasers are deceived. **[SUF ¶10 (MTAC ¶64)]** (emphasis added)

### 2. "Copying" Is Alleged

A "copy" can be "an imitation, transcript, or reproduction of an original work (as a letter, a painting, a table, or a dress)" or "text especially of an advertisement."[38] "Copying" is precisely what Moroccanoil alleged occurred when it complained of

---

defined as "**4.** *Gram.* ... **b.** noting or pertaining to a case that indicates possession, ownership, origin, etc., as in English, *John's* in *John's hat.*"

[37]*MacKinnon v. Truck Ins. Exch.,* 31 Cal. 4th 635, 655 (2003) ("[E]ven if [the insurer's] interpretation is considered reasonable, it would still . . . have to establish that its interpretation is the *only* reasonable one. '[W]e are not required, in deciding the case at bar, to select one "correct" interpretation from the variety of suggested readings.' " (citation omitted)).

[38]"Copy," MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/copy (last visited Sept. 4, 2013).

Vogue's misuse of "Morrocan Argan Oil" and "organic," an already-existing (and already-regulated) term. Courts from other jurisdictions are in accord.[39] Moroccanoil specifically alleges that "the **marketing efforts** …were committed with the knowledge that such **imitation** was intended to be used to cause confusion…" **[SUF ¶10 (MTAC ¶25)]** (emphasis added).

### 3. "Moroccan Argan Oil", "Organic" And "Organix" Are "Advertising Ideas"

The Policy defines "advertising idea" as "any idea for an 'advertisement.'" It necessarily includes any idea with "the purpose of inducing the sale of goods, products or services." **[SUF ¶6]** This definition is validated by widely followed authority.[40] This construction is also consistent with the definition of "advertising idea" adopted by a trio of state supreme courts.[41] So understood, an "advertising idea" need not be limited to positive product statements, but can include anything related to their promotion that renders them desirable.[42] This is particularly so as coverage terms must be broadly interpreted.[43]

---

[39]*Union Ins. Co. v. Knife Co.*, 897 F. Supp. 1213, 1216 (W.D. Ark. 1995) (policy term "misappropriation" not limited to common law tort of misappropriation); *AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F. Supp. 2d 721, 730 (S.D. Ohio 2007) (same); *Allou Health & Beauty Care, Inc. v. Aetna Cas. & Sur. Co.*, 269 A.D.2d 478, 480 (N.Y. App. Div. 2000) (same).

[40]*Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. (Fla.) 2002) ("advertising idea … can be any idea or concept related to promotion of a product to the public.")

[41]*Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 579 (Minn. 2009); *Acuity v. Bagadia*, 750 N.W.2d 817, 827 (Wis. 2008); *Super Duper, Inc. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 683 S.E.2d 792, 798 (S.C. 2009).

[42]"One of the fundamental features of negation in natural language is the way in which it triggers or projects an opposite, positive counterpart which is being defeated." Lisa Nahajec, *'Whoever thought tuna had drama?' A Critical Stylistic Analysis of Negation in Advertising Texts*, *in* CADAAD 2010 BOOK OF ABSTRACTS 70 (Anna Ewa Wieczorek, ed., 2010), *available at* http://cadaad.net/files/ downloads/cadaad _book_of_abstracts.pdf.

[43]*TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006) ("[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] … exclusionary clauses are interpreted narrowly against the insurer.") (quotations omitted).

In an analogous setting, a drug maker sold a generic product falsely suggesting it was the trademarked product Lipitor.[44] Here, "Moroccan Argan Oil" and "organic" are the ideas used in the personal care products industry to promote a certain class of exclusive products. "Organic" is regulated by the State.[45] The *Moroccanoil suit* expressly sought to end Vogue's allegedly false and misleading use of its and that industry's ideas.

### 4.    In Your "Advertisement"

Hartford's sole argument against a duty to defend under offense (f) is that the *Moroccanoil suit* did not allege an "advertisement" by Vogue as defined by the Policy. **[Dkt. 18:25-27].** Hartford argues that the Policy's definition of "advertisement" does not include "the design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products", and that the *Moroccanoil suit* makes no allegations of advertising by Vogue beyond Vogue's product packaging or labeling. **[Dkt. 18:26-27].** But the alleged advertisements are not limited to product packaging and labels.

Here, coverage exists when "advertising injury" is caused by the copying of a person's "advertising idea" in your "advertisement." The injury need not be caused by advertising but, rather, caused by the offense of "copying."

The *Moroccanoil suit* specifically alleges Vogue used Moroccanoil's advertising ideas and style of advertisement in both advertisements **and** on product packaging and labels. Moroccanoil alleged that Vogue used the "Moroccan Argan Oil" idea in its "advertising" without authorization from Moroccanoil **[SUF ¶10 (MTAC ¶15)],** and that Vogue has displayed "advertising" comparing the Accused

---

[44] *Ohio Cas. Ins. Co. v. Albers Med., Inc.*, No. 03-1037-CV-W-ODS, 2005 WL 2319820, at *4 (W.D. Mo. Sept. 22, 2005).

[45] CAL. HEALTH & SAFETY CODE § 110830(a) (The California Legislature enacted the California Organic Products Act of 2003 ("COPA") evidencing the power of "organic" marketing as an advertising idea: "No product handled, processed, sold, advertised, represented, or offered for sale in this state, shall be sold as organic unless it also is prominently labeled and invoiced with similar terminology as set forth by regulations promulgated by the [National Organic Program].").

Products and Moroccanoil Products. **[SUF ¶10 (MTAC ¶20)]** It further alleges, "According to the Defendants' advertising**, and** the product packaging the Accused Products are intended for sale …" (emphasis added) **[SUF ¶10 (MTAC ¶19)]** The comma followed by "and" means that "advertising" and "product packaging" are distinct from each other and that there is some sort of advertising beyond merely product packaging.[46] These allegations use the generic term "advertising." There is no limitation to packaging and labels alone.

Moroccanoil also alleges that Vogue sought to "capitalize on the success of Moroccanoil Oil Treatment, including by being included in the results of Internet searches for 'Moroccanoil' or 'Moroccan Oil'." **[SUF ¶10 (MTAC ¶16)]** An internet search result is not a product package or label. It is a separate covered advertisement.[47] Moroccanoil specifically alleges that "the **marketing efforts** …were committed with the knowledge that such **imitation** was intended to be used to cause confusion…" **[SUF ¶10 (MTAC ¶25)]** (emphasis added), and that Vogue "marketed" the Accused Products in an "attempt to confuse and deceive" consumers. **[SUF ¶10 (MTAC ¶22)].** The term "marketing" includes advertisements beyond solely packaging and labels.[48]

Moroccanoil also alleges Vogue's "use of the terms "organic" and "organix" in connection with the labeling, **advertisement**, **promotion** and sale of the Accused Products as well as the false representations that the Accused Products are organic constitutes **false advertising"** **[SUF ¶10 (MTAC ¶55)]** (emphasis added)

Hartford argues that there are no allegations that the alleged "advertisements" are distinct from products and labels. However, "advertisements" necessarily included

---

[46] RANDOM HOUSE UNABRIDGED DICTIONARY 76-77 (2d ed. 1993) ("And" is defined as "**1.** (used to connect grammatically coordinate words, phrases, or clauses) along or together with; as well as; in addition to; besides; also; moreover; *pens and pencils.*").

[47] The Policy definition of "advertisement" specifically includes "dissemination of information … through the internet." **[SUF ¶7]**

[48] *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. (N.Y.) 2006) ("[A] term as broad and multi-faceted as 'marketing' may be construed to include activities . . . that are 'within the embrace' of 'advertising' . . . .")

Vogue's website, print advertising, and displays, as well as any other number of potential advertising avenues. No allegations state that the only complained of advertising was on Vogue's product packaging and labels, as Hartford improperly assumes. Alleged advertising was not limited solely to Vogue's packaging and labels. Even if there was factual dispute on that issue, a defense is nonetheless due.[49]

Moroccanoil accuses Vogue of copying the advertising ideas in both its advertising **and** labeling. The complaint's use of the conjunction "and" identifies both advertising as well as product labeling as distinctly implicated.

## V.   NO INTELLECTUAL PROPERTY EXCLUSION CAN BAR A DEFENSE

### A.   The Intellectual Property Exclusion Does Not Apply to Slogan Infringement.

The Policy contains an exclusion providing that it does not apply to "'Personal and advertising injury' arising out of the infringement of intellectual property rights. **[SUF ¶7]** However, "this exclusion does not apply to infringement, in your 'advertisement,' or on 'your website', of … slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity." **[SUF ¶7]** Therefore, the allegations of slogan infringement outlined above are not excluded and Hartford owed a duty to defend.

### B.   Hartford's Intellectual Property Exclusion Cannot Bar Distinct Fact Allegations Based On Unfair Competition and False Advertising Falling Outside The Scope Of Its IP Exclusion

As *Duncan v. Stuetzle,* 76 F.3d 1480, 1486 (9th Cir. 1996) explained in an analogous case, Moroccanoil's allegations go beyond claims for trademark infringement because trademark law is not essential to the unfair competition and false designation claims. Claims for unfair competition can exist even without any valid

---

[49]*Mirpad, LLC v. California Insurance Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1068 (2005) ("If coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend.").

1    trademark.[50]

2        Regardless of whether Moroccanoil possessed a valid trademark, it alleged that

3    its goods were known to the public.

4            38. Defendants' acts, including its acts of false advertising . . . and

5            unfair competition are likely to cause confusion or to cause mistake or

6            to deceive as to the affiliation, connection, or association of the

7            Accused Product with Moroccanoil or as to the origin, sponsorship or

8            approval of the Accused Product by Moroccanoil. Defendants'

9            conduct constitutes infringement of Moroccanoil's unregistered

10           trademarks, unfair competition and such conduct is prohibited by 15

11           U.S.C. § 1125(a)." **[SUF 10, (MTAC ¶38)]**

12       Hartford's argument relies on the false assertion that "Moroccanoil's entire

13   claim against Vogue is based upon the allegation that Vogue's use of the phrase

14   'Moroccan Argan Oil'" infringes its marks. [Dkt. 18:27] This is not true as the

15   complaint also alleged unfair competition and false advertising from the use of the

16   terms "organic" and "Organix" as well as "Moroccan Argan Oil." **[SUF 10, (MTAC**

17   **¶46, 55)]** These

18       In *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.,* 761 F.

19   Supp. 2d 904 (2011), Travelers (as does Hartford here) took an impermissibly narrow

20   view of the fact allegations and denied coverage by relying on excluded labeled

21   claims, which did not recognize that potentially covered claims could fall outside

22   intellectual property exclusions.

23        As the Ninth Circuit explained, an exclusion cannot bar activity falling outside

24   its scope where the injury alleged could have arisen from non-excluded conduct.[51] Nor

25   ─────────────────────────

26   [50]*Cytanovich Reading Center v. Reading Game*, 162 Cal. App. 3d 107, 113 (1984)
     ("Where no valid trademark . . . exists . . . if the goods or service are known to the
27   public by such name, design or physical appearance, *any imitation which has the
     effect of deceiving buyers as to the origin of the goods or services may be enjoined as
     unfair competition.*" (Original italics))

28   [51]*Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1032-33 (9th Cir.

can Hartford disclaim coverage by relying upon the "gravamen" of the *Moroccanoil Suit* or its preferred labeling of claims.[52] So long as the activity could create liability in concert with the alleged claims, even remote fact allegations in complaint can evidence potential coverage,[53] as Hartford must defend "mixed" actions.[54] This is especially the case as exclusions are interpreted strictly so any ambiguity is resolved against the insurer.[55]

### C. Hartford's Expansive Reading Of The "Arising Out Of" Phrase As Used In Its Intellectual Property Exclusion Is Contrary To Developing California Law

#### 1. Hartford's "Arising Out Of" Exclusionary Coverage Cases Are Readily Distinguishable When Interpreted Narrowly Against It

While some decisions broadly construe "arising out of," even though it is used in an exclusion, on closer scrutiny, those cases either are factually distinguishable or no longer state governing California law applicable here. Especially inapposite are those decisions that deal with different exclusionary language, for distinct exclusions

---

(Cal.) 2008) ("[Addressed how coverage existed outside an analogous "entertainment" exclusion] California law requires us to adopt a narrow construction of the FELE. With such narrow construction, the FELE would not exclude advertising injury coverage if, for example, Manzarek and DTI began distributing 'The Door's Own' line of salad dressing. Advertising injury coverage for such a product would still exist because Manzarek and DTI would not necessarily publicize, distribute, exploit, exhibit, or advertise in media such as motion pictures, etc.").

[52]*Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. (Cal.) 2002) ("The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim." *See* [*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1084, 17 Cal. Rptr. 2d 210, 846 P.2d 792 (1993)]");

*DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010, 1028 (10th Cir. (Colo.) 2011) ("[T]he duty to defend is not restricted to the 'core complaint' or to the underlying plaintiff's 'primary' grievance.").

[53]*Pension Trust*, 307 F.3d at 951 ("[R]emote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty . . . [and the] law does not require that the insured's conduct proximately cause the third party claim in order to trigger the defense duty.").

[54]*Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997) ("[The insurer] must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not.").

[55]*Safeco Ins.*, 26 Cal. 4th at 765-66.

such as that for breach of contract.[56]

Hartford's construction of the "arising out of" language, despite its presence in an exclusion, is premised on its selective citation to *Southgate Recreation & Park Dist. v. Cal. Assn. for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) which addressed a distinct and much broader exclusion for liability "[a]rising out of or related to construction . . . contracts or to any other contract for the purchase of goods or services." *Southgate* also predated *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (which emphasized that any reasonable construction of an exclusion will suffice).

Hartford's suggestion that its intellectual property exclusion should be "broadly" interpreted to require only a "minimal causal connection between the alleged injury and the alleged infringing conduct," relying on *Aloha Pacific, Inc. v. California Ins. Guarantee Ass'n*, 79 Cal. App. 4th 297 (2000) is readily distinguishable. *Aloha* is inapposite as an indemnity case finding that damages were awarded on excluded trade dress claims and not under excepted "slogan" coverage. *Id.* at 317. Its statement is therefore *dicta* as applied here. It is settled settled California law that a case is not authority for a proposition it does not address.[57]

*Industrial Indem. Co. v. Apple Computer, Inc.,* 79 Cal. App. 4th 817, 831 (1999) is unhelpful to Hartford because while it found no coverage for a breach of contract claim based on trademark infringement, it noted that advertising injury coverage would exist, notwithstanding a trademark exclusion "based on advertising conduct not involving trademark infringement." Such is the case here. Hartford's

---

[56] *See GK Skaggs, Inc. v. Hartford Cas. Ins. Co.*, 2014 U.S. App. LEXIS 11161 (9th Cir. Cal. June 16, 2014) is not a final decision as the Petition for Rehearing was filed and the Panel required Hartford to file any Opposition Brief by July 21, 2014—a point Hartford well knows. *But see, Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 102 A.D.3d 756, 759 (N.Y. A.D. 2013) ("Independent of the breach of contract claim, for which there is plainly no coverage, the press release allegedly violated the Lanham Act by suggesting to NPN's customers that its products were not genuine . . . or that the remaining inventory was somehow unauthorized[.]").

[57] *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 135 Cal. Rptr. 2d 361, 70 P.3d 351 (2003).

other cases are readily distinguishable.

A series of breach of contract exclusion coverage cases reveal the conceptual errors in Hartford's approach. In each, the district court followed *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P.2d 123 (1973), rejecting the insurer's argument that *Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076 (9th Cir. (Cal.) 1985) requires a broad reading of "arising out of" when found in exclusions, and that any wrong constituting breach of contract necessarily "arises from" that breach.[58]

*Nestle USA Inc. v. Travelers Cas. & Sur. Co. of Am.*, 10 F. App'x 438 (9th Cir. 2001) merely cited *Aloha*, which cites as noted to distinguish a proposition. The same is true of *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647 (1999), addressing only indemnity. *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557 (1999) cites *City of Richmond* without explanation.

*Aloha* also merely concluded that trade dress claims were not covered under a policy that excluded trademark infringement. This is not a broad construction of "arising out of" but one that is fully consistent with the nature and character of trademark law, which is the broader category of the two.

Nor is it of any moment that a court applied a statutory exclusion to common law.[59] *Integral Res. Inc.* offers nothing about the scope and breadth of the "arising out of" language in that policy instead focusing only on the benign observation that

---

[58] *Tower Ins. Co. of New York v. Capurro Enterprises Inc.*, No. C 11-03806 SI, 2012 U.S. Dist. LEXIS 46443, at *32, 33 (N.D. Cal. Apr. 2, 2012) ("**[T]he alleged wrongs committed … constituted legally cognizable claims *whether or not a contract ever existed*.** . . . Construing the policy in [the insured's] favor, the exclusionary clause narrowly, and resolving ambiguities in favor of the insured, [the] claims do not fall within the breach of contract exclusion." (emphasis added));

*Career Sys. Dev. Corp. v. Am. Home Assur. Co.*, No. C 10-2679 BZ, 2011 U.S. Dist. LEXIS 103999, at *5 (N.D. Cal. Sept. 14, 2011) ("Because liability for [publishing defamatory] statements would constitute the separate tort of defamation and have no relation to any contract between the parties, the 'breach of contract' exclusion does not apply.").

[59] *Integral Res. Inc. v. Hartford Fire Ins. Co.*, No. 2:14-CV-02308-R (AGRx), 2014 U.S. Dist. LEXIS 83793 (C.D. Cal. June 13, 2014).

statutory exclusions may apply to bar coverage for claims falling within the ambit of commercial torts.

The same is true of the plethora of other decisions cited, which rely upon *City of Richmond* or *Syufy Enters.*, which cite to those cases without further analysis.[60] While *Davis* purported to effectuate the policies in favor of a "plain meaning" and avoidance of a "strained construction," it did not explain why those policies would in this context require abandonment of the settled rule that policy exclusions must be interpreted against the insurer.[61]

*Medill's* inapplicability is particularly noteworthy, as that court addressed special language defining a "loss" under the policy, where "arising out of," meant indemnity "based upon, arising out of, or in connection with," concluding "[n]o aspect of the underlying bond litigation would exist without the alleged breaches of the loan agreements and indentures and the contractual obligations to pay on the bonds. . . . The bond litigation in its entirety 'arises out of' breach of contract."[62]

### 2. Even Under The Broader "But For" Construction Of "Arising Out Of" The "Intellectual Property" Exclusion Is Inapplicable

The IP exclusion only applies to the torts it lists with certain IP torts excepted from the exclusion. Neither everything covered by offenses (d) or (f) necessarily falls within the scope of its asserted intellectual property rights, as Hartford intimates, but cannot demonstrate. Nor must every covered claim fit within an exception to the exclusion. Ultimately, Hartford's argument impermissibly adds words to its policy

---

[60]*Zurich Specialties London, Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 425 Fed. Appx. 554 (9th Cir. Mar. 28, 2011); *Am. Guar. & Liab. Ins. Co. v. Lexington Ins. Co.*, 517 Fed. Appx. 599 (9th Cir. May 6, 2013); *Trenches, Inc. v. Hanover Ins. Co.*, 2014 U.S. App. LEXIS 9644 (9th Cir. May 23, 2014); *Marquez Knolls Property Owners Ass'n, Inc. v. Executive Risk Indem., Inc.*, 153 Cal. App. 4th 228, 62 Cal. Rptr. 3d 510 (2007); *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 49 Cal. Rptr. 3d 570 (2006); *Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100, 107, 35 Cal. Rptr. 3d 738 (2005).

[61]*Davis,* 134 Cal. App. 4th at 107.

[62]*Medill,* 143 Cal. App. 4th at 826.

under the guise of interpretation.[63] No potential application of exclusionary language is predicted on the "but for" language.[64]

Disparagement claims depend upon distinct grounds for liability.[65] Such evidence reveals implicit disparagement under the asserted unfair competition claims would independently exist regardless of whether or not intellectual property claims were asserted in conjunction with such allegations. In the end, Hartford cannot establish that a defense is barred "in all possible worlds."[66] The most recent published case addressed this issue, concluded, "Arising out of" means "directly arising out of," or "directly and proximately result[ing] from." [67]

## VI.   THE COURT MAY GRANT SUMMARY JUDGMENT IN FAVOR OF A DUTY TO DEFEND *SUA SPONTE*

This court need not merely conclude that "infringement of … slogan … in [Vogue's] 'advertisement'" or "copying in your 'advertisement'… a person's or organization's 'advertising idea' or 'style of advertising'" is potentially alleged, it may

---

[63] *Safeco Ins.*, 26 Cal. 4th at 763-764.

[64] *Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 750 (S.D. Ind. 2009) ("Indiana would follow the majority of other jurisdictions so that a breach of contract exclusion would apply only if the claim in question would not have existed **but for** the insured's alleged breach of contract." (emphasis added));

*Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 2014 U.S. App. LEXIS 4463, at *12 (2d Cir. N.Y. Mar. 11, 2014) ("National's right to protect its trade dress—which antedated the confidentiality agreement with Bridge Metal—could be infringed **regardless of the contract**." (emphasis added)).

[65] *Align Tech., Inc. v. Fed. Ins. Co.*, 673 F. Supp. 2d 957, 972 (N.D. Cal. (S.J. Div.) 2009) ("[A]ccepting Federal's argument would lead it to cobble together the most favorable allegations from both parties and disregard the rest. . . . [B]ased on the alleged facts, there is no relationship between the injury caused by these statements and Align's conduct with respect to intellectual property rights. *Cf. KLA-Tencor*, 2003 U.S. Dist. LEXIS 10456, 2003 WL 21655097 at *6 (declining to infer, by virtue of the plaintiff's ongoing patent litigation, that the plaintiff could *only* have made statements in defense of its patent rights).").

[66] *J. Lamb, Inc.*, 100 Cal. App. 4th at 1032.

[67] *North Counties Eng'g, v. State Farm Gen. Ins.*, 224 Cal. App. 4th 902, 933 (March 13, 2014), citing *Charles E. Thomas Co. v. Transamerica Ins. Grp.*, 62 Cal. App. 4th 379, 383-84 (1998) and *HS Services, Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 647 (9th Cir. (Cal.) 1997) ("We hold that to 'arise out of' a termination of employment, the defamatory remark at issue must have been a part of or directly and proximately resulted from the termination.")

also adjudicate that the *Moroccanoil suit* requires a defense under applicable Federal Rules of Civil Procedure.[68]

## VII.   CONCLUSION

For all of the above reasons, Hartford's Motion for Summary Judgment should be denied and an order issued granting Vogue's Cross-Motion for Partial Summary Judgment based on the grounds for coverage asserted there, and *sua sponte* on the distinct grounds raised here. Vogue requests that the order award it all reasonable attorney's fees incurred post tender with prejudgment interest at the rate of 10% per annum from the date of each invoice. Settlement expenses should be resolved by a bench trial on cross-motions with supporting declarations on a date convenient to the Court's calendar.

Dated:  July 21, 2014                    **GAUNTLETT & ASSOCIATES**


                                         By:  /s/ David A. Gauntlett
                                              David A. Gauntlett
                                              James A. Lowe

                                         Attorneys for Plaintiff
                                         VOGUE INTERNATIONAL, LLC

---

[68]Fed. R. Civ. Proc. 56 (Pursuant to the 2010 Amendment, the court may "[c]onsider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *See*, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986) ("[Courts] possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").