1  David Simantob, Esq., SBN 155790
   dsimantob@tresslerllp.com
2  Linda T. Hoshide, Esq., SBN 190403
   lhoshide@tresslerllp.com
3  Jeanne Kuo Riggins, Esq., SBN 231411
   jriggins@tresslerllp.com
4  TRESSLER LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, CA  90067
   Telephone:   (310) 203-4800
6  Facsimile:    (310) 203-4850
7
8  Attorneys for Defendant
   HARTFORD CASUALTY INSURANCE COMPANY
9
              **UNITED STATES DISTRICT COURT**
10
       **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**
11

| | |
|---|---|
| 12<br><br>13 VOGUE INTERNATIONAL, LLC d/b/a<br>VOGUE INTERNATIONAL, a Delaware<br>limited liability company,<br><br>14<br><br>15                              Plaintiff,<br><br>16             vs.<br><br>17 HARTFORD CASUALTY INSURANCE<br>COMPANY, an Indiana corporation,<br><br>18<br><br>19                              Defendants.<br><br>20<br><br>21<br><br>22<br><br>23<br><br>24 | CASE NO. 2:14-cv-03570-PA-MRW<br>Hon. Percy Anderson<br><br>**DEFENDANT HARTFORD<br>CASUALTY INSURANCE<br>COMPANY'S OPPOSITION TO<br>PLAINTIFF'S MOTION FOR<br>PARTIAL SUMMARY<br>JUDGMENT**<br><br>Date:       August 11, 2014<br>Time:       1:30 PM<br>Ctrm:       15<br><br>Complaint filed May 8, 2014<br>First Amended Complaint filed May<br>29, 2014<br>No Trial Date Set |

25        Defendant  Hartford  Casualty  Insurance  Company  ("Hartford")  hereby

26  submits this Opposition to the Motion for Partial Summary Judgment filed by

27  plaintiff Vogue International, LLC d/b/a Vogue International ("Vogue") in this

28  action.

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF FACTS .......................................................................... 2

    A.   THE *MOROCCANOIL* ACTION ALLEGES TRADEMARK
       INFRINGEMENT AND UNFAIR COMPETITION FROM
       TRADEMARK INFRINGEMENT. .................................................... 2

    B.   TENDER TO HARTFORD OF *MOROCCANOIL* ACTION. .............. 3

    C.   THE HARTFORD POLICIES ......................................................... 3

III. ARGUMENT ............................................................................................... 5

    A.   VOGUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
       MUST BE DENIED, BECAUSE VOGUE HAS NOT MET ITS
       BURDEN OF PROOF. .................................................................. 5

    B.   STANDARD FOR THE DUTY TO DEFEND. .................................. 5

    C.   VOGUE INVOKES CALIFORNIA LAW TO DETERMINE
       COVERAGE. ............................................................................. 6

    D.   VOGUE CANNOT MEET ITS BURDEN TO SHOW A
       "PERSONAL AND ADVERTISING INJURY"
       ENUMERATED OFFENSE. ........................................................... 6

    E.   THE CALIFORNIA SUPREME COURT'S DECISION IN
       *SWIFT* ELIMINATES ANY COVERAGE UNDER THE
       POLICIES' DISPARAGEMENT OFFENSE. ..................................... 7

          *1.   Claims Against Vogue Do Not Meet the Specific
              Reference And Clear Derogation Requirements
              Set Forth in Swift* ....................................................... 7

          *2.   No Allegation that Vogue Was the "Only"
              Producer of the Product* ........................................... 10

          *3.   Allegations of Having an Equivalent or Superior
              Product, Even if Made, Not Sufficient To
              Constitute Implied Disparagement* .......................... 12

i

       4.      *No Allegation of "Bait and Switch."* ...................................... *13*

F.     VOGUE CANNOT MEET ITS BURDEN OF SHOWING AN "ADVERTISEMENT" TO FALL WITHIN THE "ADVERTISING IDEA" OFFENSE. ........................................................... 15

G.     TRADEMARK CANCELLATION OF THE INSURED'S OWN TRADEMARK DOES NOT FALL WITHIN THE "ADVERTISING IDEA" OFFENSE. ......................................................... 18

H.     THE INTELLECTUAL PROPERTY EXCLUSION BARS COVERAGE FOR THE *MOROCCANOIL* ACTION. ...................................... 20

       1.      *The Gravamen of the Moroccanoil Action is for Excluded Trademark And Trade Dress Infringement.* ............. *20*

       2.      *The "Arising Out Of" Phrase in the Intellectual Property Exclusion Broadly Applies to Any Intellectual Property Right, Including Trademark Cancellation.* ............... *21*

I.      THE NONCONFORMITY EXCLUSION BARS COVERAGE FOR THE *MOROCCANOIL* ACTION. ......................................................... 24

J.      AS THERE IS NO DUTY TO DEFEND, HARTFORD HAD NO DUTY TO INDEMNIFY. ................................................................... 25

**IV.**  **CONCLUSION.** ............................................................................. 25

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Acceptance Ins. Co. v. Syufy Enters.*,
  69 Cal. App. 4th 321, 81 Cal. Rptr. 2d 557 (1999) .............................................21

*Aloha Pac., Inc. v. Cal. Ins. Guar. Ass'n.*,
  79 Cal. App. 4th 297, 93 Cal. Rptr. 2d 148 (2000) ..................................20, 22, 24

*Am. Guar. & Liab. Ins. Co. v. Lexington Ins. Co.*,
  517 Fed. Appx. 599 (9th Cir. May 6, 2013) ........................................................21

*American Cyanamid Co. v. American Home Assurance Co.*,
  30 Cal. App. 4th 969 (1994) ...............................................................................17

*Atlantic Mutual Ins. Co. v. J. Lamb Co.*,
  100 Cal.App.4th 1017 (2012) ..............................................................................15

*Aurafin-OroAmerica, LLC v. Fed. Ins. Co.*,
  188 Fed. Appx. 565 (9th Cir. 2006) .....................................................................24

*Bear Wolf, Inc. v. Hartford Ins. Co. of Southwest*,
  819 So.2d 818 (2002).........................................................................................17

*Big 5 Sporting Goods Corp. v. Zurich American Ins. Co.*
  957 F. Supp. 2d 1135 (C.D. Cal. 2013) ...............................................................11

*Blatty v. New York Times Co.*,
  42 Cal.3d 1033, 232 Cal. Rptr. 542 (1986) ...........................................................8

*Burgett, Inc. v. American Zurich Ins. Co.*,
  830 F.Supp.2d 953 ...........................................................................................11

*Buss v. Sup. Ct.*,
  16 Cal. 4th 35, 65 Cal. Rptr. 2d 366 (1997) ..........................................................6

*Century Transit Systems, Inc. v. Am. Empire Surplus*,
  42 Cal. App. 4th 121, 49 Cal. Rptr. 2d 567 (1996) ...............................................22

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Certain Underwriters at Lloyd's of London v. Superior Court*,
   24 Cal.4th 945 (2001) ................................................................19, 25

*Cincinnati Ins. Co. v. Crown Labs, Inc.*,
   No. 2:08-cv-240, 2012 U.S. Dist. LEXIS 60096,
   2012 WL 1565359 (E.D. Tenn. Apr. 30, 2012) ..................................12

*Continental Cas. Co. v. City of Richmond*,
   763 F.2d 1076 (9th Cir. 1985) ....................................................21, 22

*CRS Recovery, Inc. v. Laxton*,
   600 F. 3d 1138 (9th Cir. 2010) ..........................................................6

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   590 F.Supp.2d 1244 (N.D. Cal. 2008).................................................11

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992) ......................5

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*,
   18 Cal. 4th 857, 77 Cal. Rptr. 2d 107 (1998) ......................................17

*Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*,
   120 Cal. App. 4th 17, 15 Cal. Rptr. 3d 359 (2004) .........................12, 14

*Gray v. Zurich Ins. Co.*,
   65 Cal. 2d 263, 54 Cal. Rptr. 104 (1966) ................................6, 11, 12

*Gunderson v. Fire Ins. Exch.*,
   37 Cal. App. 4th 1106, 44 Cal. Rptr. 2d 272 (1995) .....................3, 12, 14

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*,
   59 Cal.4th 277 (2014) .............................................................*passim*

*Helfand v. National Union Fire Ins. Co.*,
   10 Cal. App. 4th 869 (1992) .............................................................24

*Hester v. Navigators Ins. Co.*,
   917 F.Supp.2d 290 (S.D.N.Y. 2013) ...................................................19

iv

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Homedics, Inc. v. Valley Forge Ins. Co.*,
   315 F.3d 1135 (9th Cir. 2003) ........................................................6, 10

*Indus. Indem. Co. v. Apple Computer, Inc.*,
   79 Cal. App. 4th 817, 95 Cal. Rptr. 2d 528 (1999) ...............................20

*Integral Resources, Inc. v. Hartford Fire Ins. Co.*,
   No. 2:14-CV-02308-R (AGRx), 2014 U.S. Dist. LEXIS 83793
   (C.D. Cal. June 13, 2014) .........................................................6, 21, 23

*Jar Labs, LLC v. Great Am. E&S Ins. Co.*,
   945 F.Supp.2d 937 (N.D. Ill. 2013) .........................................................12

*Legarra v. Federated Mut. Ins. Co.*,
   35 Cal. App. 4th 1472, 42 Cal. Rptr. 2d 101(1995) ...............................17

*Liberty Mut. Ins. Co. v. Superior Court*,
   58 Cal.App.4th 617 (1997) ......................................................................17

*Maxconn, Inc. v. Truck Ins. Exch.*,
   74 Cal.App.4th 1267, 88 Cal. Rptr. 2d 750 (1999) ...............................10

*McGhee v. Arabian Am. Oil Co.*,
   871 F.2d 1412 (9th Cir. 1989) ...................................................................6

*Mez Indus. v. Pacific Nat'l Ins. Co.*,
   76 Cal. App. 4th 85, 90 Cal. Rptr. 2d 721 (1999) ...................................7

*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*,
   761 F.Supp.2d 904 (N.D. Cal. 2011) ......................................................14

*Miranda v. Cal. Captial Ins. Co.*,
   No. A126778, 2011 Cal. App. Unpub. LEXIS 2419,
   2011 WL 1168064 (Cal. Ct. App. Mar. 29, 2011) .........................14, 15

*Montrose Chemical Corp. v. Sup. Ct.*,
   6 Cal. 4th 287, 24 Cal. Rptr. 2d 467 (1993) ...............................5, 6, 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Techs., Inc.*,
   466 Fed. Appx. 653 (9th Cir. 2012) ...............................................12, 13

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

2
*Nat'l Union Fire Ins. Co. v. Siliconix Inc.*,
   726 F. Supp. 264 (N.D.Cal. 1989) ........................................................................11
3

4
*Nationwide Ins. Co. v. King*,
   673 F. Supp. 384 (S.D. Cal. 1987) ........................................................................19
5

6
*Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of America*,
   10 Fed. Appx. 438 (9th Cir. Mar. 22, 2001) ....................................20, 21, 23
7

8
*Palmer v. Truck Ins. Exch.*,
   21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647 (1999) ...............................................20
9

10
*R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*,
   287 F.3d 242 (2d Cir. 2002) .................................................................................17
11

12
*Rosen v. State Farm Fire Gen. Ins. Co.*,
   30 Cal.4th 1070 (2003) ...........................................................................................19
13

14
*San Miguel Comm. Assn. v. State Farm General Ins. Co.*,
   220 Cal.App.4th 798 (2013) ...................................................................................19
15

16
*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
   12 Cal. App. 4th 715 (2003) ..................................................................................16
17

18
*Southgate Recreation & Park Dist. v. Cal. Ass'n for Parks & Recreation Ins.*,
   106 Cal. App. 4th 293, 130 Cal. Rptr. 2d 728 (2003) ....................................22
19

20
*Street Surfing, LLC v. Great Am. E&S Ins. Co.*,
   No. 12-55351, 2014 U.S. App. LEXIS 10737 (9th Cir. June 10, 2014) ............17
21

22
*Total Call Internat., Inc. v. Peerless Ins. Co.*,
   181 Cal. App. 4th 161, 104 Cal. Rptr. 3d 319 (2010) ...............................8, 24
23

24
*Towers Ins. Co. of New York v. Capurro Enterprises Inc.*,
   No. C 11-03806 SI, 2012 U.S. Dist. LEXIS 46443
   (N.D.Cal. Apr. 2, 2012) ..........................................................................................14
25

26

27
*Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*,
   130 Cal.App.4th 99, 29 Cal. Rptr. 3d 609 (2005) ..............................................3
28

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Trenches, Inc. v. Hanover Ins. Co.*,
   No. 12-56642, 2014 U.S. App. LEXIS 9644 (9th Cir. May 23, 2014) ...............21

*Upper Deck Co. v. Federal Ins. Co.*,
   358 F.3d 608 (9th Cir. 2004) ................................................................3, 12

*Waller v. Truck Ins. Exch.*,
   11 Cal. 4th 1, 44 Cal. Rptr. 2d 370 (1995) ..................................5, 17, 19

*Western Int'l Syndication Corp. v. Gulf Co.*,
   222 Fed. Appx. 589 (9th Cir. 2007) .................................................15

*Zurich Specialties London, Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*,
   425 Fed. Appx. 554 (9th Cir. Mar. 28, 2011).....................................21

**RULES**

Fed. R. Civ. Proc. 56(c) ...............................................................5

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Hartford had no duty to defend or indemnify Vogue in the action entitled *Moroccanoil, Inc. et al. v. Vogue Int'l et al.,* 2:10-cv-10048-DMG-AGR, United States District Court for the Central District of California (the "*Moroccanoil* Action") under liability policies that Hartford issued to "Todd Christopher International DBA Vogue International" (the "Policies") as the *Moroccanoil* Action does not trigger the Policies' insuring agreements and even if it did, the *Moroccanoil* Action arises out of infringement of intellectual property rights, which is expressly excluded by the Policies.

Vogue only seeks coverage under the Policies' "personal and advertising injury" enumerated offenses of "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services," and "[c]opying, in your 'advertisement' or 'on your web site', a person's or organization's 'advertising idea' or style of 'advertisement'."  However, the *Moroccanoil* Action does not allege any enumerated offenses under the Policies.  In particular, the California Supreme Court in *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277 (2014) recently confirmed that intellectual property disputes, such as the *Moroccanoil* Action, are not covered under a disparagement offense.  For example, the *Swift* Court found no disparagement where the insured argued phrases such as "unique," "superior," and "unparalleled" suggests the "superiority" of the insured's product and by implication, the "inferiority" of the plaintiff's product.  *Swift*, 59 Cal.4th at 299.  Moreover, there are simply no facts to support that the *Moroccanoil* Action alleged "advertising ideas" were copied in Vogue's "advertisements."   In addition, the Policies' Intellectual Property exclusion applies to preclude coverage for the *Moroccanoil* Action.

Ignoring clear California Supreme Court precedent and instead, relying on

1

random unpublished and out of state cases, Vogue fails to establish that it is entitled to judgment as a matter of law.  As set forth below, Vogue cannot meet its burden to show that it is entitled to partial judgment as a matter of law, and Hartford respectfully requests that Vogue's Motion for Partial Summary Judgment be denied, in its entirety.

## II.   STATEMENT OF FACTS

### A.   The *Moroccanoil* Action Alleges Trademark Infringement and Unfair Competition from Trademark Infringement.

On December 29, 2010, Moroccanoil, Inc. ("Moroccanoil") filed a complaint against "Vogue International, a fictitiously named company of Christopher Todd International, Inc."[1] for damages and injunctive relief alleging Federal Trademark Infringement, Federal Trademark Infringement and Unfair Competition, Statutory Unfair Competition and Conspiracy to Unfairly Compete, and Common Law Trademark Infringement, Unfair Competition, and Conspiracy to Unfairly Compete.  [Vogue's Statement of Uncontroverted Facts ("SUF") 8; Hartford's Additional Uncontroverted Facts ("AUF") 1.] On February 7, 2011, Moroccanoil filed a First Amended Complaint alleging the same four causes of action.  [AUF 2.]

On June 2, 2011, Moroccanoil filed a Second Amended Complaint.  [AUF 3.]  The *Moroccanoil* Second Amended Complaint added three additional causes of action for unfair competition based upon Vogue's alleged use of the term "organix" in its labeling, advertisement, promotion, and sale, and the cancellation of Vogue's trademark registration for deceptive and mis-described use of Vogue's "organix" trademark.  [AUF 3.]  Subsequently, on November 8, 2012, Moroccanoil filed a Third Amended Complaint, which was never tendered to the Hartford.  [SUF 9; AUF 4.]  The *Moroccanoil* Third Amended Complaint differs

---

[1]     Moroccanoil changed the name of Defendant to "Vogue International, a fictitiously named company of Todd Christopher International, Inc."  [AUF 1-4.]

from the Second Amended Complaint in that it adds five Plaintiffs.  [AUF 3, 4.]

The gravamen of the *Moroccanoil* Action is infringement of Moroccanoil's various trademarks and trade dress.  Vogue is alleged to have advertised and sold its products using the term "Moroccan Argan Oil" with a trademark of "Moroccan Argan Oil".  [SUF 10 (¶¶ 16, 17).]  Moroccanoil alleges that the "similarity in product names and labeling, trade dress, and demonstration show that Defendants willfully copied Plaintiff's trademarks and trade dress."  [SUF 10 (¶ 18).]  The *Moroccanoil* Action alleges that Vogue's product "has been created and used in such a way to create confusion in the marketplace."  [AUF 8.]

### B.   Tender to Hartford of the *Moroccanoil* Action.

Hartford was tendered the *Moroccanoil* First Amended and Second Amended Complaints on August 19, 2011. [AUF 14.]  Hartford denied coverage to Vogue for the *Moroccanoil* Action by letter dated September 8, 2011 because, among other coverage defenses, the *Moroccanoil* Action did not allege any enumerated "personal and advertising injury" offenses and because of the Intellectual Property Exclusion.  [AUF 16.]  Thereafter, Vogue did not provide any additional information regarding the *Moroccanoil* Action or tender the Third Amended Complaint to Hartford.[2]  [AUF 17-20.]

### C.   The Hartford Policies.

Hartford issued the following commercial general liability policies to "Todd Christopher International DBA Vogue International": (1) 21 UUN UV6168 (effective 9/11/2003 – 9/11/2004); (2) 21 UUN UV6168 (effective

---

[2]   Hartford did not have any duty to further investigate whether amended pleadings were filed.  *Upper Deck Co. v. Federal Ins. Co.*, 358 F.3d 608, 613 (9th Cir. 2004); *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114, 44 Cal. Rptr. 2d 272 (1995); *Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*, 130 Cal.App.4th 99, 110, 29 Cal. Rptr. 3d 609 (2005).  Regardless, it is Hartford's position that there is no duty to defend Vogue for any of the complaints, including the Third Amended Complaint, even if it was tendered.

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

9/11/2004 – 9/11/2005); (3) 21 UUN UV6168 (effective 9/11/2005 – 9/11/2006); (4) 21 UUN UV6168 (effective 9/11/2006 – 9/11/2007); (5) 21 UUN UV6168 (effective 9/11/2007 – 9/11/2008); and (6) 21 UUN UV6168 (effective 9/11/2008 – 3/1/2009) (the "Policies").[3]  [AUF 21-26, 35.]

The Policies provide coverage to Vogue for suits seeking "damages because of" an enumerated "personal and advertising injury" offenses, including the offenses of "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services," and "[c]opying, in your 'advertisement' or 'on your web site', a person's or organization's 'advertising idea' or style of 'advertisement'."  [AUF 27-30.]   The Policies include an Intellectual Property exclusion, which provides that the "insurance does not apply to":

### i.      Infringement Of Intellectual Property Rights

"Personal and Advertising Injury" arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your 'advertisement' or on 'your web site', of

(1)     copyright;

(2)     slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

(3)     title of any literary or artistic work.

---

[3]      Hartford also issued to Vogue various umbrella policies which are not raised in Vogue's Motion for Partial Summary Judgment.  In fact, as Vogue asserts that they "are not the subject of [its] Complaint," they are not at issue. [AUF 39.]

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

[AUF 33.]

## III.   ARGUMENT

### A.   Vogue's Motion for Partial Summary Judgment Must Be Denied, Because Vogue Has Not Met Its Burden of Proof.

Summary judgment is appropriate when "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. Proc. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992).   An insured moving for summary judgment as to an insurer's duty to defend must show "the existence of a potential for coverage," in other words, "that the underlying claim may fall within policy coverage." *Montrose Chemical Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 300, 24 Cal. Rptr. 2d 467 (1993).  Hartford's duty to defend arose only if the *Moroccanoil* Action alleged facts that fell within coverage of the Policies. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 19, 44 Cal. Rptr. 2d 370 (1995).  Vogue has not shown that the allegations in the *Moroccanoil* Action fall within the coverage provided under the Policies.  Therefore, Vogue's Motion for Partial Summary Judgment must be denied as Vogue has not met its burden of proof.

### B.   Standard for the Duty to Defend.

As the party seeking coverage, Vogue has the initial burden of showing that the *Moroccanoil* Action falls within the Policies' scope of coverage, which Vogue cannot show, as discussed below.  *Waller*, 11 Cal. 4th at 16.   "[T]he determination of whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Waller*, 11 Cal. 4th at 19.  "[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Id*.  An insurer may refuse to defend if undisputed facts conclusively show no potential for coverage.  *Id.* at 26-27.  This includes claims, such as the one here, that fall outside the scope of the Policies.  *Buss v. Sup. Ct.*, 16 Cal. 4th 35, 48, 65

Cal. Rptr. 2d 366 (1997); *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276, 54 Cal. Rptr. 104 (1966).  "The insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage."  *Gray*, 65 Cal. 2d at 276.  Moreover, Hartford can also rely on the Policies' exclusions to disclaim coverage.  *Montrose*, 6 Cal.4th 287.

Here, Vogue cannot meet its burden to show that the *Moroccanoil* Action falls within the scope of coverage under the Policies.  Therefore, Hartford had no duty to defend or indemnify Vogue in the *Moroccanoil* Action.

**C.   Vogue Invokes California Law to Determine Coverage.**

"In a diversity case, a federal district court is to apply the law of the forum state for choice of law purposes."  *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir. 2003).  "The burden is on the party seeking to invoke foreign law; California applies its own rule of decision unless a party litigant properly invokes the law of a foreign state." *McGhee v. Arabian Am. Oil Co*., 871 F.2d 1412, 1422 (9th Cir. 1989); *CRS Recovery, Inc. v. Laxton*, 600 F. 3d 1138, 1143 (9th Cir. 2010); *Integral Resources, Inc. v. Hartford Fire Ins. Co.*, No. 2:14-CV-02308-R (AGRx), 2014 U.S. Dist. LEXIS 83793 at *11-*12 (C.D. Cal. June 13, 2014).  However, here, rather than invoking the law of another jurisdiction, Vogue has invoked California law in its Complaint and First Amended Complaint with regard to Hartford's obligations to Vogue under the Policies.  [AUF 38.]

Therefore, pursuant to Vogue's invocation of California law, this court should apply California law to determine whether Hartford had any duty to defend or indemnify the *Moroccanoil* Action.  As California law applies, the cases cited by Vogue from random other jurisdictions are irrelevant because there is clear and authoritative California case law resolving all the issues.

**D.   Vogue Cannot Meet Its Burden To Show a "Personal and Advertising Injury" Enumerated Offense.**

Coverage under the Policies is limited to "personal and advertising injury"

caused by an enumerated offense committed during the policy period, subject to other policy provisions.  [AUF 29-30.]  *Mez Indus. v. Pacific Nat'l Ins. Co.*, 76 Cal. App. 4th 856, 865, 90 Cal. Rptr. 2d 721 (1999).  Vogue seeks coverage for the *Moroccanoil* Action under the offense of "d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" ("Disparagement Offense") and "f. Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement" ("Advertising Idea Offense.")  [AUF 30.]

However, the *Moroccanoil* Action does not allege either the Disparagement Offense or the Advertising Idea Offense.  In addition, even if it did, the Policies' Intellectual Property Exclusion applies to preclude coverage.  Therefore, Hartford had no duty to defend Vogue in the *Moroccanoil* Action.

**E.**     **The California Supreme Court's Decision in _Swift_ Eliminates Any Coverage Under the Policies' Disparagement Offense.**

   **1.     Claims Against Vogue Do Not Meet the Specific Reference And Clear Derogation Requirements Set Forth in _Swift_.**

There was no claim for actual disparagement in the *Moroccanoil* Action. As such, Vogue argues that a "disparagement" claim is *impliedly* alleged in the *Moroccanoil* Action and therefore qualifies under the Disparagement Offense. For example, Vogue asserts that allegations in the *Moroccanoil* Action support "reasonable inferences" that "Vogue's products are preferable to Moroccanoil's hair care products because": the Vogue products contain Moroccan Argan Oil; Vogue's products are organic (implying that Moroccanoil's are not organic); Vogue's products are backed by Moroccanoil's warranties; and Vogue's products are lower priced (implying that Moroccanoil's are over-priced). [Vogue's Motion for Partial Summary Judgment "Mot." at 6:4-9.]  Vogue relies on Paragraphs 16, 17, 19, 20, 26 of the *Moroccanoil* Third Amended Complaint.  [Mot. at 9:8-

10:12.]

None of these allegations support an implied disparagement claim under the Policies' Disparagement Offense as these arguments were recently rejected by the California Supreme Court in *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277 (2014). According to the California Supreme Court in *Swift,* under California law,

> a claim of disparagement requires that a plaintiff show a false or misleading statement that: (1) <u>specifically refers</u> to the plaintiff's product or business <u>and</u> (2) <u>clearly derogates</u> that product or business. <u>Each requirement must be satisfied</u> by express mention or by clear implication.

*Swift*, 59 Cal.4th at 284 (emphasis added); *see Total Call Internat., Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 170, 104 Cal. Rptr. 3d 319 (2010); *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042, 232 Cal. Rptr. 542 (1986).

The California Supreme Court held that the false or misleading statement must specifically refer to the claimant's product or business and must clearly derogate the claimant's product or business. *Swift*, 59 Cal.4th at 284. None of the allegations in the *Moroccanoil* Action can be read to specifically refer to Moroccanoil or its products or to clearly derogate Moroccanoil or its products. Indeed, none of the allegations that Vogue relies on to support Vogue's arguments specifically mention or refer to Moroccanoil.

In *Swift*, Hartford denied coverage to the insured, Ultimate Support Systems ("Ultimate"), in part because the underlying litigation did not directly allege that Ultimate disparaged the plaintiffs' product. The plaintiffs in *Swift* manufactured a convertible transport cart called the Multi-Cart. The plaintiffs alleged that Ultimate "impermissibly manufactured, marketed, and sold the Ulti-Cart, and thereby infringed [plaintiffs'] patents and trademarks and diluted the Multi-Cart trademark." *Swift*, 59 Cal.4th at 285. The plaintiffs also alleged that

the false and misleading advertising and use of the mark was likely to cause consumer confusion or mistake or deceive the public "as to the affiliation, connection, or association" of Ultimate and plaintiffs. *Id.*

In reaching its conclusion, the *Swift* Court analyzed the requirement of a specific statement referring to a product that clearly derogates that product by "express mention" or "clear implication."  The Court held that the "specificity requirements . . . _**significantly limit**_ the type of statements that may constitute disparagement, especially since advertisements and promotional materials often avoid express mention of competitors." *Swift*, 59 Cal.4th at 294 (emphasis added).  In narrowing the interpretation of disparagement by "clear implication," the *Swift* Court recognized that disparagement claims are limited to "those who are the direct object of criticism and denying it to those who merely complain of nonspecific statement that they believe cause them some hurt." *Swift*, 59 Cal.4th at 294.  "Disparagement by 'reasonable implication' [citations omitted] requires more than a statement that may conceivably or plausibly be construed as derogatory to a specific product or business.  *A 'reasonable implication' . . . means a clear or necessary inference*." *Id.* at 295 (emphasis added).

Pursuant to *Swift*, none of Vogue's arguments points to an allegation in the *Moroccanoil* Action that makes a "clear or necessary" inference such that it could be considered an implied disparagement.  Vogue relies on Paragraphs 16, 17, 19, 20, and 26 of the *Moroccanoil* Action to argue that consumers may be confused by these actions.  [SUF 10 (¶¶ 16, 17, 19, 20)]  Contrary to Vogue's arguments, the *Swift* Court found that "[c]onsumer confusion resulting from the similarity of the Ulti-Cart to the Multi-Cart may support a claim of patent or trademark infringement or unfair competition in certain circumstances, *but it does not by itself support a claim of disparagement*." *Id.* at 296 (emphasis added).  In short, "*a party's attempt to copy or infringe on the intellectual property of another's product does not, without more, constitute disparagemen*t." *Id.* (emphasis

9

1   added); *Homedics*, 315 F.3d 1135; *Maxconn, Inc. v. Truck Ins. Exch.*, 74
2   Cal.App.4th 1267, 88 Cal. Rptr. 2d 750 (1999).

3       Importantly, *"[a] false or misleading statement that causes consumer*
4   *confusion, but does not expressly assert or clearly imply the inferiority of the*
5   *underlying plaintiff's product, does not constitute disparagement.* Because the
6   alleged likeness of the two products did not derogate the Multi-Cart, we reject
7   Ultimate's theory of disparagement based on consumer confusion over the
8   product name and design." *Swift*, 59 Cal.4th at 297-98.

9       Vogue is attempting to make the same implied disparagement argument
10  which was flatly rejected by the California Supreme Court in *Swift*.  There are
11  simply no allegations of disparagement in the *Moroccanoil* Action.  Rather than
12  relying on specific allegations in the *Moroccanoil* Action, which do not exist,
13  Vogue is attempting to argue that the allegations in the *Moroccanoil* Action could
14  be read to "imply" that Vogue disparaged Moroccanoil.  For example, Vogue
15  asserts that the *Moroccanoil* Action includes allegations that Vogue copied
16  Moroccanoil's trademarks and trade dress in the same manner as Moroccanoil's
17  packaging, labeling, advertisement, and display of its products amount to
18  disparagement by implication because it creates consumer confusion and creates
19  reputational damage.  [Mot. at 10:13-11:7.]  *Swift* rejects this very argument.
20  *Swift*, 59 Cal. 4th at 296 ("Consumer confusion resulting from the similarity of
21  the Ulti-Cart to the Multi-Cart may support a claim of patent or trademark
22  infringement or unfair competition in certain circumstances, but it does not by
23  itself support a claim of disparagement. … a party's attempt to copy or infringe
24  on the intellectual property of another's product does not, without more,
25  constitute disparagement.")

26      **2.    No Allegation that Vogue Was the "Only" Producer of the**
        **Product.**
27

28      Vogue also relies on *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,

590 F.Supp.2d 1244, 1253 (N.D. Cal. 2008) and *Burgett, Inc. v. American Zurich Ins. Co.*, 830 F.Supp.2d 953, 963-64 to argue that the *Moroccanoil* Action implies that Vogue is claimed to be the "only" producer of the product and this resulted in consumer confusion and obtaining a competitive advantage.  Although *Swift* may have cited to *E.piphany* and *Burgett*, those cases are clearly distinguishable and inapplicable because the insureds in *E.piphany* and *Burgett* each had *__expressly__* stated that it was the "only" producer or holder of a trademark. *E.piphany*, 590 F.Supp.2d at 1253; *Burgett*, 830 F.Supp.2d at 964; *Swift*, 59 Cal.4th at 294 ("… a claim to be the 'only' producer of a certain kind of software or the 'only' owner of a trademark, may be found to clearly or necessarily disparage another party even without express mention.")  In contrast, there are *__no__* such allegations in the *Moroccanoil* Action that Vogue stated that it was the "only" producer of the product.

Indeed, the only mention of such a statement – Vogue as the "only" producer of the product – is in Vogue's arguments in its own motion in the instant action.  While technical labels of claims do not control coverage, facts giving rise to coverage must still actually exist.  *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135, 1154 (C.D. Cal. 2013) ("[C]overage turns not on the technical cause of action pleaded by the third party but on the facts alleged in the underlying complaint or otherwise known to the insurer." (Citations omitted.)) An insured's counsel's "self-serving legal opinion" about potentially covered claims "hardly constitutes a 'fact' known to [the insurer] which, under *Gray*, gives rise to a . . . duty to defend." *Nat'l Union Fire Ins. Co. v. Siliconix Inc.*, 726 F. Supp. 264, 272 (N.D.Cal. 1989).  Under California law, Hartford has no duty to defend just because Vogue can imagine additional facts not alleged in the *Moroccanoil* Action.[4]  *Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*, 120

---

[4]  Vogue goes so far as to rely on depositions that took place eight months *after* Hartford disclaimed coverage.  However, the determination of the duty to

Cal. App. 4th 17, 34-35, 15 Cal. Rptr. 3d 359 (2004) ("An insured is not entitled to a defense just because one can imagine some additional facts which would create the potential for coverage.")

### 3. Allegations of Having an Equivalent or Superior Product, Even if Made, Not Sufficient To Constitute Implied Disparagement.

Vogue also attempts to argue that the *Moroccanoil* Action <u>implies</u> that Vogue's products are equivalent or superior to Moroccanoil's. [Vogue's Motion at 12:7-12.] Again, Vogue's speculation about facts that were not alleged cannot create coverage under the Policies. *Gunderson*, 37 Cal. App. 4th at 1114; *Friedman*, 120 Cal. App. 4th at 34-35. Even if there were direct allegations in the *Moroccanoil* Action that Moroccanoil's products were inferior, which Hartford strongly disputes, the California Supreme Court has held that such allegations still <u>do not</u> qualify as disparagement. *Swift*, 59 Cal.4th at 298-99. Faced with the California Supreme Court's holding, Vogue instead purports to rely on an unpublished Ninth Circuit decision and two out-of-state cases.[5] However, *Swift* is directly on point and is controlling, making the out-of-state cases irrelevant.[6] As

---

defend turns not on the "ultimate adjudication of coverage under its policy of insurance, but upon those ***facts known by the insurer at the inception of a third party lawsuit***." *Montrose*, 6 Cal. 4th at 295 (emphasis added); *Gray*, 65 Cal. 2d at 276. Even after the disclaimer was issued, Vogue did not retender the *Moroccanoil* Action or provide Hartford with the deposition transcripts. "In the absence of a new tender, the insurer is not charged with knowledge of new extrinsic facts; nor is it under an independent obligation to investigate the potential for coverage." *Upper Deck*, 358 F.3d at 613.

[5]    *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Techs., Inc.*, 466 Fed. Appx. 653 (9th Cir. 2012); *Cincinnati Ins. Co. v. Crown Labs, Inc.*, No. 2:08-cv-240, 2012 U.S. Dist. LEXIS 60096, 2012 WL 1565359 (E.D. Tenn. Apr. 30, 2012); *Jar Labs, LLC v. Great Am. E&S Ins. Co.*, 945 F.Supp.2d 937 (N.D. Ill. 2013).

[6]    Vogue appears to believe that if *Swift* did not specifically address a decision, then that decision can be relied on with precedential value. This is

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

to the *Seagate* decision, to the extent it remains valid after *Swift*, it is clearly distinguishable.  In *Seagate*, the underlying complaint alleged that the insured "falsely claim[ed]] that its technology [was] equivalent to [the plaintiff's] technology."  *Seagate*, 466 Fed. Appx. at 655.  Here, by contrast, there are no allegations in the *Moroccanoil* Action that Vogue made any such comparisons to Moroccanoil's product.  As for implied comparisons, the *Swift* Court rejected this same argument and found no disparagement where the insured argued

> that the phrase "patent pending" when combined with words like "innovative," "unique," "superior," and "unparalleled" suggests the superiority of the Ulti-Cart and by implication, the inferiority of the Multi-Cart.

*Swift*, 59 Cal.4th at 299.  The *Swift* Court held that Swift's use of these phrases in its advertisements does not equate to disparagement.  59 Cal.4th at 298-99.  The *Swift* Court found that these phrases appear to be more "akin to 'mere puffing,' which under long-standing law cannot support liability in tort."  *Id.* at 299.

The *Swift* Court also recognized that if it were to adopt the insured's theory of implied disparagement, "almost any advertisement extolling the superior quality of a company or its products would be fodder for litigation. . . and would interfere with the 'free flow of commercial information."  *Swift*, 59 Cal.4th at 299.  Therefore, the California Supreme Court held that "[i]n light of the important purposes of commercial speech, <u>specificity requirements serve to narrow the range of publications</u> in the marketplace that may rise to the level of a legally actionable injurious falsehood."  *Id.* (emphasis added).

### 4.    No Allegation of "Bait and Switch."

Relying on *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of*

wrong.  Should a decision not comport with the holding in *Swift*, it cannot be relied on.

*Am.*, 761 F.Supp.2d 904 (N.D. Cal. 2011), Vogue also argues that the *Moroccanoil* Action triggered covered under the Disparagement Offense because it purportedly alleged that a bait and switch occurred just because Vogue offered a less expensive product than the more expensive Moroccanoil product.  As an initial matter, the California Supreme Court in *Swift* questioned "the merits of *Michael Taylor's* reasoning ..." *Swift*, 59 Cal.App.4th at 297.  But even if *Michael Ta*ylor remains good law after *Swift*, it is clearly distinguishable.  In *Michael Taylor*, the court found potential disparagement where the insured "steered" customers to its allegedly inferior products after luring them in with pictures of the claimant's allegedly superior products.  *Michael Taylor*, 761 F. Supp. 2d at 912; *see also Towers Ins. Co. of New York v. Capurro Enterprises Inc.,* No. No. C 11-03806 SI, 2012 U.S. Dist. LEXIS 46443 at *35-*36 (N.D.Cal. Apr. 2, 2012) (emphasizing the importance of the "steering" of customers to imitation products in finding disparagement.)  Here, by contrast, there was no "bait and switch," nor any allegations in the *Moroccanoil* Action that Vogue used Moroccanoil's product to lure customers in only to then "steer" them to its own cheaper knock-off.  *Swift*, 59 Cal. 4th at 297.  In the absence of facts alleging such a "bait and switch" or "steering" in the *Moroccanoil* Action, Vogue is again improperly speculating about facts that were not alleged.  *Gunderson*, 37 Cal. App. 4th at 1114; *Friedman*, 120 Cal. App. 4th at 34-35.

Further, Vogue's reliance on *Miranda v. Cal. Captial Ins. Co.*, No. A126778, 2011 Cal. App. Unpub. LEXIS 2419, 2011 WL 1168064 (Cal. Ct. App. Mar. 29, 2011) is misplaced and inappropriate.  *Miranda* is an unpublished California Court of Appeal decision, issued before the *Swift* decision.  Not only is *Miranda* not binding authority, *Miranda* is easily distinguishable.  In *Miranda,* "[a]lthough the insureds did not say Christie's cows were substandard, they allegedly <u>did say</u> that certain substandard cows were Christie's and made the statement to damage Christie's livestock business.  The implication of the

insureds' statement was that Christie's cows were substandard." *Miranda*, 2011 Cal. App. Unpub. LEXIS 2419 at *12-*13; emphasis added. Thus, in *Miranda*, the insured ***expressly*** made a specific reference to another's product or business. In contrast, the *Moroccanoil* Action makes no allegation that Vogue made any specific reference to a Moroccanoil product.[7]

Accordingly, as there are no allegations in the *Moroccanoil* Action that Vogue made any false or injurious statement about Moroccanoil or Moroccanoil's products and because the gravamen of the *Moroccanoil* Action arises out of trademark and trade dress infringement, there is no covered "disparagement" claim falling within an enumerated offense under the Policies. Therefore, Hartford did not have a duty to defend Vogue in the *Moroccanoil* Action.

### F.   Vogue Cannot Meet Its Burden of Showing an "Advertisement" to Fall Within The "Advertising Idea" Offense.

Vogue also argues that the *Moroccanoil* Action seeks damages for the "personal and advertising injury" enumerated offense f. of "<u>Copying</u>, in <u>your</u> '<u>advertisement</u>' or on 'your web site', <u>a person's or organization's</u> '<u>advertising idea</u>' or style of 'advertisement'" (emphasis added) ("Advertising Idea Offense.") [AUF 30.] Once again, Vogue is wrong.[8]

---

[7]      Vogue cites to a number of other cases, including irrelevant out-of-state cases, for the proposition that implicit disparagement can be met without any express reference to a competition. Mot. at fn. 27 and 29. For example, Vogue cites to *Western Int'l Syndication Corp. v. Gulf Co.*, 222 Fed. Appx. 589, 592 (9th Cir. 2007) and *Atlantic Mutual Ins. Co. v. J. Lamb Co.*, 100 Cal.App.4th 1017, 1035 (2012) for the proposition that no "explicit" statements were made in those cases. However, Vogue is wrong. In both these cases, the insured ***made*** explicit statements to third parties derogating plaintiff's trademark rights or derogating plaintiff's products.

[8]      As an initial matter, Vogue attempts to argue that it can trigger coverage merely by copying its <u>own</u> "advertising idea" in its <u>own</u> advertisement, as opposed to copying an "advertising idea" of another. This argument makes no sense as it eviscerates the meaning of "copying" and the difference between

15

For the *Moroccanoil* Action to fall within the Advertising Idea Offense, the "advertising idea" or style of "advertisement" must be in "your" – *i.e.*, Vogue's – advertisement.  The Policies define "advertisement" as follows:

1.   "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

    a.   (1)   Radio;

        (2)   Television;

        (3)   Billboard;

        (4)   Magazine;

        (5)   Newspaper; or

        (6)   The Internet;

    b.   Any other publication that is given widespread public distribution.

    ***However, "advertisement" <u>does not</u> include:***

    ***a.   <u>The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products</u>***; or

    b.   An interactive conversation between or among persons through a computer network.

[AUF 31 (emphasis added).]

Pursuant to the Policies' definition of "advertisement", the product's packaging or labeling is ***not*** considered an "advertisement."  [AUF 31.]  The

---

"your" – *i.e.* Vogue's – and "a person's" – i.e. another.  *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 753 (1993) ("The way we define words should not produce redundancy, but instead should give each word significance.")  Moreover, this whole argument is irrelevant because there are no allegations of an "advertisement."  [Mot. at 15:2-16:9.]

Policies' clear and explicit definition of "advertisement" controls here.  *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868, 77 Cal. Rptr. 2d 107 (1998) ("If contractual language is clear and explicit, it governs."); *Legarra v. Federated Mut. Ins. Co.*, 35 Cal. App. 4th 1472, 1479, 42 Cal. Rptr. 2d 101(1995) ("An insurer may select the risks it will insure and those it will not and a clear exclusion will be respected.")

Vogue's argument completely misses the mark and conveniently ignores the Policies' definition of "advertisement".  First, there are no allegations in the *Moroccanoil* Action of an "advertisement" that is separate and apart from Vogue's products and the labeling of its own products.

Second, Vogue relies on three cases (two of which are out of state federal decisions) to support its arguments that there is an "advertisement".[9]  None of the three decisions that Vogue relies on actually address the same definition of "advertisement" as the one in the Policies (which specifically provides that "advertisement" <u>does not include the product's labeling or packaging</u>).  [AUF 31.]  Pursuant to California law, "[i]n questions of insurance coverage the court's initial focus must be upon the language of the policy itself, not upon 'general' rules of coverage that are not necessarily responsive to the policy language." *American Cyanamid Co. v. American Home Assurance Co.*, 30 Cal. App. 4th 969, 978 (1994); *Waller*, 11 Cal.4th at 18.  Thus, the three cases relied upon by Vogue are inapplicable to the present case because the policy language and definition of "advertisement" in those three cases are significantly different from Policies. *Liberty Mut. Ins. Co. v. Superior Court*, 58 Cal.App.4th 617, 621, n.2 (1997) ("the duties imposed by an insurance policy are a matter of contract, not common

---

[9]     *Bear Wolf, Inc. v. Hartford Ins. Co. of Southwest*, 819 So.2d 818 (2002); *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242 (2d Cir. 2002); *Street Surfing, LLC v. Great Am. E&S Ins. Co.*, No. 12-55351, 2014 U.S. App. LEXIS 10737 (9th Cir. June 10, 2014).

law. . . the same analysis might not apply if a differently worded policy were presented.")

Pursuant to the narrow definition of "advertisement" in the Policies, an "advertisement" does not include the "design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products." [AUF 31.] Again, Vogue cannot point to a single allegation in the *Moroccanoil* Action in which Vogue's advertisement is separate and apart from its product's packaging or labeling. Accordingly, the *Moroccanoil* Action does not include any allegations that fall within the Advertising Idea Offense. Therefore, as there are no other claims presented in the *Moroccanoil* Action, there can be no coverage under the Advertising Idea Offense of the Policies.

## G. Trademark Cancellation of the Insured's Own Trademark Does Not Fall Within The "Advertising Idea" Offense.

Vogue also argues that the trademark cancellation claims in the *Moroccanoil* Action fall within the Advertising Idea Offense of the Policies. Again, Vogue is wrong.

As an initial matter, the Policies' insuring agreement limits coverage only to "those sums that the insured becomes legally obligated to pay as ***damages*** because of 'personal and advertising injury' to which this insurance applies." [AUF 29.] Regardless of whether trademark cancellation is an enumerated "personal and advertising injury offense" – which it is not – it is clear that the claims for trademark cancellation in the *Moroccanoil* Action do not seek any "damages" against the insured; rather, they only seek cancellation of a trademark. Because a trademark cancellation claim does not seek "damages," such a claim simply does not fall within the Insuring Agreement of the Policies. [AUF 29.] Rather, a claim for trademark cancellation is, at best, a claim for injunctive or declaratory relief that, as a matter of law, is not a claim for "damages." *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 961-962

(2001) ("legally obligated to pay as damages" is limited to "money ordered by a court."); *Nationwide Ins. Co. v. King*, 673 F. Supp. 384, 387 (S.D. Cal. 1987) (equitable relief not "damages").  Indeed, recently in *San Miguel Comm. Assn. v. State Farm General Ins. Co.*, 220 Cal.App.4th 798 (2013), the California Court of Appeal pointed out that "[t]he third party's failure to seek compensatory damages against the insured means the dispute is not a claim for damages under the policy."   As such, Vogue fails to meet its initial burden of showing that the *Moroccanoil* Action falls within the Policies' scope of coverage, such that a duty to defend exists. *Waller*, 11 Cal. 4th at 16.

In any event, a claim for trademark cancellation does not fall within the Advertising Idea Offense because, as discussed above, there are no allegations of the copying of a trademark in Vogue's "advertisement" which as defined must be separate and apart from Vogue's packaging and labeling.[10]  Accordingly, Vogue cannot meet its burden of showing the *Moroccanoil* Action falls within the Policies' scope of coverage.  Thus, Hartford had no duty to defend Vogue in the *Moroccanoil* Action.

/ / /

/ / /

---

[10]   Vogue's reliance on *Hester v. Navigators Ins. Co.*, 917 F.Supp.2d 290 (S.D.N.Y. 2013) is severely misplaced for numerous reasons.  Importantly, in Vogue's Motion at page 23, lines 11-12, Vogue claims that *Hester* applied **California** law.  Vogue is wrong.  *Hester* only applied **New York** law.  Thus, *Hester* has no bearing on the instant litigation.  Moreover, the court in Hester did not consider, let alone decide, whether trademark cancellation could or should be covered under a CGL policy.  *Rosen v. State Farm Fire Gen. Ins. Co.*, 30 Cal.4th 1070, 1076 (2003) ("'It is a well-established rule that an opinion is only authority for those issues actually considered or decided.'")  Accordingly, *Hester* is an out of state decision that is not on point and has no persuasive authority over the instant litigation.

## H. The Intellectual Property Exclusion Bars Coverage for the *Moroccanoil* Action.[11]

### 1. The Gravamen of the *Moroccanoil* Action Is for Excluded Trademark And Trade Dress Infringement.

Even if any of the allegations in the *Moroccanoil* Action could fall within an enumerated "personal or advertising injury" offense under the Policies, which they cannot, the Policies contain an Intellectual Property Exclusion that excludes coverage for "personal and advertising injury" "[a]rising out [sic] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." [AUF 33.] California courts routinely uphold similarly worded intellectual property exclusions. *Indus. Indem. Co. v. Apple Computer, Inc.*, 79 Cal. App. 4th 817, 95 Cal. Rptr. 2d 528 (1999); *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 90 Cal. Rptr. 2d 647 (1999); *Aloha Pac., Inc. v. Cal. Ins. Guar. Ass'n.*, 79 Cal. App. 4th 297, 93 Cal. Rptr. 2d 148 (2000); *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of America*, 10 Fed. Appx. 438 (9th Cir. Mar. 22, 2001) (unpublished) (citing *Aloha* with approval).

Here, Moroccanoil's entire claim against Vogue is based upon the allegation that Vogue's use of the phrase "Moroccan Argan Oil" on Vogue's products, advertisements, and marketing infringes on the Moroccanoil's marks. [SUF 10 (¶¶ 15-20, 25, 33); AUF 7, 9, 11.] The gravamen of the allegations in the *Moroccanoil* Action is trademark and trade dress infringement, which is excluded under the Policies. [SUF 10 (¶¶ 15-20, 22, 23); AUF 5-11.] Indeed, throughout each of the pleadings in the *Moroccanoil* Action, Moroccanoil asserts "Allegations Common To All Causes of Action" and includes an allegation that Vogue "attempt to unfairly capitalize on Moroccanoil's Trademarks…." [AUF

---

[11] Hartford reserves its rights to rely upon the additional exclusions discussed in Vogue's Motion. [Mot. at 20:9 – 21:18; 24:2-11.]

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

13.]   The factual allegations within the initial causes of action for trademark infringement are incorporated into each of the subsequent causes of action in the *Moroccanoil* Action.   [AUF 13.]   Each cause of action begins with a paragraph incorporating "by reference each and every allegation" previously alleged.   [AUF 13.]   Because the gravamen of the *Moroccanoil* Action is a claim for trademark and trade dress infringement, the Intellectual Property Exclusion squarely applies to preclude coverage for the entire *Moroccanoil* Action.   *Integral Resources*, 2014 U.S. Dist. LEXIS 83793.

### 2.   The "Arising Out Of" Phrase in the Intellectual Property Exclusion Broadly Applies to Any Intellectual Property Right, Including Trademark Cancellation.

The Intellectual Property Exclusion excludes coverage for "personal and advertising injury" "[a]rising out [sic] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity."  [AUF 33.]

"California courts interpret the term 'arising out of' broadly in various kinds of insurance provisions," and "[t]his is true even when the term is used in an exclusionary provision and a broad interpretation results in limiting coverage." *Nestle,* 10 Fed. Appx. at 439-40 (citing *Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1080 (9th Cir. 1985)); *Trenches, Inc. v. Hanover Ins. Co.*, No. 12-56642, 2014 U.S. App. LEXIS 9644 (9th Cir. May 23, 2014) ("In California, the phrase 'arising out of' is construed broadly, even if in an exclusion, to mean 'originating from,' 'flowing from,' 'incident to,' or 'having a connection with.'"); *Zurich Specialties London, Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 425 Fed. Appx. 554 (9th Cir. Mar. 28, 2011); *Am. Guar. & Liab. Ins. Co. v. Lexington Ins. Co.*, 517 Fed. Appx. 599 (9th Cir. May 6, 2013); *Integral Resources*, 2014 U.S. Dist. LEXIS 83793 at *11-*12; *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557 (1999) ("California

1   courts have consistently given a broad interpretation to the terms 'arising out of'
2   or 'arising from' in various kinds of insurance provisions.").

3          Additionally, the broad interpretation of "arising out of" loosely links a
4   factual situation with the event creating liability, and connotes only a minimal
5   causal connection. *City of Richmond*, 763 F.2d at 1080; *Southgate Recreation &*
6   *Park Dist. v. Cal. Ass'n for Parks & Recreation Ins.*, 106 Cal. App. 4th 293, 301,
7   130 Cal. Rptr. 2d 728 (2003). The phrase "arising out of" "requires [the court] to
8   examine the conduct underlying the . . . lawsuit, instead of the legal theories
9   attached to the conduct." *Century Transit Systems, Inc. v. Am. Empire Surplus*,
10  42 Cal. App. 4th 121, 127 n.4, 49 Cal. Rptr. 2d 567 (1996) (internal quotation
11  marks omitted).

12         In *Aloha*, the court addressed the phrase "arising out of" in the context of
13  the trademark exclusion. The court recognized that an exclusion from a suit
14  arising out of trademark infringement

15             does not import any particular standard of causation or theory of
16             liability into an insurance policy. Rather, it broadly links a factual
17             situation with the event creating liability, and connotes only a
18             minimal causal connection or incidental relationship.

19  *Id*. at 318-319.

20         At issue in *Aloha* was whether the trademark infringement exclusion,
21  which excluded coverage for trademark, service mark or trade name infringement,
22  could be broadly applied to a trade dress infringement claim when trade dress was
23  not specifically identified within the exclusion. Relying upon the fact that a trade
24  dress infringement claim is a species of a trademark infringement claim, the
25  *Aloha* Court broadly construed and applied the "arising out of" language in the
26  trademark infringement exclusion to preclude coverage for the trade dress
27  infringement claim. *Id*. at 322.

28

Thus, where an exclusion contains the broadly interpreted and applied "arising out of" language, the exclusion in the policy may be applied to different causes of action that are not specifically listed within the exclusion. *See also Nestle*, 10 Fed. Appx. at 439-440 (breach of contract exclusion applied to Lanham Act claims.); *Integral Resources*, 2014 U.S. Dist. LEXIS 83793 (statutory exclusion applied to common law causes of action.)

Here, Moroccanoil seeks damages "arising out of" trademark infringement and trade dress infringement.  In fact, the entire *Moroccanoil* Action – including the unfair competition claim and the cancellation of Vogue's trademark – is a dispute over the similarity in the names "Moroccan Argan Oil" and "Moroccanoil," and Vogue's alleged appropriation of all the consumer goodwill associated with Moroccanoil's trademark and trade dress.

Vogue argues that the trademark cancellation claim does not necessarily follow from a trademark infringement claim.  [Mot. at 23:1-4.]  This argument is irrelevant in determining whether the Policies' Intellectual Property Exclusion applies.   In particular, the Policies' Intellectual Property Exclusion broadly applies the "arising out of" phrase to "***any violation of any intellectual property rights*** such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity".   [AUF 33 (emphasis added).] Vogue's Motion conveniently omits mention of the pertinent portion of the Intellectual Property Exclusion and incorrectly cites to the exception to the exclusion.   [Mot. at 21-19-22:8.]   Pursuant to the clear and unambiguous language in the Intellectual Property Exclusion, the exclusion applies to preclude coverage for "any violation of any intellectual property right" and is not limited to infringement claims.  Thus, Vogue's focus on the difference between trademark cancellation and trademark infringement claims, including reliance on out-of-state

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

unpersuasive authority,[12] is without merit.

Accordingly, even if the *Moroccanoil* Action included allegations that fell within the Disparagement Offense or the Advertising Idea Offense, which it did not, the Intellectual Property Exclusion would apply to preclude coverage for the *Moroccanoil* Action because the gravamen of Moroccanoil's claims arise out of a violation of intellectual property rights.   Moreover, pursuant to *Aloha*, the Intellectual Property Exclusion is broadly applied to the other causes of action alleged, such as unfair competition or false advertising, because those causes of action are premised on an intellectual property right.   Thus, the Intellectual Property Exclusion precludes coverage for the *Moroccanoil* Action.  Hartford had no duty to defend the *Moroccanoil* Action.

## I.   The Nonconformity Exclusion Bars Coverage for the *Moroccanoil* Action.

The Policies also preclude coverage for "personal and advertising injury" "arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement'."  [SUF 6; AUF 34.]  The Nonconformity Exclusion has been upheld and applied by California courts to preclude coverage for "third party claims predicated on allegations that the insured's advertising misrepresented the quality or price of the insured's <u>own</u> product."  *Total Call*, 181 Cal. App. 4th at 171-72 (The Nonconformity Exclusion

---

[12]      Vogue also relies on *Aurafin-OroAmerica, LLC v. Fed. Ins. Co.*, 188 Fed. Appx. 565, 567 (9th Cir. 2006), where the court held that Federal's intellectual property exclusion did not preclude coverage for patent misuse.  However, even if the analysis of coverage for trademark cancellation was the same as one for patent misuse, *Aurafin* does not quote the exclusion at issue in that case.  As such, there is no basis to determine whether the *Aurafin* court's analysis has any application here.  *Helfand v. National Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 886 n.9 (1992) ("A case which does not even discuss or quote the operative provisions is not precedent for subsequent judicial interpretation of language in another insurance policy.")

"precludes coverage for third party claims predicated on allegations that the insured's advertising misrepresented the quality or price of the insured's own products.")  Here, and as Vogue points out throughout its moving papers, the *Moroccanoil* Action alleges that Vogue misrepresents the quality of Vogue's own products with the label "Organix" when Vogue's product does not contain "at least 70% organic content".  [SUF 10 (¶ 17, 26).]  The *Moroccanoil* Action squarely falls within the Nonconformity Exclusion because Moroccanoil alleges that Vogue's products do not conform to its claims.  As such, the Nonconformity Exclusion also applies to preclude coverage.

## J.   As There Is No Duty to Defend, Hartford Had No Duty to Indemnify.

Where there is no duty to defend, there can be no duty to indemnify as a matter of law.  *Certain Underwriters*, 24 Cal. 4th at 958 ("Where there is a duty to defend, there may be a duty to indemnify; but where there is no duty to defend, there cannot be a duty to indemnify.").  Hartford has established that it had no duty to defend Vogue in the *Moroccanoil* Action, because there is no potential for coverage under the Policies.  Since there is no potential for coverage, there is no duty to indemnify Vogue for any defense fees, costs and settlement reached in the *Moroccanoil* Action.

## IV.   CONCLUSION.

For the reasons set forth above, Hartford requests that the Court deny Vogue's Motion for Partial Summary Judgment in its entirety.

Dated:  July 21, 2014                          TRESSLER LLP

                                    By: /s/ - David Simantob
                                         David Simantob
                                         Linda T. Hoshide
                                         Jeanne Kuo Riggins
                                         Attorneys for Defendant
                                         HARTFORD CASUALTY INSURANCE
                                         COMPANY                    LA 135635 (240-469)

**PROOF OF SERVICE**

*Vogue International, LLC d/b/a Vogue Int'l v. Hartford Casualty Ins. Co.*
USDC - Case No. 2:14-cv-03570-PA-MRW
TSMP No.:  240-469

I am over the age of eighteen years and not a party to the within action.  I am employed by TRESSLER LLP, whose business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067.  On July 21, 2014, I served the within document(s) described as:  **DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** to be served on the interested parties in this action:

⊠     **BY ELECTRONIC SERVICE** - I served a true and correct copy, with all exhibits, electronically on counsel of record by transmission through CM/ECF.  This service complies with General Order No. 08-02 of the U.S. District Court for the Central District of California.

*Attorneys for Plaintiff*

David A. Gauntlett, Esq.
James A. Lowe, Esq.
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:  (949) 553-1010
Facsimile:   (949) 553-2050
Email:  dag@gauntlettlaw.com; jal@gauntlettlaw.com

⊠     (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of July, 2014 at Los Angeles, California.

<u>/s/ Lucille R. Aguiluz</u>
Lucille R. Aguiluz