1 | **GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2 | James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
3 | Irvine, California 92612
Telephone: (949) 553-1010
4 | Facsimile: (949) 553-2050
info@gauntlettlaw.com
5 | jal@gauntlettlaw.com

6 | Attorneys for Plaintiff
VOGUE INTERNATIONAL, LLC

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **WESTERN DIVISION**

11 |

12 | VOGUE INTERNATIONAL, LLC d/b/a ) Case No.: 2:14-cv-03570-PA (MRWx)
VOGUE INTERNATIONAL, a )
13 | Delaware limited liability company, )
) Hon. Percy Anderson
14 | )
Plaintiff, ) **REPLY TO DEFENDANT,**
15 | ) **HARTFORD CASUALTY**
vs. ) **INSURANCE COMPANY'S**
16 | ) **OPPOSITION TO PLAINTIFF'S**
HARTFORD CASUALTY ) **MOTION FOR PARTIAL**
17 | INSURANCE COMPANY, ) **SUMMARY JUDGMENT**
an Indiana corporation, )
18 | )
Defendant. ) Date: August 11, 2014
19 | ) Time: 1:30 p.m.
) Courtroom: 15
20 | )
)
21 | _____ )

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...................................................................1

II.  "IMPLICIT DISPARAGEMENT" UNDER OFFENSE (d) IS MET...........1

III. ADVERTISEMENT UNDER OFFENSE (f) IN POLICY AND
     CYBERFLEX ENDORSEMENT IS SATISFIED ........................................3

    A.   The "Advertisement" Definition in Hartford's Policy is Met..............3

    B.   Vogue's Web Site Advertising Satisfies The Definitions Of
          Both "In Your 'Advertisement'" And "On 'Your Web Site'"
          In Offense (f) .......................................................................................5

IV.  HARTFORD'S IP EXCLUSION CANNOT BAR COVERAGE FOR
     THE MOROCCAN OIL ACTION ..............................................................6

    A.   The *Moroccanoil* Action Includes Claims Not Implicated by
          the IP Exclusion ....................................................................................6

    B.   The Unfair Competition Claims Do Not Arise Out of the
          Trademark Infringement Claims ...........................................................7

    C.   The "Arising Out Of" Phrase in the Intellectual Property
          Exclusion Must Be Narrowly Construed ................................................7

    D.   Neither the "Trademark Cancellation" Nor "Trademark
          Dilution" Claims Fall Within the Scope of Hartford's IP
          Exclusion .............................................................................................10

V.   THE "FAILURE TO CONFORM" DOES NOT CURTAIL
     CLAIMS FOR "DISPARAGEMENT" OR UNFAIR
     COMPETITION PREMISED ON PRODUCT
     CHARACTERISTICS RATHER THAN "QUALITY" OR
     "PERFORMANCE"...................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Aurafin-OroAmerica, LLC v. Federal Ins. Co.,*
    188 Fed. Appx. 565 (9th Cir. (Cal.) 2006) ................................................................ 10

*Burgett, Inc. v. Am. Zurich Ins. Co.,*
    830 F. Supp. 2d 953 (E.D. Cal. 2011) ........................................................................ 2

*Cont'l Cas. Co. v. City of Richmond,*
    763 F.2d 1076 (9th Cir. (Cal.) 1985) ......................................................................... 8

*CytoSport, Inc. v. Vital Pharms, Inc.,*
    894 F. Supp. 2d 1285 (E.D. Cal. 2012) ..................................................................... 11

*Edwards Theatres, Inc. v. United National Ins. Co.,*
    126 Fed. Appx. 831 (9th Cir. (Cal.) 2005) ............................................................... 12

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.,*
    590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008) ....................................... 1, 2

*Hester v. Navigators Ins. Co.,*
    917 F. Supp. 2d 290 (S.D.N.Y. 2013) ...................................................................... 11

*HS Services, Inc. v. Nationwide Mut. Ins. Co.,*
    109 F.3d 642 (9th Cir. (Cal.) 1997) ........................................................................... 8

*Inc. v. St. Paul Fire & Marine Ins. Co.,*
    590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008) ....................................... 1, 2

*JAR Laboratories, LLC v. Great Am. E&S Ins Co.,*
    945 F. Supp. 2d 937 (N.D. Ill. 2013) ...................................................................... 2, 10

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,*
    767 F. Supp. 1220 (S.D.N.Y. 1991) ........................................................................... 4

*Merry Hull & Co. v. Hi-Line Co.,*
    243 F. Supp. 45 (S.D.N.Y. 1965) ............................................................................. 11

*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.,*
    495 Fed. Appx 830 (9th Cir. 2012) ............................................................................ 2

*Nat'l Union Fire Ins. Co. v. Seagate Tech, Inc.,*
    466 F. Appx 653 (9th Cir. (Cal.) 2012) .................................................................. 2, 6

*Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of America,*
    10 Fed. Appx. 438 (9th Cir. Mar. 22, 2001) ............................................................. 8

ii

*Orient Express Trading Co. v. Federated Dep't Stores, Inc.,*
   842 F.2d 650 (2d Cir. (N.Y.) 1988) ........................................................... 11

*Pension Trust Fund v. Federal Ins. Co.,*
   307 F.3d 944 (9th Cir. (Cal.) 2002) ........................................................... 6

*Safety Dynamics, Inc. v. Gen. Star Indem. Co.,*
   475 Fed. Appx. 213 (9th Cir. (Az.) 2012) ................................................. 12

*Upper Deck Co. v. Federal Ins. Co.,*
   358 F.3d 608 (9th Cir. 2004) ...................................................................... 5


**STATE CASES**

*Aloha Pacific, Inc. v. California Ins. Guar. Ass'n,*
   79 Cal. App. 4th 297 (2000) ................................................................... 8, 9

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.,*
   100 Cal. App. 4th 1017 (2002) ............................................................... 7, 8

*Certain Underwriters at Lloyd's, London v. Superior Court (Powerine Oil Co.),*
   24 Cal. 4th 945 (2001) .............................................................................. 11

*Charles E. Thomas Co. v. Transamerica Ins. Grp.,*
   62 Cal. App. 4th 379 (1998) ...................................................................... 8

*Eigner v. Worthington,*
   57 Cal. App. 4th 188 (1997) .................................................................... 4, 5

*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.,*
   92 Cal. App. 4th 205 (2001) ...................................................................... 4

*Gunderson v. Fire Ins. Exch.,*
   37 Cal. App. 4th 1106 (1995) .................................................................... 5

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.,*
   59 Cal. 4th 277 (2014) ..................................................................... 1, 2, 3, 4

*Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group,*
   50 Cal. App. 4th 548 (1996) ...................................................................... 9

*Mirpad, LLC v. California Insurance Guarantee Ass'n,*
   132 Cal. App. 4th 1058 (2005) .................................................................. 3

*North Counties Eng'g, Inc. v. State Farm Gen. Ins. Co.,*
   224 Cal. App. 4th 902 (2014) .................................................................... 8

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (2005) ...................................................................... 4

*State Farm Mut. Auto Ins. Co. v. Partridge*,
10 Cal. 3d 94 (1973) ........................................................................ 6

*Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*,
130 Cal. App. 4th 99 (2005) ............................................................ 5

*Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc.*,
207 Cal. App. 4th 969 144 Cal. Rptr. 3d 12 (2012), *reh'g denied* (July 31,
2012) *rev'w denied* (Sept. 21, 2012) ............................................... 1


**DOCKETED CASES**

*Burlington Ins. Co. v. CHWC, Inc.*,
No. 12-55285, 2014 U.S. App. LEXIS 3941 (9th Cir. (Cal.) Mar. 3, 2014) ............. 4

*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*,
No. 96-CIV-5993 (JSM), 1997 U.S. Dist. LEXIS 8894 (S.D.N.Y. Jun. 25,
1997) ............................................................................................. 11

*Integral Resources, Inc. v. Hartford Fire Ins. Co.*
No. 2:14-CV-02308-R (AGRx), 2014 U.S. Dist. LEXIS 83793 (C.D. Cal.
Jun. 13, 2014) ................................................................................. 7

*Jewelers Mut. Ins. v. Milne Jewelry Co.*,
No. 2:06-CV-243 TS, 2006 U.S. Dist. LEXIS 90551 (D. Utah Dec. 14,
2006) ............................................................................................. 12

*Millennium Labs., Inc. v. Darwin Select Ins. Co.*,
No. 12-cv-2742 BAS (KSC), 2014 U.S. Dist. LEXIS 89746 (S.D. Cal. July 1, 2014) ... 4

*Nvidia Corp. v. Federal Ins. Co.*,
No. 04 C 7178, 2005 U.S. Dist. LEXIS 19599 (N.D. Ill. Sept. 6, 2005) ............... 10

*Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc.*, No. CV 10-2696
SVW (MANx), 2010 U.S. Dist. LEXIS 144401 (C.D. Cal. Dec. 28, 2010) ........... 12

*Tower Insurance Company of New York v. Capurro Enterprises, Inc.*,
No. C 11-03806 SI, 2012 U.S. Dist. LEXIS 46443 (N.D. Cal. Apr. 2, 2012) ...... 7, 8

*Tria Beauty, Inc. v. National Fire Ins. Co. of Hartford*,
No. C12-05465 WHA, 2013 U.S. Dist. LEXIS 71499 (N.D. Cal. May 20,
2013) ............................................................................................. 12

**FEDERAL RULES AND STATUTES**

15 U.S.C. § 1052(a) ................................................................ 11

15 U.S.C. § 1120 ..................................................................... 11

FEDERAL, STATE & INTERNATIONAL LAW § 109 ......................... 10

Lanham Act §38 ...................................................................... 11

**OTHER AUTHORITIES**

David A. Gauntlett, IP ATTORNEY'S HANDBOOK FOR INSURANCE COVERAGE IN
   INTELLECTUAL PROPERTY DISPUTES, 2ND EDITION, American Bar
   Association, § 3.13[B][1] 3-133 ............................................. 2

David A. Gauntlett, INSURANCE COVERAGE OF INTELLECTUAL PROPERTY
   ASSETS, p. 362, Second Edition (May 16, 2014), Aspen Publishers ....... 2

David S. Welkowitz, TRADEMARK DILUTION:  FEDERAL, STATE &
   INTERNATIONAL LAW § 109 (2005) .......................................... 10

RANDOM HOUSE UNABRIDGED DICTIONARY 76-77 (2d ed. 1993) ................ 3

RANDOM HOUSE UNABRIDGED DICTIONARY 2157 (2d ed. 1993) ................ 3

Unfair Competition, § 16 ........................................................... 9

# I.    PRELIMINARY STATEMENT

Hartford Casualty Insurance Company's ("Hartford") arguments are an exercise in obfuscation. It contends an element is missing for each applicable offense—facts supporting "implicit disparagement" in offense (d); and an "advertisement" for offense (f), which covers "copying in your 'advertisement' . . . a[n] organization's 'advertising idea' or style of 'advertisement.'" But offense (d) is implicated because "organic" ingredients are an "important differentiator," which *Swift*[1] identified as a key factor, citing favorably *E.piphany's*[2] explanation of why "implicit disparagement" was implicated. Similarly, offense (f) is satisfied as Vogue's website promotion of "organic" products is an "advertisement" under Hartford's Cyberflex Amendment and "advertising" by Vogue is evident under its primary policy's "advertisement" definitions through product packaging and labels.

Hartford's "intellectual property" exclusion cannot bar a defense for non-IP claims triggering a defense under offenses (d) and (f) for unfair competition and trademark cancellation/trademark dilution, which seek damage remedies. Nor does the "failure to conform" exclusion bar coverage as the "quality" or "performance" of the products sold is irrelevant to liability for the asserted claims of false advertising or disparagement.

# II.    "IMPLICIT DISPARAGEMENT" UNDER OFFENSE (d) IS MET

Hartford's citation to *Swift's* analysis elipses out the "**in this context**" language from its definition of a "reasonable implication," an integral part of its focus in distinguishing *Charlotte Russe*,[3] where the only statement evidencing implicit disparagement was "a mere reduction in price."[4] Hartford's approach ignores *Swift's*

---

[1] *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 284 (2014).

[2] *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1254 (N.D. Cal. (San Jose Div.) 2008).

[3] *Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc.*, 207 Cal. App. 4th 969, 973 144 Cal. Rptr. 3d 12 (2012), *reh'g denied* (July 31, 2012) *rev'w denied* (Sept. 21, 2012).

[4] *Swift*, 59 Cal. 4th at 295.

imprecation in reaffirming *Scottsdale*.[5]

Hartford gives short shrift to the three decisions *Swift* acknowledged were distinguishable—*Burgett*,[6] *E.piphany*,[7] and *Michael Taylor*,[8] where **Vogue's counsel successfully represented the insureds**,[9] which look to inferences which Hartford myopically fails to analyze.  Thus, Hartford can see no allegation of "equivalence" in Moroccanoil's allegations that potential consumers believe that "the Accused Products are an alternative to Moroccanoil products" **[Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶10 (Morrocanoil's Third Amended Complaint ("MTAC") ¶20)]** and "cause confusion or mistake . . . as to the affiliation, connection, or association of the accused product with Moroccanoil." **[SUF ¶10 (MTAC ¶38)]**[10]

Nor is "puffery" a concern, as in *Swift*.  Moroccanoil asserts damages due to Vogue's statements about the accused products that confuse the public by leading them to presume an association with what Moroccanoil contends is an inferior, as well as deceptively advertised product.  **[SUF ¶10 (MTAC ¶22)]** These claims are like

---

[5]*Swift*, 59 Cal. 4th at 287 (" '[T]he duty to defend [arises] where, under the facts alleged, **reasonably inferable**, or otherwise known, the complaint **could fairly be amended** to state a covered liability.' ") citing *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (emphasis added)).

[6]*Burgett, Inc. v. Am. Zurich Ins. Co.*, 830 F. Supp. 2d 953 (E.D. Cal. 2011).

[7]*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008).

[8]*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 495 Fed. Appx 830 (9th Cir. 2012).

[9]*See*, David A. Gauntlett, INSURANCE COVERAGE OF INTELLECTUAL PROPERTY ASSETS, SECOND EDITION (May 16, 2014), Aspen Publishers, p. 362.  *See also*, David A. Gauntlett, IP ATTORNEY'S HANDBOOK FOR INSURANCE COVERAGE IN INTELLECTUAL PROPERTY DISPUTES, 2ND EDITION, American Bar Association, §3.13[B][1] 3-133; §17.02[A], 17-55 n.48 (2013) with 2014 Supplement.

[10]*But see Nat'l Union Fire Ins. Co. v. Seagate Tech, Inc.*, 466 F. Appx 653, 655 (9th Cir. (Cal.) 2012) ("A statement of product "equivalence" was enough to infer implicit disparagement, even though there was no statement that Convolve's technology was no better than Seagate's."); *JAR Laboratories, LLC v. Great Am. E&S Ins Co.*, 945 F. Supp. 2d 937, 945 (N.D. Ill. 2013) ("[A] statement equating a competitor's product with an allegedly inferior one is logically indistinguishable from, and no less disparaging than, a statement describing one's own product as superior to the competitor's.").

those in *Michael Taylor*, giving rise to an analogous "bait and switch campaign" unlike the facts in *Swift*.[11]

## III. ADVERTISEMENT UNDER OFFENSE (f) IN POLICY AND CYBERFLEX ENDORSEMENT IS SATISFIED

### A. The "Advertisement" Definition in Hartford's Policy is Met

Hartford boldly misstates—that the only alleged advertising conduct is product labeling. Retail advertisements for the Organix line falling within the policy's definition of an "advertisement" commenced in 2008. **[Rohr Declaration in Support of Reply ("Rohr Decl.") ¶2]** Hartford ignores express allegations of "advertising" separate and apart from packaging and labeling. These include express advertisements for Defendants' "use of the terms "organic" and "organix" in connection with the labeling, advertisement, promotion **and**[12] sale of the Accused Products **as well as**[13] the **false representations** that the Accused Products are organic, which constitutes **false advertising."** To adopt Hartford's narrow views would render the asserted claims in the complaint **superfluous**.[14] Moreover, contrary to Hartford's arguments, these claims in the Fifth Cause of Action for Unfair Competition/trademark cancellation/dilution of trademark seek "monetary" relief. **[SUF ¶10 (MTAC ¶55)]**[15]

These advertisements were readily available to Hartford at the time of tender on

---

[11] *Swift*, 59 Cal. 4th at 297.

[12] **[SUF ¶10 (MTAC ¶55)]** (emphasis added); "And" connotes distinct advertisements and promotions separate from labeling. RANDOM HOUSE UNABRIDGED DICTIONARY 76-77 (2d ed. 1993) ("And" is defined as "**1.** (used to connect grammatically coordinate words, phrases, or clauses) along or together with; as well as; in addition to; besides; also; moreover; *pens and pencils.*").

[13] RANDOM HOUSE UNABRIDGED DICTIONARY 2157 (2d ed. 1993) ("As well as" is defined as "**well**' … **12. as well as,** "as much or as truly as; equally as: *Joan is witty as well as intelligent.*").

[14] *Mirpad, LLC v. California Insurance Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1073 (2005) ("An interpretation of the policy that creates an ambiguity where none existed by rendering words redundant or **superfluous** violates all rules of construction.") (emphasis added).

[15] See § IV.D herein.

3

August 19, 2011.  The extrinsic evidence showing potential coverage was referenced in the complaint and available to Hartford when it declined to defend or investigate.[16] **[Statement of Genuine Disputes ("SGD") ¶51 [Dkt. 28:18-19]]**  They should have been evaluated,[17] as *Swift* recognized[18] as part of a reasonable investigation.[19]  As a post-*Swift* case, *Millennium*, remarked in finding the insurer's review of claims for implicit disparagement inadequate: " 'Hear no evil, see no evil, speak no evil' is no defense for shirking a cognizable duty."[20]

At a minimum, one could reasonably infer that Vogue advertised its products using "Organix" and "organic."[21]  These advertisements reveal an obvious potential for amendment to plead advertisements **separate from** product packaging and labels that clarify why the facts alleged evidenced an inchoate capacity for amendment to fall within covered claims.[22]  Hartford's purportedly contrary cases only foreclose a

---

[16]*Eigner v. Worthington*, 57 Cal. App. 4th 188, 198 (1997).

[17]*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal. App. 4th 205, 218 (2001) (Insurer should have looked towards extrinsic evidence for any potential for coverage because it is "obligated to defend until it established *beyond dispute* that the infringing [product] had not been advertised at the time of tender.") (emphasis added).

[18]*See* Vogue's replies to arguments first raised in Hartford's Opposition.  *Swift*, 59 Cal. 4th at 298 (Catalog contents were reasonably known and should have been considered in determining if underlying complaint set forth possible disparagement claim.).

[19]*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991) ("Reply affidavit responds to matters placed in issue … in … opposition brief and does not spring upon Litton new reasons for the entry of summary judgment.").

[20]*Millennium Labs., Inc. v. Darwin Select Ins. Co.*, 2014 U.S. Dist. LEXIS 89746, at *6-7 (S.D. Cal. July 1, 2014), citing *Swift*, 59 Cal. 4th 277 ("All the underlying facts were available and may have been uncovered during a reasonable investigation. It is illogical to permit an insurer to hide its head in the sand and deny its duties because of its own failure to investigate.").

[21]*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005) ("If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, *suggest a claim potentially covered by the policy*, the insurer's duty to defend arises and is not extinguished until the insurer *negates all facts suggesting potential coverage*.").

[22]*Burlington Ins. Co. v. CHWC, Inc.*, 2014 U.S. App. LEXIS 3941, at *4 (9th Cir. (Cal.) Mar. 3, 2014) ("[E]xtrinsic facts available to Burlington revealed **the possibility that Martinez could amend his … claim to allege theories of liability** that would fall outside the … exclusion. Under well-settled California law, that

*continuing* duty to investigate new extrinsic facts or facts related to claims that have not been pled.[23]

**B.  Vogue's Web Site Advertising Satisfies The Definitions Of Both "In Your 'Advertisement'" And "On 'Your Web Site'" In Offense (f)**

The "Cyberflex Amendment" to the Policy broadly defines a "personal and advertising injury" to encompass any advertisement in a website[24] as occurred here in Vogue's promotion of its "Organix" organic product line.  It does not exclude packaging and labeling of a product from the definition of "your web site." **[SUF ¶7]** Therefore, Hartford's argument that there was no advertising **other** than packaging and labels does not apply.  Similarly, the Policies' definition of disparagement requires only a "publication" and does not require that the disparaging statement be in either an "advertisement" or on "[Vogue's] web site."

The examples of Vogue's web site internet advertisements provided with this Reply and available to Hartford at the time of tender satisfy both the definition of an

---

possibility was enough to trigger Burlington's duty to defend. *See Montrose*, 861 P.2d at 1160; *Gray*, 419 P.2d at 176-77.") (emphasis added).

[23]*Upper Deck Co. v. Federal Ins. Co.*, 358 F.3d 608, 613 (9th Cir. 2004) (No damages alleged under the policy were asserted, for injuries alleged for the violation of gambling statutes, as they could not evidence "bodily injury," as the inference of linkage was far fetched and tenuous.).

As *Eigner*, 57 Cal. App. 4th at 198, observed in distinguishing *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1117 (1995) ("[The complaint] alleged only *equitable* causes of action and sought no monetary damages so did not reasonably alert the insurer there may be extrinsic evidence potentially giving rise to coverage, and once coverage had been denied, it had no continuing duty of investigation. Rather, the 'extrinsic facts' regarding potential liability for property damage have come from speculation about how [plaintiff] might have (but did not) amend her complaint at some future date.'");

*Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*, 130 Cal. App. 4th 99, 110 (2005) **[Dkt. 29:12 fn. 2]** (An informed decision was made at the time of denial of the defense.  No additional allegations were either available or brought to the insured's retention that would implicate a distinct entity never before referenced to the insurer.).

[24]"f. 'Copying, in your "advertisement" **or on "your web site**:, a[n] … organization's 'advertising idea' or style of 'advertisement.'" **[SUF ¶7]** (emphasis added) "Advertisement" is: "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through: **a. (6) The Internet**." **[SUF ¶7]** (emphasis added); "Your web site" means "a **web page** or set of interconnected web pages prepared and maintained by you, or by others on your behalf, that is accessible over an internet." **[SUF ¶7]** (emphasis added).

"advertisement" through the internet and the definition of "[Vogue's] web site." **[Rohr Decl. ¶3]** The web pages were for widespread public dissemination of information for inducing the sale of products through the internet. They include a web page or set of interconnected web pages maintained by Vogue or on its behalf and were accessible over the internet. **[Rohr Decl. ¶3]**

## IV.   HARTFORD'S IP EXCLUSION CANNOT BAR COVERAGE FOR THE MOROCCAN OIL ACTION

### A.   The *Moroccanoil* Action Includes Claims Not Implicated by the IP Exclusion

Hartford's IP exclusion does not bar coverage because Moroccanoil's claims for statutory unfair competition do not "[a]ris[e] out [sic] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." **[SUF ¶7]** Although Hartford contends that "the gravamen" of the underlying action is trademark and trade dress infringement," **[Dkt. 29:28]** that is both untrue and legally irrelevant under California law.[25]

The Third Amended Complaint states a distinct claim for relief premised on federal unfair competition for Vogue's use of the terms 'organic' and 'organix,' as false advertising. . . . These claims do not "[a]ris[e] out [sic] any violation of any intellectual property rights,' especially where 'exclusionary clauses are interpreted narrowly against the insurer." **[SUF ¶7]**[26]

Indeed, the Ninth Circuit has concluded that fact allegations of "disparagement" nested within a "slander of title" count trigger a defense.[27]   For the same reasons,

---

[25]*Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. (Cal.) 2002) ("The duty to defend does not usually turn on whether the facts supporting a covered claim *predominate* or *generate* the claim.") (emphasis added).

[26]*State Farm Mut. Auto Ins. Co. v. Partridge*, 10 Cal. 3d 94, 102 (1973).

[27]*Seagate*, 466 F. Appx. at 655 ("[M]isappropriation claims are not necessary for Convolve to maintain trade libel claims against Seagate.   A trade libel claim by Convolve against Seagate could proceed and succeed even if, as Seagate maintains, it never misappropriated Convolve's technology.").

*Integral Resources*[28] is readily distinguishable, as the IP exclusion does not include distinct liability that falls outside its ambit for unfair competition premised on coverage falling within offenses (d) and (f).   Hartford's IP exclusion is not an analogously narrow, explicit statutory exclusion, as it expressly excepts claims under offense (g) for "infringement of slogan" and implicitly includes offense (f) claims that do not fall within the expressly asserted excluded intellectual property torts.

### B.    The Unfair Competition Claims Do Not Arise Out of the Trademark Infringement Claims

Hartford has not, and cannot, explain why its exclusion bars a defense "in all possible worlds."[29]  Couching coverage in terms of the injury suffered is improper.[30] **First**, Hartford attempts to sidestep this fact by noting that "[e]ach cause of  action begins with a paragraph incorporating "by reference each and every allegation" previously alleged." **[Dkt. 29:29]**   But, incorporation of allegations in a trademark infringement count does not eliminate other allegations which do not arise out of the same count.  **Second**, the complaint alleges the use of the "product name . . . and marketing efforts" to allegedly "create confusion in the marketplace," **[SUF ¶10 (MTAC ¶25)]** and alleges "false and misleading advertising" regarding use of the term "organic."  **[SUF ¶10 (MTAC ¶26)]**

### C.    The "Arising Out Of" Phrase in the Intellectual Property Exclusion Must Be Narrowly Construed

In *Capurro,*[31] Judge Illston rejected a broad application of the phrase "arising

---

[28] *Integral Resources, Inc. v. Hartford Fire Ins. Co.* 2014 U.S. Dist. LEXIS 83793, at *24 (C.D. Cal. Jun. 13, 2014) (Addressing the Telephone Consumer Protection Act (TCPA), the policy at issue had an explicit exclusion for injury "***arising directly or indirectly***" out of violations of the TCPA.) (emphasis in original).

[29] *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002) ("Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.").

[30] *Id.* at 1032 ("[C]overage . . . is triggered by the *offense*, not the injury or damage which a plaintiff suffers.") (emphasis in original).

[31] *Tower Insurance Company of New York v. Capurro Enterprises, Inc.*, 2012 U.S. Dist. LEXIS 46443, at *26 (N.D. Cal. Apr. 2, 2012) ("Tower argues that "arising out of is always construed broadly, even in exclusionary clauses . . . . The Court

7

out of," explaining that "*coverage clauses* are interpreted broadly so as to afford the greatest possible protection to the insured [while] *exclusionary clauses* are interpreted narrowly against the insurer,"[32] even where that exclusionary language included "arising out of" policy language, as the most recent published California Court of Appeal case confirmed.[33]

Rejecting the insurer's argument that *City of Richmond*[34] requires a broad reading of "arising out of" when found in exclusions so that any wrong constituting breach of contract necessarily "arises from" that breach.[35]  This view is consistent with Ninth Circuit case law, which applies a "directly and proximately result[ing] from" test,[36] and settled California state authority, which reveals that "arising out of" . . . "exclusions are to be narrowly construed," as "arising out of" means "directly arising out of,"[37] and requiring direct causation (which Hartford does not claim can be met here) as Hartford "bear[s] [the] burden of proving their application."[38]

The *Aloha*[39] decision, as well as decisions that rely upon it,[40] are necessarily

---

disagrees.").

[32] *Id.* at *25 *citing State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101 (1973) (emphasis added).

[33] *North Counties Eng'g, Inc. v. State Farm Gen. Ins. Co.*, 224 Cal. App. 4th 902, 933 (2014) ("Our trial courts have been "directed to take a broad and liberal view so that the policy is construed in favor of the insured." [Citation.] **The more inclusive use of the phrase 'arise out of,'** . . . has been to provide coverage, **not limit it**. [Citations.]'" (emphasis added)).

[34] *Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076 (9th Cir. (Cal.) 1985).

[35] *Capurro*, 2012 U.S. Dist. LEXIS 46443, at *32 ("**[T]he alleged wrongs committed … constituted legally cognizable claims** *whether or not a contract ever existed*.") (emphasis added);  *Id.* at *33 ("Construing the policy in [the insured's] favor, the exclusionary clause narrowly, and resolving ambiguities in favor of the insured, [the] claims do not fall within the breach of contract exclusion.") (emphasis added).

[36] *HS Services, Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 647 (9th Cir. (Cal.) 1997).

[37] *Charles E. Thomas Co. v. Transamerica Ins. Grp.*, 62 Cal. App. 4th 379, 383-84 (1998).

[38] *J. Lamb*, 100 Cal. App. 4th at 1039 *citing Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 16 (1995).

[39] *Aloha Pacific, Inc. v. California Ins. Guar. Ass'n*, 79 Cal. App. 4th 297 (2000).

[40] *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of America*, 10 Fed. Appx. 438 (9th

1 limited by the logic of its analysis.  It held only that trademark infringement claims

2 embraced trade dress infringement claims,[41] an undisputed proposition.  Its broader

3 dicta is not supported by any governing authority.[42] *Aloha* relies on *Lebas*,[43] which

4 had no occasion to analyze the scope of any IP exclusion, concluding **only** that

5 trademark infringement fell within unfair competition.[44]

6 　　　The *Aloha* court accepted that "trade dress infringement can constitute a species

7 of unfair competition for which damages are available,"[45] but determined that trade

8 dress infringement claims were a form of trademark infringement and thus included

9 within the understanding of the proper scope of trademark infringement.[46]  A view

10 reinforced by the court's reference to the Restatement discussing the relationship

11 between trademarks and trade dress.[47]

12 　　　Moroccanoil does not have a trademark, registered or otherwise, or any

13 associated trade dress or trade name, that incorporates the terms "organic" or

14 "organix," and it has no necessary connection to, nor arises out of, trademark or trade

---

Cir. Mar. 22, 2001).

[41]*Aloha*, 79 Cal. App. 4th at 322.

[42]*Id*. at 319 ("[I]f there is a minimal causal connection between appellants' injury and "trademark infringement' as used in the . . . policy, [the] claim is not within the coverage of the policy.").

[43]*Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 50 Cal. App. 4th 548, 564 n.12 (1996). ("A claim of trademark infringement is but a part of the broader claim of unfair competition. Thus, while [a mark] may be generic and not entitled to trademark protection, [a] claim of unfair competition is not foreclosed. '[U]nfair competition . . . encompass[es] a broader range of unfair practices which may be generally described as a misappropriation of the skill, expenditures, and labor of another.' Such practices include 'confusing the public into mistakenly purchasing the product in the belief that the product is [that of] the competitor.")

[44]Count V of the Third Amended Complaint states a cause of action for federal unfair competition, alleging that Vogue's use of the terms "organic" and "organix" on its labeling, advertisement, promotion, and sale of its products constitutes false advertising.  **[SUF ¶10 (MTAC ¶55)]**

[45]*Aloha*, 79 Cal. App. 4th at 318.

[46]*Id*. at 320 ("Package design may be registered as a trademark under the Lanham Act.").

[47]*Id*. at 319-20 (" 'The appearance [i.e., the trade dress] then functions as a trademark, distinguishing the goods or services of one seller from those of others.' ( Rest.3d Unfair Competition, § 16, com. *a*, p. 157.)").

dress infringement.  There is no similar analogy broadly extending the scope of the trademark exclusion to distinct claims for unfair competition or false advertising under *Aloha*'s logic or required by any construction of the term "arising out of" that would not re-write the policy for the insurer's benefit, as Hartford hopes this court will do.

Hartford contends that *Aurafin-OroAmerica*[48] does not articulate the policy terms at issue where the court decided that patent misuse fell outside the IP exclusion. Its precise provisions are, however, addressed in *Nvidia*.[49]  It explained why the motion for reconsideration in *Aurafin-OroAmerica* was not well reasoned—a position adopted by the Ninth Circuit when it reversed the district court's ruling in accord with *Nvidia's* analysis.  These same provisions were at issue in *Align*, reaffirmed by *JAR Laboratories*,[50] which concluded that claims for disparagement fell outside the pertinent IP exclusion for reasons directly applicable here.

### D.   Neither the "Trademark Cancellation" Nor "Trademark Dilution" Claims Fall Within the Scope of Hartford's IP Exclusion

Trademark dilution addresses an entirely distinct theory of liability than "trademark infringement" and is a form of unfair competition not referenced in or necessarily encompassed by Hartford's IP exclusion.[51]  *Hester*,[52] a California insured,

---

[48]*Aurafin-OroAmerica, LLC v. Federal Ins. Co.*, 188 Fed. Appx. 565, 567 (9th Cir. (Cal.) 2006).

[49]*Nvidia Corp. v. Federal Ins. Co.*, No. 04 C 7178, 2005 U.S. Dist. LEXIS 19599, at *27-29 (N.D. Ill. Sept. 6, 2005).

[50]*JAR Laboratories, LLC v. Great Am. E&S Ins Co.*, 945 F. Supp. 2d 937, 946 (N.D. Ill. 2013) (" [T]he IP Exclusion begins by enumerating the excluded claims, beginning with the most specific and ending with the most general. The last, "catch-all" exclusion (listed just after the section on which defendant relies), excludes "any *other* intellectual property right or law." . . . **The clear import of this final phrase is that the preceding subsections likewise referred to intellectual property rights or laws.** *See Align Technology, Inc. v. Federal Ins. Co.*, 673 F.Supp.2d 957, 990–71 (N.D.Ca.2009). . . [A]ll militate in favor of construing the "unfair competition" exclusion as **targeting a narrow subset of intellectual property violations** that does not include TPU's false advertising and related claims.") (emphasis added).

[51]DAVID S. WELKOWITZ, TRADEMARK DILUTION:  FEDERAL, STATE & INTERNATIONAL LAW § 109, at p. 5 (2005) (" 'Dilution protection represents a different perspective about trademarks.  Instead of protecting against confusion, the object of dilution is protected by the 'distinctive quality' of the trademark . . . . Most important, this

validated that a counterclaim for declaratory relief for trademark cancellation triggered a defense according to his insurer, Navigators.[52] Moroccanoil never alleged that Vogue fraudulently registered the Organix mark **[SUF ¶10 (MTAC ¶63)]**. Thus, Moroccanoil asserted that, "[t]he Organix mark is a term that is deceptive of the character, quality, function, composition, or use of Vogue's products in violation of 15 U.S.C. § 1052(a)."[53] That statute governs claims outside of Hartfor'ds narrowly excluded intellectual property violations.  **[SUF ¶10 (MTAC ¶63)]**

Moreover, Moroccanoil's claims for trademark cancellation seek a damage remedy in the form of attorneys' fees **[Dkt. 11-3:23]** or direct damages[54] as "money ordered by a court" [55] in light of the prayer's quest for "such other and further relief." **[Dkt. 11-3:24]**[56]  *Powerine* necessarily rejected any narrower definitions in earlier cases, limiting damages to compensation for the injury that brought the claimants to court, but distinguished a broader definition that merely obligated the carrier to pay.[57]

---

erosion of power is assumed to occur in the absence of any consumer confusion. . . . One might reasonably describe diluting uses of the mark as source distractors.' That is, they distract the viewer from the primary source – identifying content of the mark.'").

[52]*Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290, 296 (S.D.N.Y. 2013) ("Navigators counters that [its duty to defend] arose only when Neverson counterclaimed against Hester[.]").

[53]*CytoSport, Inc. v. Vital Pharms, Inc.*, 894 F. Supp. 2d 1285, 1294 (E.D. Cal. 2012) (Deceptive advertising claim under §1052(a) federal statute asserted state law claims for false advertising and unfair competition.).

[54]Under §38 of the Lanham Act, 15 U.S.C. §1120, damages, as well as attorneys' fees, may be awarded when falsely secures a trademark even if their conduct is only reckless, or merely negligent, as it is alleged here.  *Merry Hull & Co. v. Hi-Line Co.*, 243 F. Supp. 45, 56-57 (S.D.N.Y. 1965) (Such damages would include but not be limited to counsel fees incurred in defending the suits brought by plaintiff, and prosecution of the counterclaims seeking declarations of invalidity and cancellation of the trademark." This award is within the discretion of the trial court.)  *Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 655 (2d Cir. (N.Y.) 1988).

[55]*Certain Underwriters at Lloyd's, London v. Superior Court (Powerine Oil Co.)*, 24 Cal. 4th 945, 951 (2001).

[56]*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*, 1997 U.S. Dist. LEXIS 8894, at *13-14 (S.D.N.Y. Jun. 25, 1997) ("[W]hatever relief the Court deems just and proper . . . encompasses a claim for damages and the insurer must defend.").

[57]*Id.* at 964-65 (construing earlier cases).

## V.    THE "FAILURE TO CONFORM" DOES NOT CURTAIL CLAIMS FOR "DISPARAGEMENT" OR UNFAIR COMPETITION PREMISED ON PRODUCT CHARACTERISTICS RATHER THAN "QUALITY" OR "PERFORMANCE"

Hartford's final "bow shot"—the Failure to Conform Exclusion—references only express representations as to "quality or performance,"[58] and cites no California case law to support its narrow construction.[59]   A "characteristic" such as a product's description as "organic" is neither, but merely a generic reference.[60]   Neither false advertising[61] nor disparagement claims fall within the ambit of this exclusion.[62]   Thus, "this exception 'is directed to the failure of goods, not the failure of advertising.' "[63]

Dated: July 28, 2014

**GAUNTLETT & ASSOCIATES**

By: /s/ David A. Gauntlett
David A. Gauntlett
James A. Lowe
Attorneys for Plaintiff
VOGUE INTERNATIONAL, LLC

---

[58]Hartford's Additional Uncontroverted Facts ¶34 ("Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement").

[59]**Where no governing California precedent exists, reliance upon out of state law is proper**. *Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc.*, No. CV 10-2696 SVW (MANx), 2010 U.S. Dist. LEXIS 144401, at *35 (C.D. Cal. Dec. 28, 2010) ("[I]f the California Supreme Court has not addressed the question, 'we must predict how the Court will decide the issue, based on decisions of [California] courts, decisions from other jurisdictions, treatises, and restatements.' ") (internal citation omitted).

[60]It does not include an "advertisement" that the product included more than 70% organic ingredients per COPA. *Jewelers Mut. Ins. v. Milne Jewelry Co.*, No. 2:06-CV-243 TS, 2006 U.S. Dist. LEXIS 90551, at *10 (D. Utah Dec. 14, 2006) ("[T]he term 'quality' in the policy relates not to a characteristic, such as Native American authenticity, but rather, to the fitness of the product. . . . The term 'quality' as written in the policy is reasonably susceptible to more than one meaning, and therefore, must be rued against Plaintiff.").

[61]*Tria Beauty, Inc. v. National Fire Ins. Co. of Hartford*, No. C12-05465 WHA, 2013 U.S. Dist. LEXIS 71499, at *21 (N.D. Cal. May 20, 2013) ("[T]he harm arises out of 'negative comparisons Plaintiff made about competitors vis-a-vis Plaintiff's products. . . .'").

[62]*Edwards Theatres, Inc. v. United National Ins. Co.*, 126 Fed. Appx. 831, 833 (9th Cir. (Cal.) 2005) ("[T]he quality of goods that Edwards was selling was irrelevant to that claim.").

[63]*Safety Dynamics, Inc. v. Gen. Star Indem. Co.*, 475 Fed. Appx. 213, 214 (9th Cir. (Az.) 2012) *citing* 4 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 30.08[2][a] (2009).